# EXHIBIT "A"

CHARLENE HOWELL, etc.,        )    IN THE CIRCUIT COURT OF

        PLAINTIFFS        )    RUSSELL COUNTY, ALABAMA

VS        )

J & J WOOD, INC., et al.,        )    CASE NO. CV 06-031

        DEFENDANTS,        )

## ORDER

Upon defendant, Quality Casualty Insurance Company, Inc.'s "Motion to Dismiss Count Five of the Plaintiff's Complaint and the Defendant, Quality Casualty Insurance Company, Inc." having been filed herein,

It is

ORDERED, ADJUDGED, AND DECREED:

That defendant's motion is granted.

That notice shall issue to all parties.

DONE this the 25th day of April 2006.

_____

ALBERT L. JOHNSON, CIRCUIT JUDGE

FILED IN OFFICE

'06 APR 26 AM 9:27

CIRCUIT / DIST. COURT
RUSSELL CO., ALA.

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as personal )
representative of the Estate of
JAMES FARRELL HOWELL, )
deceased,

    Plaintiff, )

v. )    Case Number: CV06-31

J & J WOOD, INC.; TIMOTHY LEE )
SIMONDS; QUALITY CASUALTY
INSURANCE COMPANY, et al., )

    Defendants. )

)

*FILED IN OFFICE*
*2006 MAR 16  PM 3:16*
*CIRCUIT/DIST. COURT*
*RUSSELL CO. AL*

### PROTECTIVE ORDER (HIPAA)

Upon compliance with the applicable provisions of the Alabama law, the attorneys for the parties (and any pro se parties) to this lawsuit may obtain all health information relating to any individual who is a party to this case, or any decedent or other real party in interest, represented by an executor, administrator, guardian, next friend, bailee or trustee, and to obtain all information relative to payment for the provisions of medical care to any such individual. <u>This order neither broadens nor restricts any party's ability to conduct discovery pursuant to the Alabama Rules of Civil Procedure, the sole purpose hereof being only to permit compliance with the Health Insurance Portability and Accountability Act of 1996.</u>

This Court Order authorizes any third-party who is provided with a subpoena requesting the production of documents or commanding attendance at deposition or trial to disclose Protected Health Information in response to such request or subpoena. This Court Order is intended to authorize such disclosures under Section 164.512(e)(1)

of the privacy regulations issued pursuant to the Health Insurance Portability and Accountability Act of 1996.

Nothing in this Order shall be deemed to relieve any party or attorney of the requirements of the Alabama Rules of Civil Procedure. Nothing in this Order permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family, nor does this Order permit disclosure of records or information relating to HIV testing or sexually transmitted disease.

Nothing in this Order shall be construed to authorize any party or any attorney for any party to release, exchange, submit or share any Protected Health Information with any other person or any other entity, other than an agent or employee of the attorney or party. This Order prohibits any use or disclosure of Protected Health Information for any purpose other than this litigation.

At the conclusion of this action and at the written request of an individual whose Protected Health Information has been disclosed, or such individual's authorized representative, all recipients of the Protected Health Information shall return to the requesting party the documents and all copies thereof contained Protected Health Information received by them pursuant to this Order, except that Protected Health Information included in insurance claim files and law firm litigation files may be retained to allow compliance to the extent and for the period that such retention is required by Alabama Insurance laws and Alabama State Bar rules and regulations.

**DONE** and **ORDERED** this _16th_ day of _March_ , 2006.

CIRCUIT JUDGE

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, etc.,

     Plaintiff,

VS.

J&J WOOD, INC. et al,

     Defendants.

CIVIL ACTION

NO.  CV-06-31

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR HIPAA PROTECTIVE ORDER PURSUANT TO 45 C.F.R. § 164.512(e)(1)

---

COMES NOW the Plaintiff, CHARLENE HOWELL, as personal representative of the Estate of James Farrell Howell, deceased, and opposes the Defendants J&J WOOD, INC. and TIMOTHY LEE SIMONDS' March 2006 Motion for HIPAA Protective Order Pursuant to 45 C.F.R. § 164.512(E) for the following reasons, separately and severally:

1.    Defendants' proposed order is improper in light of the preemptive force of the new *federal* privacy regulations. Simply put, it does not matter what pre-HIPAA Alabama State law may or may not have held with regard to improper *ex parte* interviews. Once the new HIPAA regulations became effective on April 24, 2003, any State laws concerning privacy that are not at least as stringent as HIPAA's privacy regulations are now preempted. See 45 C.F.R. § 160.203. See, also, *U.S. ex rel Stewart v. Louisiana Clinic*, 2002 WL 31819130 (E.D. La. 2002):

> HIPAA and the Standards promulgated by the Secretary expressly "supercede [sic] any contrary provision of State law," 42 U.S.C. § 1320d-7(a)(1) (implemented by 45 C.F.R. § 160.203 (2002)), except as provided in 42 U.S.C. § 1320d-7(a)(2) (implemented by 45 C.F.R. § 160.203(b)). Under that exception, HIPAA and its standards expressly do *not* preempt contrary state law, *id.* § 1320d-7(a)(2), *if* the state law "relates to the privacy of individually identifiable health information," *id.* § 1320d-7(a)(2)(B) (implemented at 45 C.F.R. § 160.203(b), and is "more stringent" than HIPAA's requirements.  Pub.L. 104-191, § 264(c)(2), 110 Stat. 1936

(published in the Historical and Statutory Notes to 42 U.S.C. § 1320d-2; implemented at 45 C.F.R. § 160.203(b)).

*U.S. ex rel Stewart* at * 3 (italicized emphasis in original).

2.    Plaintiff would be substantially prejudiced were this Court to grant Defendants' counsel unchecked access to all of their medical records, payment records, insurance information, and to their treating physicians.

3.    In support of this objection, Plaintiff submits a law review article (Exhibit A), which explains in greater detail the policy and legal reasons why the Defendant's proposed order should be rejected, as well as a new district court case from Maryland, *Law v. Zuckerman*, 307 F.Supp.2d 705 (D.Md. 2004) supporting Plaintiffs' position. (Exhibit B).

WHEREFORE, premises considered, the Court should reject the Defendants' proposed HIPAA discovery order and instead enter an order identical or similar to those entered by other Mobile County Circuit Judges, e.g. Exhibit C (Kendall), Exhibit D (Lockett) or Exhibit E (McRae).

Respectfully submitted,

CUNNINGHAM, BOUNDS, CROWDER, BROWN AND BREEDLOVE, LLC, Attorneys for the Plaintiff

By: _____

DAVID S. CAIN, JR.                    CAI012
dsc@cbcbb.com
Post Office Box 66705
Mobile, Alabama 36660
Telephone:    251-471-6191
Facsimile:    251-479-1031

-2-

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the ____ day of March, 2006 served a copy of the foregoing on counsel for all parties to this proceeding by mailing the same by United States mail, first-class postage prepaid to:

Paul A. Miller, Esq.
LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.
501 Riverchase Parkway East, Suite 100
Birmingham, Alabama 35244

J. Mason Davis, Esq.
Registered Agent for Quality Casualty Insurance Company, Inc.
2311 Highland Avenue South
Birmingham, Alabama 35203

_____
DAVID S. CAIN, JR.

-3-

# AMERICAN JOURNAL OF TRIAL ADVOCACY

VOLUME 27:1
SUMMER 2003

## ARTICLES

AN IMPORTANT CONSEQUENCE OF HIPAA: NO MORE
*EX PARTE* COMMUNICATIONS BETWEEN DEFENSE ATTORNEYS
AND PLAINTIFFS' TREATING PHYSICIANS
*David G. Wirtes, Jr.*
*R. Edwin Lamberth*
*Joanna Gomez*

GENDER-SPECIFIC CLINICAL SYNDROMES AND THEIR ADMISSIBILITY
UNDER THE FEDERAL RULES OF EVIDENCE
*Joe W. Dixon*
*Kim E. Dixon*

ALIMONY: PEONAGE OR INVOLUNTARY SERVITUDE?
*Alfred J. Sciarrino*
*Susan K. Duke*

*HAMDI, PADILLA* AND *RASUL*: THE WAR ON TERRORISM
ON THE JUDICIAL FRONT
*Arthur H. Garrison*

## TRIAL TECHNIQUES

CROSS-EXAMINATION: TO LEAD OR NOT TO LEAD?
*Kenneth J. Melilli*

LEADING QUESTIONS ON DIRECT EXAMINATION:
A MORE PRAGMATIC APPROACH
*Kenneth J. Melilli*

## STUDENT NOTE

UP IN SMOKE: ONLINE PRIVACY BECOMES THE LATEST CASUALTY IN THE WAR ON DRUGS

## RECENT DEVELOPMENTS



CUMBERLAND SCHOOL OF LAW
SAMFORD UNIVERSITY BIRMINGHAM ALABAMA

# An Important Consequence of HIPAA: No More *Ex Parte* Communications Between Defense Attorneys and Plaintiffs' Treating Physicians

*David G. Wirtes, Jr.*[†]
*R. Edwin Lamberth*[††]
*Joanna Gomez*[†††]

Abstract

*The authors discuss the importance of HIPAA as it relates to the harm that* ex parte *communications between defense attorneys and plaintiffs' treating physicians can cause.*

## Introduction

Alabama courts have not yet put an end to the practice of *ex parte*[1] communications between defense attorneys and plaintiff's treating physicians.[2] Of the state courts that have addressed the propriety of such *ex*

---

[†]B.A. (1981), University of the South; J.D. (1985), Cumberland School of Law. Mr. Wirtes is a member of the law firm of Cunningham, Bounds, Yance, Crowder & Brown, LLC in Mobile, Alabama. Mr. Wirtes is co-chairman of the Alabama Trial Lawyers Association's *Amicus Curiae* Committee and co-editor of the Alabama Trial Lawyers *Journal*. He is also a member of the Board of Governors of the Association of Trial Lawyers of America and a member of that organization's *Amicus Curiae* Committee.

[††]B.A. (1994), University of Virginia; J.D. (1998), Cumberland School of Law. Mr. Lamberth is an attorney with the law firm of Cunningham, Bounds, Yance, Crowder & Brown, LLC in Mobile, Alabama. Mr. Lamberth has served on the Board of Governors of the Alabama Trial Lawyers Association since 2000 and on its Legislative (1999 to present), Public Relations (2001), and *Amicus Curiae* Committees (1999 to present; currently co-chairman). He is also a member of the Mobile Bar Association, the Association of Trial Lawyers of America, and Trial Lawyers for Public Justice.

[†††]B.S. (1996), University of South Alabama. Ms. Gomez is a law student at Mississippi College of Law and plans to graduate in May 2005. She enjoyed an eighteen-year career as a registered nurse before entering law school.

[1]*Ex parte* is defined as "on one side only; by or for one party; done for, on behalf of, or on the application of, one party only, . . . for the benefit of [that] one party only, and without notice to, or contestation by, any person adversely affected." BLACK'S LAW DICTIONARY 576 (6th ed. 1990).

[2]*See* Romine v. Medicenters of Am., Inc., 476 So. 2d 51, 55 n.2 (Ala. 1985); Mull v. String, 448 So. 2d 952, 954 (Ala. 1984).

*parte* communications, twenty-four absolutely prohibit them.[3] Another six states permit informal interviews outside the Rules of Civil Procedure, but place such significant restrictions on them that they cannot truly be called *ex parte* communications.[4] Three states have banned *ex parte* communications either by court rule or statute.[5] In another three states where state courts have not decided the issue, federal district courts have held that defendants cannot engage in *ex parte* communications.[6] Nationally, the clear majority view is that such *ex parte* communications are disfavored in the law.[7]

---

[3] *See* Duquette v. Superior Court, 778 P.2d 634, 642, 161 Ariz. 269 (Ct. App. 1989); Valentino v. Gaylord Hosp., 1992 WL 43134, *2, 6 Conn. L. Rtpr. 87 (Super. Ct. Feb. 19, 1992); Acosta v. Richter, 671 So. 2d 149, 156, 21 Fla. L. Weekly S29 (1996); State v. Moses, 58 P.3d 72, 100 Haw. 14 (2002); Best v. Taylor Machine Works, 689 N.E.2d 1057, 1100, 179 Ill. 2d 367, 458, 228 Ill. Dec. 636, 679 (1997); Cua v. Morrison, 626 N.E.2d 581, 586 (Ind. App. 1993), *aff'd & opinion adopted in* 636 N.E.2d 1248 (Ind. 1994); Roosevelt Hotel Ltd. Partnership v. Sweeney, 394 N.W.2d 353, 357 (Iowa 1986); Wesley Med. Ctr. v. Clark, 669 P.2d 209, 215, 234 Kan. 13, 20 (1983); Sanders v. Spector, 673 So. 2d 1176 (La. App. 1996); Schwartz v. Goldstein, 508 N.E.2d 97, 99, 400 Mass. 152, 154 (1987); Wenninger v. Muesing, 240 N.W.2d 333, 337, 307 Minn. 405, 411 (1976); Scott v. Flynt, 704 So.2d 998, 1007 (Miss. 1996); Jaap v. District Ct., 623 P.2d 1389, 1392, 191 Mont. 319, 323 (1981); Nelson v. Lewis, 534 A.2d 720, 723, 130 N.H. 106, 111 (1987); Church's Fried Chicken v. Hanson, 845 P.2d 824, 829, 114 N.M. 730, 735 (App. 1992); Anker v. Bordnitz, 413 N.Y.S.2d 582, 586 (App. Div. 1979); Crist v. Moffatt, 389 S.E.2d 41, 47, 326 N.C. 326, 335 (1990); Alexander v. Knight, 25 Pa. D. & C.2d 649, 655 (C.P. Phil. Cty. 1961), *aff'd*, 177 A.2d 142 (Pa. Super. Ct. 1962) (*ex parte* contacts now also prohibited by PA. R. CIV. P. 4003.6); S.C. St. Board of Med. Exam'rs v. Hedgepath, 480 S.E.2d 724, 726, 325 S.C. 166, 169 (1997); Schaffer v. Spicer, 215 N.W.2d 134, 137, 88 S.D. 36, 39-40 (1974); Givens v. Mullekin, 75 S.W.3d 383, 409 (Tenn. 2002); Loudon v. Mhyre, 756 P.2d 138, 142, 110 Wash. 2d 675, 681 (1988); State *ex rel.* Kitzmiller v. Henning, 437 S.E.2d 452, 456, 190 W. Va. 142, 146 (1993); Wardell v. McMillan, 844 P.2d 1052, 1067 (Wyo. 1992).

[4] *See* Green v. Bloodsworth, 501 A.2d 1257, 1259 (Del. Super. Ct. 1985); Morris v. Thompson, 937 P.2d 1212, 1217, 130 Idaho 138, 143 (1997); Brandt v. Pelican, 856 S.W.2d 658, 661 (Mo. 1993); Stempler v. Speidell, 495 A.2d 857, 861-62, 100 N.J. 368, 377 (1985); Domako v. Rowe, 475 N.W.2d 30, 33, 438 Mich. 347, 354 (1991); Steinberg v. Jensen, 534 N.W.2d 361, 370-73, 194 Wis. 2d 439, 463-69 (1995).

[5] *See* ARK. R. EVID. 503; *In re* Miller, 585 N.E.2d 396, 403, 63 Ohio St. 3d 99, 107 (1992) (holding that "physician-patient privilege is statutory in nature, and is codified at R.C. 2317.02(B)"); VA. STAT. ANN. § 8.01-399 (2003).

[6] *See* Neubeck v. Lundquist, 186 F.R.D. 249, 251 (D. Me. 1999); Weaver v. Mann, 90 F.R.D. 443, 445 (N.D. 1981); Horner v. Rowan Cos., 153 F.R.D. 597, 601-02 (S.D. Tex. 1994).

[7] *See* Crist v. Moffatt, 389 S.E.2d 41, 45, 326 N.C. 326, 332 (1990) ("The emerging consensus adheres to the position that defense counsel is limited to the formal methods

Alabama's past reasoning for tolerating the *ex parte* communications is no longer valid in light of Congress's recognition of the importance of privacy of personal medical information through its promulgation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).[8] Initiated during the Clinton presidency,[9] Congress imposed upon the Secretary of the Department of Health and Human Services (HHS) the obligation to establish "Standards for Privacy of Individually Identifiable Health Information."[10] As finally promulgated, HIPAA's "Privacy Rule establishes, for the first time, a foundation of federal protections for the privacy of protected health information."[11] This new *federal* patient privacy protection means that secret, *ex parte* communications are no longer to be tolerated in Alabama or elsewhere.

# I. What Is HIPAA?

Public Law 104-191 was signed into law by President Clinton on August 21, 1996. When Congress did not meet the Act's original August 21, 1999 deadline for enacting comprehensive privacy legislation, the

---

of discovery enumerated by the jurisdiction's rules of civil procedure, absent the patient's express consent to counsel's *ex parte* contact with her treating physician.").

For other discussions of this issue, see generally, Bobby Russ, *Can We Talk? The Rest of the Story or Why Defense Attorneys Should Not Talk to the Plaintiff's Doctors,* 39-FEB TENN. B.J. 29 (2003); Commentary, *Recognizing the Split: The Jurisdictional Treatment of Defense Counsel's Ex Parte Contact With Plaintiff's Treating Physician,* 23 J. LEGAL PROF. 247 (1989-99); John Kassel, *Ex Parte Conferences With Treating Physicians COUNTERPOINT . . . Defense Counsel's Ex Parte Communication With Plaintiff's Doctors: A Bad One-Sided Deal,* S.C. LAW. Sept.–Oct. 1997; John Jennings, Note, *The Physician-Patient Relationship: Admissibility of Ex Parte Communication Between Plaintiff's Treating Physician and Defense Counsel,* 59 MO. L. REV. 441 (1994).

[8] Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191 (1996).

[9] *See id.*; Statement by President William J. Clinton Upon Signing H.R. 3103, 32 WEEKLY COMP. PRES. DOC. 1480, (Aug. 21, 1996).

[10] Privacy Rule, 65 Fed. Reg. 82,463 (Dec. 30, 2000) (codified at 45 C.F.R. §§ 160, 164 (2002)).

[11] U.S. Dep't of Health & Human Servs., *Office for Civil Rights Summary of the HIPAA Privacy Rule* (Apr. 11, 2003), *available at* http://www.hhs.gov/ocr/hipaa/privacy .html [hereinafter *Summary of the HIPAA Privacy Rule*].

4                    AMERICAN JOURNAL OF TRIAL ADVOCACY                    [Vol. 27:1

Secretary of HHS was directed to develop privacy regulations.[12]  In response to this mandate, HHS published a final regulation in the form of the Privacy Rule in December 2000, which was scheduled to become effective April 14, 2001.[13]  Subsequently, President Bush appointee, HHS Secretary Tommy Thompson, suspended the effective date of the regulations and called for an additional opportunity for public comment.  After modifications ostensibly intended to "ensure that the Privacy Rule worked as intended," HHS adopted a final Privacy Rule now codified as 45 C.F.R. §§ 160, 164, which became effective April 14, 2003.[14]

HIPAA is intended to provide a baseline of health information privacy protections, which states are free to rise above in order to best protect their citizens.

> HIPAA and the Standards promulgated by the Secretary expressly "supercede [sic] any contrary provision of State law," *except* as provided in 42 U.S.C. § 1320d-7(a)(2).  Under that exception, HIPAA and its standards expressly do *not* preempt contrary state law, *if* the state law "relates to the privacy of individually identifiable health information," and is "more stringent" than HIPAA's requirements.[15]

HIPAA does not preempt "more stringent" state laws,[16] and specifically defers to state law on issues concerning parental access to the health information of minor children.[17]

---

[12]Standards for Privacy of Individually Identifiable Health Information, 68 Fed. Reg. 82,462-01, 82,469 (Dec. 28, 2000) (codified at 45 C.F.R. pts. 160 & 164); 42 U.S.C. §§ 1320d-1(d), 1320d-3(a)(b), 1320d-4(b) (1996).

[13]*Summary of the HIPAA Privacy Rule*, *supra* note 11.

[14]*Id.*

[15]U.S. *ex rel.* Stewart v. Louisiana Clinic, 2002 WL 31819130, at *3 (E.D. La. 2002) (quoting 42 U.S.C. § 1320d-7(a)(1)(1996)) (citing 42 U.S.C. § 1320d-7(a)(2)(1996)); *see also In re* PPA Litig., 2003 WL 2203734 (N.J. Super. Ct. Law Div. Sept. 23, 2003) (holding that certain provisions of New Jersey's procedures governing *ex parte* contacts are less stringent than HIPAA and are therefore preempted by HIPAA).

[16]"More stringent" is defined in 45 C.F.R. § 160.202 (as amended in 2002). According to the district court in *Stewart*, to avoid preemption, "[state] law must (1) be 'contrary' to HIPAA or its Standards, (2) relate to the privacy of individually identifiable health information *and* (3) be 'more stringent' than federal law." *Stewart*, 2002 WL 31819130, at *4.

[17]*See* 45 C.F.R. § 164.502(g)(3) (2002).

Except as otherwise permitted or required, Protected Health Information (PHI)[18] may not be disclosed without a valid authorization, and any use or disclosure must be consistent with the authorization granted.[19] The Privacy Rule applies to both written and oral communications.[20] The HIPAA regulation applicable to judicial proceedings is 45 C.F.R. § 164.512(e)(1). Subsections 164.512(e)(1)(i) and (e)(1)(ii) define the circumstances in which a healthcare provider may reveal PHI in the course of a judicial proceeding. Nowhere do the regulations permit healthcare providers to discuss PHI with defense attorneys because a lawsuit is pending. Nowhere do any of the HIPAA regulations permit or purport to permit *ex parte* communications. The regulations are simply silent about the issue.

HIPAA's regulations for judicial proceedings permit disclosure of PHI only under the following conditions:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

---

[18]PHI is defined as:

individually identifiable health information:
    (1) Except as provided in paragraph (2) of this definition, that is:
        (i)   Transmitted by electronic media;
        (ii)  Maintained in electronic media; or
        (iii) Transmitted or maintained in any other form or medium.
    (2) Protected health information excludes individually identifiable health information in:
        (i)   Education records covered by the Family Educational Rights and Privacy Act, as amended, 20 U.S.C. § 1232g;
        (ii)  Records described at 20 U.S.C. § 1232g(a)(4)(B)(iv); and
        (iii) Employment records held by a covered entity in its role as employer.

45 C.F.R. § 160.103 (2002).

[19]45 C.F.R. § 164.508 (2002) ("Uses and disclosures for which an authorization is required"). Furthermore, when producing PHI, health care providers must produce only the minimum information necessary: "When using or disclosing protected health information . . . a covered entity must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure or request." 45 C.F.R. § 164.502(b)(1) (2002).

[20]45 C.F.R. § 160.103 (2002).

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.[21]

These sections may be summarized as allowing disclosure only in response to: (1) a court order expressly authorizing the disclosure of the requested PHI, or (2) a subpoena or discovery request issued pursuant to the Rules of Civil Procedure, if a qualified protective order has been requested or a good-faith effort has been made to give notice to the individual and any objections have been resolved.

Subsection (ii) does not require the entry of a protective order; it requires only that a defendant seeking PHI demonstrate to the healthcare provider that it has requested one, or that the defendant has made a good-faith effort to give notice to the individual. Some attorneys may contend that making such a demonstration in each discovery request is overly burdensome. Of course, one of the ways to avoid that burden is to have the court enter a protective order in each case under subsection (v), which would then be provided with each subpoena or discovery request under subsection (ii). However, subsection (v) only requires two things in a protective order: (1) a mandate that the protected health information will be used only for the litigation, and (2) a requirement that all information be returned at the end of the litigation. Furthermore, subsection (ii) only applies to subpoenas and discovery requests. Thus, any protective order entered for HIPAA purposes should state only that the court authorizes, in response to any subpoena or other discovery request, a doctor or other healthcare provider to produce protected health information, subject to the conditions in subsection (v).[22]

---

[21] 45 C.F.R. § 164.512(e)(1)(II) (2002).

[22] There obviously is no requirement in HIPAA that court-ordered protective orders permit *ex parte* contacts between defense attorneys and plaintiff's treating physicians.

Other aspects of HIPAA include the patient's right to an accounting. Individuals may request and have "a right to receive an accounting of disclosures of protected health information [that occurred during] the six years prior to the date [of the request]."[23] This accounting is required to include the date of the disclosure, who received the information, and a brief description of the information disclosed and the purpose or basis for the disclosure. An accounting is not required where the individual has provided an authorization under section 164.508.[24] The accounting requirement was intended

> as a means for the individual to find out the non-routine purposes for which his or her protected health information was disclosed by the covered entity, so as to increase the individual's awareness of persons or entities other than the individual's health care provider or health plan in possession of this information. To eliminate some or all of these public purposes [from compliance] would defeat the core purpose of the accounting requirement.[25]

Obviously, then a patient has the right to know whether his doctor has engaged in *ex parte communications*.

In addition, HIPAA provides civil or criminal penalties for covered entities who misuse personal health information.[26] HHS's Office for Civil Rights (OCR) has been charged with investigating complaints and enforcing the privacy regulation. "When appropriate, OCR can impose civil monetary penalties for violations of the privacy rule provisions. Potential

---

[23] 45 C.F.R. § 164.528 (2002) ("Accounting of disclosures of protected health information").

[24] "Elimination of an accounting requirement for authorized disclosures is justified in large part by the individual's knowledge of and voluntary agreement to such disclosures." Standards for Privacy of Individually Identifiable Health Information, 68 Fed. Reg. 82,462-01, 82,469 (Dec. 28, 2000) (codified at 45 C.F.R. pts. 160 & 164).

[25] *Id.* at 53,245.

[26] U.S. Dep't of Health & Human Servs., Press Release, *Fact Sheet: Protecting the Privacy of Patients' Health Information*, Apr. 14, 2003, ¶ 21, *available at* http://www.hhs.gov/news/facts/privacy.html. OCR may impose fines of up to $100 per violation, up to $25,000 per year; "criminal penalties . . . for certain actions such as knowingly obtaining protected health information in violation of the law," can range up to $50,000 and one year in prison, or up to $100,000 and five years in prison if committed under "false pretenses," or up to $250,000 and ten years in prison if "committed with the intent to *sell, transfer, or use protected health information* for commercial advantage, *personal gain* or malicious harm." *Id.* (emphasis added).

criminal violations of the law would be referred to the U.S. Department of Justice for further investigation and appropriate action."[27] Though HIPAA does not expressly provide for civil lawsuits in response to violations of confidentiality, it does not conflict with enforcement of any "more stringent" state laws that allow an individual to bring a breach of fiduciary duty, breach of confidentiality or privilege, or similar state-recognized cause of action.[28]

The new privacy protections afforded by HIPAA have survived two recent court challenges.[29] HHS Secretary Thompson recently lauded one such judicial endorsement with a clear statement about the importance of ensuring patient privacy that clearly undercuts any defense suggestion that the new Privacy Rule may sometimes be ignored:

> Today's [Fourth] Circuit ruling upholding the constitutionality of the HIPAA Privacy Rule is a victory for America's patients and the principle that the federal government can provide protections to insure the enhanced confidentiality of their medical records.
> This administration strongly supports a policy of providing a first-time-ever federal level of protection for the medical records of all Americans. . . . Consumers will benefit from these new limits on the way their personal medical records may be used or disclosed by those entrusted with this sensitive information.
> The new rules reflect a common-sense balance between protecting patients' privacy and ensuring the best quality care for patients. They do not interfere with the ability of doctors to treat their patients, and they allow the

---

[27]*Id.* ¶ 20.

[28]*See, e.g.,* Horne v. Patton, 291 Ala. 701, 709, 287 So. 2d 824, 829-30 (1973) ("[I]t must be concluded that a medical doctor is under a general duty not to make extra-judicial disclosures of information acquired in the course of the doctor-patient relationship and that a breach of that duty will give rise to a cause of action."); *see also* Lonette E. Lamb, *To Tell or Not to Tell: Physician's Liability for Disclosure of Confidential Information About a Patient,* 13 CUMB. L. REV. 617 (1983); Judy E. Zelin, Annotation, *Tort Liability for Unauthorized Disclosure of Confidential Information About Patient,* 48 A.L.R.4th 668 (1986 & Supp. 2003) (collecting state and federal cases in which courts have considered whether tort liability exists when a physician or other medical practitioner makes an unauthorized disclosure of confidential information about his patient).

[29]*See* S.C. Med. Ass'n v. Thompson, 327 F.3d 346 (4th Cir. 2003); Ass'n of Am. Physicians & Surgeons, Inc. v. United States Dep't of HHS, 224 F. Supp. 2d 1115 (S.D. Tex. 2002), *aff'd by* 67 Fed. Appx. 253, 2003 WL 21196194 (5th Cir. 2003).

continuing public health activities, such as tracking infectious disease outbreaks and reporting adverse drug events, to continue.[30]

In sum, with HIPAA, Congress sought to balance individuals' privacy rights against practical and functional concerns. Allowances are made for waiver of confidentiality in certain circumstances, such as when conflicts arise with public health concerns or criminal law investigation and enforcement. Although 45 C.F.R. § 164.512(e)(1) provides for the limited release of information relevant to a lawsuit in response to a court order, subpoena, or other proper discovery request, the Privacy Rule does *not* affect any waiver of a patient's right of confidentiality.[31] *Ex parte* communications between defense counsel and a plaintiff's treating physician for the purpose of gaining a strategic advantage in the defense of a civil lawsuit therefore violate both the letter and the spirit of the Act.

## II. *Ex Parte* Contacts Are Harmful

### A. Harm to Patients-Plaintiffs

Patients are quite reasonably entitled to expect that their physicians will keep private health information confidential. Unfortunately, that expectation of privacy is trampled when defense attorneys communicate in secret with a plaintiff's physicians about the defense of a lawsuit.

It was recognized years ago that "[e]x parte contacts are a 'hardball' tactic long favored by the defense bar, particularly in medical malpractice suits."[32]  The Supreme Court of West Virginia stated that "[p]rivate nonadversary interviews of a doctor by adverse counsel threaten to undermine the confidential nature of the physician-patient relationship."[33]

---

[30]U.S. Dep't of Health & Human Servs., News Release, *Statement by Tommy G. Thompson*, Apr. 28, 2003, *available at* http://www.hhs.gov/news/press/2003pres/20030429a.html.

[31]45 C.F.R. § 164.512(e)(1)(v)(A) (2002).

[32]Phillip H. Corboy, *Ex Parte Contacts Between Plaintiff's Physician and Defense Attorneys: Protecting the Patient-Litigant's Right to a Fair Trial*, 21 LOY. U. CHI. L.J. 1001, 1001-02 (1990).

[33]State *ex rel.* Kitzmiller v. Henning, 437 S.E.2d 452, 454, 190 W. Va. 142, 144 (1993).

10    AMERICAN JOURNAL OF TRIAL ADVOCACY    [Vol. 27:1

That court further noted that "[t]he danger of *ex parte* interviews of a doctor by adverse counsel is that the patient's lawyer is afforded no opportunity to object to the disclosure of medical information that is remote, irrelevant, or compromising in a context other than the lawsuit at hand."[34] The Supreme Court of Iowa was particularly concerned about physicians revealing confidential information unrelated to the lawsuit. That court wrote:

> We are concerned... with the difficulty of determining whether a particular piece of information is relevant to the claim being litigated. Placing the burden of determining relevancy on an attorney, who does not know the nature of the confidential disclosure about to be elicited, is risky. Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician. We believe this determination is better made in a setting in which counsel for each party is present and the court is available to settle disputes.[35]

"Secret meetings between defense lawyers and treating physicians are an affront to both the rights of patients, who are entitled to place their trust in their doctors, and the rights of plaintiffs to a fair trial of their claims against alleged wrongdoers."[36]

## B.  Harm to Physicians

Physicians are placed in unenviable positions when defense attorneys engage them in *ex parte* communications, because they are confronted with numerous competing ethical, legal, and professional pressures in deciding whether and how to respond to such requests. For example, the familiar Hippocratic Oath impresses upon physicians a great moral obligation to advocate for, and safeguard the confidences of, the patients they treat.

> I swear by Apollo the healer, by Aesculapius, by Hygeia (Health) and all the powers of healing, and call to witness all the gods and goddesses that I may keep this Oath, and promise to the best of my ability and judgment: . . .

---

[34]*Kitzmiller*, 437 S.E.2d at 455.

[35]Roosevelt Hotel Ltd. Partnership v. Sweeney, 394 N.W.2d 353, 357 (Iowa 1986).

[36]Corboy, *supra* note 32, at 1038.

Whatever I see or hear, professionally or privately, which ought not to be divulged, I will keep secret and tell no one.[37]

The American Medical Association's *Principles of Medical Ethics* require the following:

The medical profession has long subscribed to a body of ethical statements developed primarily for the benefit of the patient. As a member of this profession, a physician must recognize responsibility to patients first and foremost, as well as to society, to other health professionals, and to self. The following Principles adopted by the American Medical Association are not laws, but standards of conduct which define the essentials of honorable behavior for the physician.

. . . .

IV. A physician shall respect the rights of patients, colleagues, and other health professionals, and shall safeguard patient confidences and privacy within the constraints of the law.

. . . .

VIII. A physician shall, while caring for a patient, regard responsibility to the patient as paramount.[38]

According to the American Medical Association (AMA), "[a] breach of confidentiality is a disclosure to a third party, without patient consent or court order, of private information that the physician has learned within the patient-physician relationship."[39] Although the AMA's ethical guidelines may not be legally binding, maintaining patient confidentiality is a legal as well as an ethical duty:

A physician's legal obligations are defined by the *U.S. Constitution*, by federal and state laws and regulations, and by the courts. Even without applying ethical standards, courts generally allow a cause of action for a breach of confidentiality against a treating physician who divulges confidential medical information without proper authorization from the patient.[40]

---

[37]Hippocrates, *Oath of Hippocrates*, in HIPPOCRATIC WRITINGS (J. Chadwick & W. N. Mann trans., Penguin Books 1950).

[38]American Medical Ass'n, *Principles of Medical Ethics*, ¶¶ 1-8 *available at* http://www.ama-assn.org/ama/pub/category/2512.html (last updated Apr. 2, 2002).

[39]American Medical Ass'n, *Patient Confidentiality*, ¶ 4 *available at* http://www.ama-assn.org/ama/pub/category/4610.html (last updated Dec. 30, 2003).

[40]*Id.* ¶ 2; *see also* Zelin *supra* note 28, at 668.

Physicians are also confronted with feelings of professional loyalty and empathy. In many states, Alabama included, there may be a coercive influence exerted by a shared malpractice insurer. Medical Assurance, Inc. (now a subsidiary of ProAssurance, Corp.) asserts on its website that it provides malpractice insurance for ninety percent of Alabama's physicians.[41] As the Arizona Court of Appeals recognized, the fact that a treating physician shares the same insurance carrier as the defendant is highly relevant to the pressure a physician faces when a defense attorney requests an *ex parte* interview.[42]

> We also note that in Arizona, a substantial number of physicians are insured by a single "doctor owned" insurer. Realistically, this factor could have an impact on the physician's decision [whether to reject the request for an *ex parte* interview]. In other words, the physician witness might feel compelled to participate in the *ex parte* interview because the insurer defending the medical malpractice defendant may also insure the physician witness.[43]

The District Court for the Middle District of Pennsylvania is also particularly sensitive to the risk of untoward influences from medical liability insurers:

> [T]he unauthorized *ex parte* interview of a plaintiff's treating physician by defense counsel creates a situation which may invite questionable conduct. This court will not overlook the current concerns in the medical malpractice insurance industry and the attitudes of physicians and carriers alike. An unauthorized *ex parte* interview could disintegrate into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued, and other topics which might influence the treating physician's views. The potential for impropriety grows even larger when defense counsel represents the treating physician's own insurance carrier and when the doctor, who typically is not represented by his personal counsel at the meeting, is unaware that he may become subject

---

[41] *See Insurer Profile* (Nov. 30, 2000), *available at* http://www.medicalassurance.com\s_and_p_mai_profile.pdf. Website printouts on file with authors.

[42] Duquette v. Superior Court, 778 P.2d 634, 641, 161 Ariz. App. 269, 276 (Ct. App. 1989).

[43] *Duquette*, 778 P.2d at 641.

to suit by revealing the plaintiff/patient's confidences which are not pertinent to the pending litigation.[44]

The Alabama Board of Medical Examiners (ABME) holds the position that "it is unethical and unprofessional for a physician to allow financial incentives or contractual ties of any kind to adversely affect his or her medical judgment of practice care."[45] The ABME further declares

> that any act by a physician that violates or may violate the trust a patient places in the physician places the relationship between physician and patient at risk. This is true whether such an act is self-determined or the result of the physician's contractual association with a health care entity. The Board believes the interest and health of the people of Alabama are best served when the physician-patient relationship remains inviolate. The physician who puts the physician-patient relationship at risk also puts his or her relationship with the Board in jeopardy.
>
> . . . .
>
> Patient trust is fundamental to the relationship thus established. It requires the following:
>
> (a) that there be adequate communication between the physician and the patient;
>
> (b) that there be no conflict of interest between the patient and the physician or third parties;
>
> (c) that intimate details of the patient's life shared with the physician be held in confidence; . . .
>
> . . . The Board believes the interests and health of the people of Alabama are best served when the physician-patient relationship, founded on patient trust, is considered sacred, and when the elements crucial to that trust– communication, patient privacy, confidentiality, competence, patient autonomy, compassion, selflessness and appropriate care–are foremost in the hearts, minds, and actions of the physician licensed by the Board.[46]

HIPAA requires a physician to provide only the minimum necessary information in response to a lawful request for protected health care information.[47] A physician, in an individual's absence, must utilize his

---

[44]Manion v. N.P.W. Med. Ctr., 676 F. Supp. 585, 594-95 (M.D. Penn. 1987).

[45]ALA. ADMIN. CODE r. 540-X-9-.07 ("Position Statement of the Alabama Board of Medical Examiners Concerning the Physician-Patient Relationship").

[46]*Id.*

[47]45 C.F.R. § 164.512(e) (2002).

professional judgment to determine what information meets this stand-ard.[48] This is a difficult task with regards to legal issues about which the physician is likely to be poorly informed. He risks civil or criminal liability–or both–for HIPAA violations if he provides unnecessary protected information.[49] It is grossly unfair for the physician to be put to such risks without input from his patient's counsel or guidance from a court. At minimum, fairness requires that physicians receive balanced input from each side in a lawsuit as they fulfill their congressionally mandated role of determining what information must be divulged or held in confidence.

The implications of improper physician disclosures are clear: adminis-trative sanctions (*e.g.*, loss of medical license), criminal sanctions (*e.g.*, HIPAA penalties), and civil sanctions (*e.g.*, civil tort liability for invasion of privacy). If the issue were properly understood, physicians might object just as loudly as their patients to any attempts to engage them in *ex parte* communications.

## C. Harm to the Civil Justice System

The civil justice system also suffers from the practice of *ex parte* con-tacts between defense and plaintiff's treating physicians. The Rules of Civil Procedure and Discovery were designed to afford all parties equal access to justice. The Rules are intended to eliminate "trial by ambush" and other odious practices like these. Use of discovery methods such as interrogatories, depositions, or even informal interviews following notice to the plaintiff and the opportunity for the plaintiff or a representative to be present, allow counsel for both parties to inform the physician which issues are relevant to the subject matter of the suit, and what portions of the patient's medical records are considered confidential. Conformance with these traditional practices does not hamper the attorney's preparation of a lawful defense. In fact, "it is undisputed that *ex parte* conferences yield no greater evidence, nor do they provide any additional information, than that which is already obtainable through regular methods of discov-ery."[50] In the absence of evidence that *ex parte* interviews afford any

---

[48]45 C.F.R. § 164.510(b)(3) (2002).

[49]42 U.S.C. § 1320d5-1320d6 (2003).

[50]Petrillo v. Syntex Labs, Inc., 499 N.E.2d 952, 956, 148 Ill. App. 3d 581, 587, 102 Ill. Dec. 172, 176 (Ct. App. 1986).

greater access to discoverable information, or any reduction in cost than that available in following the methods set forth in the Rules of Civil Procedure, no legitimate justification for this practice exists.

Following formal discovery channels also affords court oversight. In *Ex parte Eagan*, the trial court issued a protective order prohibiting *ex parte* contacts by the defendants' attorneys with the plaintiff's treating physicians in a malpractice case in order to "protect the patient from wrongful disclosure of [her] privileged information; the third party health care provider, from liability for breach of that privilege; and the defendant's representatives from charges of wrongdoing."[51] Rejecting a defense contention that the mere filing of the lawsuit constituted a waiver of any claim of privilege, the trial court wrote:

> The filing of an action under the Alabama Medical Liability Act releases other physicians who have treated the plaintiff from their fiduciary duty not to disclose legally discoverable information in the malpractice action. The physician providing such information has no legal liability to the patient for providing such information. *[However], that [does] not mean that the filing of malpractice action constitutes a waiver of the plaintiff's right to the protections afforded by Rule 26, et. seq., of the Alabama Rules of Civil Procedure.*[52]

The malpractice defendants' subsequent petition for a writ of mandamus filed with the Alabama Supreme Court in an effort to overturn the trial court's protective order was denied by a vote of eight-to-zero.[53]

## D. Potential Harm to Defense Attorneys

Additionally, allowing unfettered *ex parte* communications with plaintiff's treating physicians raises significant ethical problems for defense attorneys, especially when the physician may be characterized as an expert witness. The American Bar Association has commented:

---

[51] Ballew v. Eagan, Jefferson County, Alabama, Circuit Court Case No. CV-00-6528-JSV, Feb. 23, 2001 Protective Order, at 4.

[52] *Id.* at 6.

[53] *Ex parte* John Eagan, M.D., Ala. S. Ct. Case No. 1001142, 852 So. 2d 204 (Ala. 2002) (writ denied, no opinion). An Alabama case without a published opinion is assigned no precedential weight under Rule 9 of the Alabama Appellate Rules.

Although the Model Rules do not explicitly prohibit ex parte contacts with an opposing party's expert witness, a lawyer who engages in such contacts may violate Model Rule 3.4(c) if the matter is pending in federal court or in a jurisdiction that has adopted an expert-discovery rule patterned after Federal Rule of Civil Procedure 26(b)(4)(a).[54]

Alabama Rule of Professional Conduct 3.4(c) is exactly the same as Model Rule 3.4(c).[55] Alabama Rule of Civil Procedure 26(b)(4)(A) is almost exactly the same as Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure. Thus, when a plaintiff lists his treating physicians as expert witnesses, a defendant's attorney may be deemed to violate Rule 3.4(c) by engaging in *ex parte* contacts with them.[56]

Defense counsel often claim that *ex parte* interviews are necessary in order to develop attorney work product without the supervision or oversight of the plaintiff's counsel. This argument belies the law and common sense. The Supreme Court of Iowa stated: "Arguments based on invasion of attorney work product and trial strategy are unpersuasive and somewhat out of tune with our modern discovery process."[57] Work product by its very nature involves forming strategy, developing legal theories, and developing defenses. Even those states that have allowed *ex parte* contacts do not allow defendants to discuss their opinions, theories, or strategy regarding the patient or case without consent of both the plaintiff and the physician.[58]

---

[54] ABA Ethics Opinion, Formal Opinion 93-378 (Nov. 8, 1993).

[55] MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.4(c) (1990).

[56] One treatise notes: "Since existing rules of civil procedure carefully provide for limited and controlled discovery of an opposing party's expert witnesses, all other forms of contact are impliedly prohibited." 2 GEOFFREY HAZARD & W. WILLIAM HODES, THE LAW OF LAWYERING § 3.4:402 (2d ed. Supp. 1994). Therefore, an attorney who engages in prohibited communications may run afoul of Rule 3.4(c) by "[k]nowingly disobey[ing] an obligation under the rules of a tribunal." *Id.*

[57] Roosevelt Hotel Ltd. Partnership v. Sweeney, 394 N.W.2d 353, 358 (Iowa 1986).

[58] *See, e.g.,* Steinberg v. Jensen, 534 N.W.2d 361, 371-72 (Wis. 1995) (holding that *ex parte* contacts are permissible but holding that defendant must tell the physician that he can decline the interview and that any information regarding opinions may not be discussed without the presence of opposing counsel or "through a writing, an exact duplicate of which must be sent concurrently to opposing counsel"); Stempler v. Speidler, 495 A.2d 857, 865 (N.J. 1985) (holding that *ex parte* contacts are allowed, but that the defendants must provide to the plaintiff the scope of the interview and inform the physician that the interview is totally voluntary).

The defense's "work product" argument is also contrary to existing Alabama law. A witness's statement is not considered "work product" in Alabama.[59] Moreover, "work product" does not include opinions of an expert witness; nor does it include questions to a third-party witness, such as a treating physician, because the treating physician is free to tell a plaintiff's lawyer what the defense lawyer asked him.[60]

## III. Alabama Law

The Alabama Supreme Court has made it clear that it does not condone *ex parte* interviews with plaintiff's treating physicians when the defendants engage in improper conduct.[61] The court also has explained that one reason it has refused to exclude the testimony of physicians who engage in *ex parte* communications is because of an "absence of a statutory physician-patient testimonial privilege."[62] Another reason for the decision is that the information sought would otherwise "be legally discoverable by the defendant in that litigation."[63] The court held

> that when a patient sues a defendant other than his or her physician, and the information acquired by the physician as a result of the physician-patient relationship would be legally discoverable by the defendant in that litigation, then the patient will be deemed to have waived any right to proceed against the physician for the physician's disclosure of this information to that defendant or that defendant's attorney. Our recognition of this narrow exception does not, however, encompass a physician's disclosure of information acquired during the physician-patient relationship to persons other than such a defendant or that defendant's attorney. To hold otherwise and allow public

---

[59]*See* Assured Investors Life Ins. Co. v. Nat'l Union Assocs., 362 So. 2d 228, 232 (Ala. 1978).

[60]*See* ALA. R. CIV. P. 26(b).

[61]*See* Romine v. Medicenters of Am., Inc., 476 So. 2d 51, 55 n.3 (Ala. 1985); Mull v. String, 448 So. 2d 952, 954 n.2 (Ala. 1984); *see also* Zaden v. Elkus, 2003 WL 22113880, at *14 (Ala. Sept. 12, 2003) ("'The potential for influencing trial testimony is inherent in every contact between a prospective witness and an interlocutor, formal or informal, and what a litigant may justifiably fear is an attempt by an adversary at *improper* influence for which there are sanctions enough if it occurs.'" (quoting Doe v. Eli Lilly & Co., 99 F.R.D. 126, 128 (D.D.C. 1983))).

[62]*Mull*, 448 So. 2d at 954.

[63]*Id.*

disclosures to unrelated third parties would not only contravene our recognition of the physician's primary duty of non-disclosure in *Horne* [*v. Patton*], but also flout the policy considerations protecting the patient's privacy interest in full, *confidential* disclosure to his or her physician to obtain an accurate diagnosis and treatment.[64]

HIPAA now provides the missing statutory privilege that undercuts any claim by defense attorneys that they are free to speak with a plaintiff's treating physician about protected health information. Because of the Privacy Rule, PHI is not "legally discoverable" unless and until the defense attorney first complies with 45 C.F.R. § 164.512(e)(1).[65] The fact that this protection comes from Congress rather than the Alabama legislature is immaterial because of the preemptive force of the *federal* regulations.[66]

As stated above, the federal regulations preempt any less stringent state law. It is clear that the practice of engaging in *ex parte* contacts, and any Alabama court's tolerance of that practice, is less stringent than the requirements of HIPAA's federal regulations. *Ex parte* contacts provide defendants with unfettered access to a plaintiff's treating physician. Such contacts are made without notice to the plaintiff and without any restrictions on the substance of the physician's conversation with the defendant's counsel. On the contrary, the federal regulations now prohibit the disclosure of PHI without compliance with the regulations. These regulations require compliance with 45 C.F.R. § 164.512(e)(1), discussed above, and that any disclosure of PHI be limited to the absolute minimum information necessary. Nowhere do the regulations permit healthcare providers to discuss PHI with defense attorneys just because a lawsuit is pending. Nowhere do any of the HIPAA regulations permit or purport to permit *ex parte* communications. Therefore *ex parte* communications are inconsistent with and less stringent than the federal regulations, and they are no longer to be tolerated in Alabama or elsewhere.

---

[64]*Id.* at 954-55 (citing Horne v. Patton, 291 Ala. 701, 287 So. 2d 824 (1973)) (citations & footnotes omitted). *Cf. Zaden*, 2003 WL 22113880, at *14 (quoting *Doe*, 99 F.R.D. at 128 ("Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate conditions the witness alone may impose are satisfied . . . .")).

[65]45 C.F.R. § 164.512(e)(1) (2002).

[66]45 C.F.R. § 160.202 (2002).

Alabama's Rules of Civil Procedure, on the other hand, seem to be as stringent as the federal regulations. They also afford defendants ready access to a plaintiff's treating physicians. For example, the Alabama Rules of Civil Procedure, patterned after the Federal Rules of Civil Procedure, have twelve rules governing the methods and forms of discovery, including interrogatories, requests or production of documents, and depositions upon written questions. None of Alabama's rules restrict a defense attorney's efforts to discover facts and opinions from treating physicians, so long as plaintiff's attorney is given notice and an opportunity to participate (as with depositions[67] or depositions upon written questions[68]), or notice and an opportunity to object (as with non-party subpoenas[69]). Moreover, defense counsel can easily obtain medical records by requesting them from plaintiff's counsel. These procedures comply with and seem to be as stringent as the HIPAA regulations because they provide the plaintiff notice and an opportunity to object, as required by 45 C.F.R. § 164.512(e)(1). Accordingly, a simple requirement that a defendant comply with the Alabama Rules of Civil Procedure may avoid the preemptive effect of the federal regulations.

Another reason that Alabama courts must follow the provisions of HIPAA and prohibit *ex parte* communications can be found in the Alabama Supreme Court's recent decisions regarding a trial court's discretionary authority to impose restrictions on a party's access to witnesses.[70] The court formerly looked upon any such restrictions unfavorably.[71] In *Ex parte Stephens*, the court went so far as to vacate a trial court's protective order that restricted the plaintiff's access to the defendant's policyholders to interviews at which the defense's counsel was present.[72] Justice Houston issued a sharp dissent, however, stating that, "[i]n this case, the plaintiffs do not show a clear abuse of discretion.

---

[67] ALA. R. CIV. P. 32.

[68] ALA. R. CIV. P. 31. It is well recognized that Rule 31 "sets forth an inexpensive alternative to the deposition on oral examination." 1 CHAMP LYONS, JR., ALABAMA PRACTICE: RULES OF CIVIL PROCEDURE § 31.1, at 603 (3d ed. 1996).

[69] ALA. R. CIV. P. 34(b)(2).

[70] *See Ex parte* Henry, 770 So. 2d 76, 80 (Ala. 2000).

[71] *See, e.g., Ex parte* Stephens, 676 So. 2d 1307 (Ala. 1996), *overruled by Ex parte* Henry, 770 So. 2d 26 (Ala. 2000); *Ex parte* Clark, 582 So. 2d 1064 (Ala. 1991) (a case upon which the court relied heavily in *Stephens*).

[72] 676 So. 2d 1307, 1307 (Ala. 1996).

... [I]t was within the trial court's discretion to issue the protective order so as to allow defense counsel to be present during the interviews of former policyholders."[73] Interestingly, Justice Houston based his decision on the fact that the "[i]nsurers' policyholder lists are confidential, proprietary information."[74]

Justice Houston's dissent in *Stephens* was adopted by the court in *Ex parte Henry*, the case that overruled *Stephens*.[75] In *Henry*, the court affirmed a trial court's protective order that prevented the plaintiff's attorney from contacting any of the defendant's policyholders except by a trial court-approved-letter that required the recipient to take the "affirmative step of contacting the plaintiff's attorney if they so wish."[76] "We recognize that this holding conflicts with prior cases involving the question whether a trial judge clearly abused his discretion by placing limitations on the method by which the plaintiff's attorneys could contact other policyholders. To the extent those cases conflict with today's holding, they are overruled."[77]

*Henry* accurately reflects the current state of the law in Alabama on a trial court's restrictions on witness access. *Trial courts have broad control over a party's method of contacting a witness.* Part of the rationale for the restriction on the plaintiffs in *Henry* was the confidentiality of the defendant's policyholder lists.[78] Similarly, in *Horne v. Patton*, the Alabama Supreme Court recognized the confidential nature of information obtained in the doctor-patient relationship.[79] Alabama's legislature has provided legal protection of a patient's mental health records by enacting a psychotherapist-patient privilege.[80] Obviously, psychotherapist-patient and physician-patient communications are much more sensitive than confidential policyholder lists. This correlates well with the congressional emphasis on the need to protect an individual's

[73]*Stephens*, 676 So. 2d at 1316-17 (Houston, J., dissenting), *overruled by Ex parte Henry*, 770 So. 2d 76 (Ala. 2000).

[74]*Id.* at 1316.

[75]*Henry*, 770 So. 2d at 80.

[76]*Id.* at 81.

[77]*Id.* (citing *Ex parte* Hicks, 727 So. 2d 23 (Ala. 1988); *Stephens*, 676 So. 2d at 1316-17).

[78]*Id.* at 80.

[79]291 Ala. 701, 706, 287 So. 2d 824, 827 (1973).

[80]*See* ALA. R. EVID. 503; ALA. CODE § 34-26-2 (1975).

personal health information, as evidenced by the passage of HIPAA and most particularly the *Privacy Rule*. Thus, it is clear that, because a trial court cannot provide protections less stringent than those required by the HIPAA, they can and must use their inherent authority to control a defendant's access to a plaintiff's treating physicians by prohibiting *ex parte* communications.

Some Alabama laws are already more stringent than HIPAA, and are not preempted. Alabama's recognition of a psychotherapist-patient privilege is an example of a state law that provides greater protections. In Alabama, patients and their personal representatives have a privilege to prevent the disclosure of "confidential communications, made for the purposes of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family."[81] The Alabama Supreme Court has consistently held that a plaintiff does not waive this privilege by filing a civil lawsuit and placing his mental condition at issue.[82] Despite the fact that a patient files a lawsuit which puts the plaintiff's mental condition at issue, the privilege still "provides the patient the right to refuse to disclose, *and to prevent others from disclosing*, confidential communications between the patient and psychotherapist . . . and it encompasses notes or records made by the psychotherapist."[83] This privilege is waived only when the holder of the privilege "objectively manifest[s] a clear intent not to rely upon the privilege."[84]

The plaintiff has no way of knowing whether the privilege can or should be waived when *ex parte* interviews allow defendants to gather information in secret. Only the formal discovery process or some other system in which the plaintiff is granted the opportunity to determine whether the defendants seek privileged information gives the plaintiff the protections afforded by Alabama's psychotherapist-patient privilege. The Alabama Supreme Court has held that a motion for protective order governing the informal discovery process is the proper method of con-

---

[81] ALA. R. EVID. 503; *see also* ALA. CODE § 34-26-2 (1975).

[82] *See Ex parte* Pepper, 794 So. 2d 340, 343 (Ala. 2001); *Ex parte* United Serv. Stations, Inc., 628 So. 2d 501, 504 (Ala. 1993).

[83] *United Serv. Stations*, 628 So. 2d at 504 (emphasis added).

[84] *Id.* at 505.

trolling access to privileged or confidential information.[85] It has also held that a trial court has broad powers to control the methods of discovery and "to prevent its abuse by any party."[86] Thus, Alabama courts must use these powers to enforce its laws which are more stringent than HIPAA and prohibit *ex parte* communications.

Finally, as discussed above, the Alabama Supreme Court declined in *Romine v. Medicenters of America, Inc.* to exclude testimony from a treating physician who had engaged in *ex parte* communications with the defendant physician's attorney.[87] The testimony allowed was directly relevant to the issues presented in the lawsuit. The court again relied on the absence of a statutory recognition of a physician-patient privilege, and the absence of evidence that the defense attorneys had sought *through coercive or improper conduct* "disclosure of confidential information . . . via private interviews outside conventional discovery procedures."[88] However, HIPAA does not require a showing of coercive or improper conduct for a court to provide protections for a plaintiff's medical information. HIPAA renders the plaintiff's medical information confidential and requires notice and authorization as set forth in 45 C.F.R. § 164. Thus, HIPAA, by its very nature and unambiguous language, provides protections for a plaintiff's medical information. Because HIPAA pre-empts less stringent state law and provides the baseline for acceptable means by which necessary relevant information may be obtained, *ex parte* interviews of a treating physician to gain protected health information are now, by their very nature, improper.

## Conclusion

Alabama courts recognize the confidentiality of medical records and a statutory privilege for the privacy of psychotherapy records. HIPAA provides a *federal* regulatory answer to the Alabama Supreme Court's concern that the absence of a state privacy statute places societal concerns

---

[85]*See* Marsh v. Wenzel, 732 So. 2d 985, 990 (Ala. 1998).

[86]Assured Investors Life Ins. Co. v. Nat'l Union Assocs., Inc., 362 So. 2d 228, 231 (Ala. 1978).

[87]476 So. 2d 51 (Ala. 1985).

[88]*Romine*, 476 So. 2d at 60.

above the need to protect the individual's privacy. HIPAA now provides a baseline of minimal privacy protections, which leaves in place the more stringent aspects of Alabama law but requires Alabama's courts–all courts–to safeguard the confidentiality of personal health information as set forth in the HIPAA regulations. When measured against this frame-work, improper *ex parte* interviews between defense attorneys and plaintiff's treating physicians may no longer be tolerated.

Westlaw.

307 F.Supp.2d 705
(Cite as: 307 F.Supp.2d 705)

United States District Court,
D. Maryland,
Southern Division.

Rosalynn LAW, Plaintiff,
v.
David J. ZUCKERMAN, M.D., Defendant.

No. CIV.A. CBD-01-1429.

Feb. 27, 2004.

**Background:** Patient brought medical malpractice action against surgeon for injuries allegedly stemming from surgical treatment to remove abnormal cells from patient's cervix.

**Holdings:** On patient's motion to preclude treating physician from discussing the patient's treatment with defense counsel, the District Court, Day, United States Magistrate Judge, held that:

(1) as a matter of first impression, Health Insurance and Portability Accountability Act (HIPAA) preempted Maryland state law and governed all ex parte communications between defense counsel and patient's treating physician, but

(2) although HIPAA violation occurred, remedy of precluding defense counsel from having any further ex parte communications with the treating physician was not warranted.

Motion denied.

West Headnotes

**[1] Attorney and Client ⬅32(12)**
45k32(12) Most Cited Cases

Maryland law does not prohibit ex parte communications between a lawyer and the treating physician of an adverse party who has placed her medical condition at issue. West's Ann.Md.Code, Health-General, § 4-306(b)(3).

**[2] Attorney and Client ⬅32(12)**
45k32(12) Most Cited Cases

**[2] States ⬅18.15**
360k18.15 Most Cited Cases

Maryland medical information privacy statute, which mandated that a health care provider shall disclose patient records without authorization from patient in a medical malpractice action, was not more stringent than the requirements of Health Insurance and Portability Accountability Act (HIPAA), which gave each patient more control over the dissemination of their medical record; thus, for purposes of medical malpractice action, HIPAA preempted Maryland state law and governed all ex parte communications between defense counsel and patient's treating physician. Social Security Act, § 1173, 42 U.S.C.A. § 1320d-2; 45 C.F.R. § 160.203; West's Ann.Md.Code, Health-General, § 4-306(b)(3).

**[3] Attorney and Client ⬅32(12)**
45k32(12) Most Cited Cases

Although defense counsel's pre-trial contacts with patient's treating physician regarding the scope of the physician's care were in violation of Health Insurance and Portability Accountability Act (HIPAA), remedy of precluding defense counsel from having any further ex parte communications with the treating physician was not warranted; defense counsel exercised more than reasonable diligence when incorrectly determining that the contacts did not violate HIPAA, and remedy ordered by the court that either party could speak with the treating physician before physician testified about the issues set forth in patient's medical records effectively remedied any violation. Social Security Act, § 1173, 42 U.S.C.A. § 1320d-2; 45 C.F.R. § 160.203; West's Ann.Md.Code, Health-General, § 4-306(b)(3).

*706 Allen T. Eaton, III, LaVern D. Wiley, Eaton and McClellan, Washington, DC, Theresa M. Blanco, Eaton and McClellan, Philadelphia, PA, for Plaintiff.

Benjamin S. Vaughan, Karen A. Ferretti, Armstrong, Donohue, Ceppos and Vaughan Chtd, Rockville, MD, for Defendant.

*MEMORANDUM OPINION DENYING PLAINTIFF'S ORAL MOTION TO PRECLUDE DEFENSE COUNSEL FROM CONDUCTING EX PARTE INTERVIEWS*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*WITH PLAINTIFF'S TREATING PHYSICIAN*

DAY, United States Magistrate Judge.

The Court is faced with an apparent issue of first impression in the Fourth Circuit in this medical malpractice action. The question presented is whether adverse counsel's *ex parte* discussions with a treating physician regarding the scope of the physician's care violates the Health Insurance and Portability Accountability Act of *707 1996, 42 U.S.C. 1320d *et seq.* ("HIPAA"). The Court finds that in the absence of strict compliance with HIPAA such discussions are prohibited.

Plaintiff Rosalynn Law ("Plaintiff"), brought this medical malpractice action against Defendant David J. Zuckerman, M.D., ("Defendant"). Jurisdiction is based on diversity of citizenship, and therefore Maryland substantive law must be applied where it does not conflict with controlling federal law. This Court heard arguments on January 7, 2004 and January 8, 2004 pursuant to Plaintiff's oral motion to prohibit defense counsel from conducting *ex parte* interviews with Plaintiff's treating physician. ("Plaintiff's Motion"). After review of the relevant statutes and case law, the Court denied Plaintiff's Motion. The Court now supplements and further articulates its opinion.

There are two questions before the Court raised by Plaintiff's Motion. The first was whether Defendant's *ex parte* pre-trial contacts with Plaintiff's treating physician, Dr. Thomas Pinckert, were a violation of HIPAA. Second, if those contacts were a violation of HIPAA, whether the remedy was to preclude Defendant from having other *ex parte* communications with Dr. Pinckert. This Court finds that a violation of HIPAA did occur but the remedy requested is not appropriate.

A jury trial commenced in this case on January 6, 2004. Plaintiff alleged that the surgical treatment she received from Defendant rendered her cervix incompetent. Defendant performed a laser ablation procedure to remove dysplasia, or abnormal cells, from Plaintiff's cervix. Plaintiff's claim of malpractice is that during the procedure Defendant used laser power settings which caused collateral damage to her cervical tissue. Thereafter, Plaintiff became pregnant and increasingly concerned about her ability to carry a child. Plaintiff sought medical advice as to how best to carry the child to term. One treatment alternative available to Plaintiff was the placement of a cervical cerclage. Simply stated, the cerclage is a method of placing sutures on the cervical tissue so as to minimize

the dilation of the cervical opening during the course of pregnancy. Among Plaintiff's alleged damages were the costs and injuries associated with the placement of a permanent cerclage by Dr. Pinckert.

At the end of the second day of trial, Plaintiff raised an objection to *ex parte* communications that may have occurred between Dr. Thomas Pinckert and Defendant's counsel. Dr. Pinckert had long before been identified as one of Defendant's fact witnesses in the Pre-trial Statement prepared by the parties and approved by the Court. Dr. Pinckert was called to testify as Defendant's first fact witness and to explain that Plaintiff's alleged damages due to the placement of the cerclage were the result of an elective surgical procedure and not a procedure compelled by the alleged negligent care of Defendant. Defendant's counsel met with Dr. Pinckert after Plaintiff provided her medical records to Defendant as part of discovery. Plaintiff was never notified in advance that Defendant's counsel would pursue *ex parte* communications with her treating physician. Plaintiff asserts that any attempt by the defense to have such communications is a violation of HIPAA.

Plaintiff's sole request is for the issuance of an order precluding Dr. Pinckert from discussing Plaintiff's treatment and care with defense counsel or, in the alternative, to order Defendant to disclose all communications held with Dr. Pinckert and the details of Dr. Pinckert's expected testimony at trial. Transcript of Motions Hearing ("Transcript") January 7, 2004, at 4-5. Defendant's counsel stated that *ex parte* communications outside the four corners *708 of Dr. Pinckert's medical records regarding Plaintiff had not taken place, and that it was not the intention of the defense to do so at any time. Transcript, January 7, 2004, at 4-5; Transcript, January 8, 2004, at 6-7.

The Court initially disagreed with Plaintiff as to the application of HIPAA. The Court then issued an order permitting both sides to have ex parte communications with Dr. Pinckert regarding his care and treatment for purposes of the present case before he testified as a fact witness. Upon further reflection, the Court believes Plaintiff correctly discerned the applicability of HIPAA, but the remedy remains unchanged.

### Discussion

*A. The ex parte contacts between Defendant and Dr. Pinckert are governed by HIPAA not Maryland law.*

[1] Maryland law does not prohibit *ex parte* communications "between a lawyer and the treating

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

physician of an adverse party who has placed her medical condition at issue." _Butler-Tulio v. Scroggins,_ 139 Md.App. 122, 150, 774 A.2d 1209 (2001). Nor does HIPAA prohibit all _ex parte_ communications with a treating physician for an adverse party. Mere contact between Plaintiff's physician and Defendant's counsel is not regulated by HIPAA. Such contact could include discussion of many benign topics, including but not limited to, the best methods for service of a subpoena, determining convenient dates to provide trial testimony, or the most convenient location for the anticipated deposition of the physician. However, HIPAA clearly regulates the methods by which a physician may release a patient's health information, including "oral" medical records. "The HIPAA regulations permit discovery of protected health information so long as a court order or agreement of the parties prohibits disclosure of the information outside the litigation and requires the return of the information once the proceedings are concluded." _Helping Hand, LLC v. Baltimore County,_ 295 F.Supp.2d 585 (D.Md.2003).

HIPAA and the standards promulgated by the Secretary of Health and Human Services ("Secretary") in the Code of Federal Regulations set forth the baseline for the release of health information. A patient's health information may be disclosed pursuant to 45 C.F.R. § 164.512(e)(1)(i), which states that disclosure is permitted "in response to an order of a court ... provided that the covered entity discloses only the protected health information expressly authorized by such order." Health information includes

any information, whether oral or recorded in any form or medium, that: (1) is created or received by a health care provider ...; and (2) relates to the past, present or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual.

45 C.F.R. § 160.103. A trial or deposition subpoena is appropriately treated differently from an order of the Court. When medical information is to be released in response to a subpoena or discovery request, the health care provider must receive satisfactory assurance that: (1) there have been good faith attempts to notify the subject of the protected health information in writing of the request and that subject has been given the opportunity to object; or (2) reasonable efforts have been made by the requesting party to obtain a qualified protective order. 45 C.F.R. § 164.512(e)(1)(ii)(A) and (B).

HIPAA and the related provisions established in the Code of Federal Regulations expressly supercede any

contrary *709 provisions of state law except as provided in 42 U.S.C. § 1320d-7(a)(2). Under the relevant exception, HIPAA and its standards do not preempt state law if the state law relates to the privacy of individually identifiable health information and is "more stringent" than HIPAA's requirements. 42 U.S.C. § 1320d- 7(a)(2)(B)(referring back to the Historical and Statutory notes to 42 U.S.C § 1320d-2); 45 C.F.R. § 160.203.

[2] Defendant's counsel has argued that the Maryland Confidentiality of Medical Records Act, Md. Code Ann. Health-Gen. I § 4-306(b)(3), ("MCMRA"), governs this case and not HIPAA because MCMRA's rule governing disclosure is mandatory and therefore more restrictive than HIPAA's permissive rule governing disclosure. Transcript, January 7, 2004, at 2-3. Section 4-306(b)(3) states

(b) _Permitted disclosures._--A health care provider shall disclose a medical record without the authorization of a person in interest:

.    .    .    .

(3) To a health care provider or the provider's insurer or legal counsel, all information in a medical record relating to a patient or recipient's health, health care, or treatment which forms the basis for the issues of a claim in a civil action initiated by the patient, recipient, or person in interest.

MCMRA is applicable to cases where the patient has sued her health care provider alleging medical malpractice. MCMRA states that in such an instance, a health care provider _shall_ disclose patient records without authorization from the patient. Conversely, HIPAA states that a health care provider _may_ disclose patient records after using certain procedures. For the reasons set forth below, the Court does not agree that MCMRA is "more stringent" than HIPAA's requirements. Accordingly, HIPAA preempts MCMRA and is controlling on the issue of _ex parte_ communications. This Court expressly refrains from opining upon the validity of MCMRA as it relates to the initial disclosure of medical records under § 4-306(b)(3).

Under 45 C.F.R. § 160.203, a state law that is contrary to "a standard, requirement, or implementation specification adopted under this subchapter" is preempted unless it meets one of a small list of exceptions. The only exception relevant here is found in 45 C.F.R. § 160.203(b) which states that a state law is not preempted if it is "more stringent" than a standard, requirement or implementation specification adopted under HIPAA. "More stringent," as defined in 45 C.F.R. § 160.202, means, that the state law meets

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

any one of six criteria. The criteria applicable to this case are the fourth and the sixth listed under the "*more stringent*" definition.

(4) With respect to the form, substance, or the need for express legal permission from an individual, who is the subject of the individually identifiable health information, provides requirements that narrow the scope of duration, increase the privacy protections afforded (such as by expanding the criteria for), or reduce the coercive effect of the circumstances surrounding the express legal permission, as applicable.

. . . . .

(6) With respect to any other matter, provides greater privacy protection for the individual who is the subject of the individually identifiable health information.

*Id.* In light of the criteria listed above, the Court views "more stringent" to mean laws that afford patients *more* control over their medical records. This Court's analysis is confirmed by a review of the case law from other jurisdictions.

\*710 Most recently, this issue was addressed in *National Abortion Fed'n v. Ashcroft,* 2004 WL 292079 (N.D.Ill.2004), in the context of a motion to quash a subpoena brought by Northwestern Memorial Hospital (the "Hospital"). In granting the Hospital's motion to quash the Court addressed the question of whether the Illinois medical information privacy laws are more stringent than HIPAA's requirements. *Id.* at 2004 WL 292079 \*2. The Illinois law prohibits the disclosure by a health care provider of "any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient," without patient consent, even in response to a subpoena. The Illinois courts have held that the protections of this law apply even if the patients' names and identification numbers are deleted or redacted from their medical records. *Id.* at 2004 WL 292079 \*3. Conversely, HIPAA would allow such disclosures with the suggested redactions. Juxtaposing the two statutes, the Court found that "Illinois law concerning when nonparty patient medical records may be disclosed by hospitals" without patient consent is "more stringent" than HIPAA and thus, state law was not preempted. *Id.*

In *United States v. Louisiana Clinic,* 2002 WL 31819130 (E.D.La.2002), defendants argued that Louisiana law concerning unauthorized disclosure of confidential medical information should apply because it was "more stringent" than HIPAA. Louisiana law requires either that a patient give his or her consent to

the disclosure, or in the absence of consent, that "a court shall issue an order for the production and disclosure of a patient's records ... only: after a contradictory hearing with the patient ... and after a finding by the court that the release of the requested information is proper." *Id.* at 2002 WL 31819130 \*5 (citing La. Rev. Stat. Ann. § 13:3715.1(B)(5)). However, the Court noted that the Louisiana law did not address "the form, substance or the need for express legal permission from an individual," which is "required by 45 C.F.R. § 160.202 for the exception to apply." The Court stated that instead of increasing the restrictions on express legal permission "the Louisiana statute provides a way of negating the need for such permission." *Id.* The Court found that the Louisiana law was not "more stringent" than the HIPAA regulations and it was therefore preempted by federal law.

Finally, the New Jersey Superior Court addressed this issue in an unpublished opinion decided September 23, 2003. *In re PPA Litigation,* 2003 WL 22203734 (N.J.Super.L.2003). Under New Jersey case law, *ex parte* interviews are a legitimate means of informal discovery. *Id.* at \*13. However, because the New Jersey safeguards for disclosure fall below the HIPAA standards for disclosure, HIPAA preempts New Jersey law in that regard. *Id.* The New Jersey safeguards provide Plaintiff's counsel with notice of the proposed interview, provide the physician with a description of the anticipated scope of the interview, and communicate that the physician's participation in the interview is voluntary. *Id.* at \*2. Under state law, the patient can not prevent disclosure of the medical information. The New Jersey Superior Court found these safeguards to be insufficient under HIPAA and found that a reasonable notice provision and an opportunity for the patient to object would bring New Jersey into compliance.

Congress enacted HIPAA, in part, to protect the security and privacy of individually identifiable health information. 45 C.F.R. § 164.501 *et seq; United States v. Sutherland,* 143 F.Supp.2d. 609, 612 (W.D.Va.2001). The rules promulgated by the Secretary define and restrict the ability of health care providers to divulge patient \*711 medical records without express consent of the patient or pursuant to a court order. *Id.* It is clear there is strong federal policy in favor of protecting the privacy of patient medical records.

The key component in analyzing HIPAA's "more stringent" requirement is the ability of the patient to withhold permission and to effectively block

disclosure.    HIPAA's permissive disclosure requirements give each patient more control over the dissemination of their medical records than MCMRA, while MCMRA sacrifices the patient's control of their private health information in order to expedite malpractice litigation. If state law can force disclosure without a court order, or the patient's consent, it is not "more stringent" than the HIPAA regulations. MCMRA is designed to give adverse counsel access to a patient's medical records without consent. [FN1] Since Maryland law fails to satisfy the "more stringent" standard, federal law is controlling and all *ex parte* communications must be conducted in accordance with the procedures set forth in HIPAA.

> FN1. Under MCMRA, it can be plausibly argued that patient consent is inferred by the filing of suit by Plaintiffs. This Court does not believe inferred consent satisfies the intended purpose of HIPAA.

**B.  Informal  discovery  of  protected  health information is now prohibited unless the patient consents.**

The recently enacted HIPAA statute has radically changed the landscape of how litigators can conduct informal discovery in cases involving medical treatment. In times past, given Maryland's reluctance to embrace the physician-patient privilege, *ex parte* contacts with an adversary's treating physician may have been a valuable tool in the arsenal of savvy counsel. The element of surprise could lead to case altering, if not case dispositive results.    *Ngo v. Standard Tools & Equipment, Co., Inc.,* 197 F.R.D. 263 (D.Md.2000)(defendant was free to converse with and use Plaintiff's treating physician as a witness contrary to Plaintiff's wishes). Counsel should now be far more cautious in their contacts with medical fact witnesses when compared to other fact witnesses to ensure that they do not run afoul of HIPAA's regulatory scheme.    Wise counsel must now treat medical witnesses similar to the high ranking corporate employee of an adverse party.    See *Camden v. Maryland,* 910 F.Supp.1115 (D.Md.1996)(holding that counsel may not have *ex parte* contact with the former employee of an adverse party when the lawyer knows or should know that the former employee has been extensively exposed to confidential client information); *Accord Zachair, Ltd. v. Driggs,* 965 F.Supp. 741 (D.Md.1997); *But see Davidson Supply Co., Inc. v. P.P.E., Inc.,* 986 F.Supp. 956 (D.Md.1997).

HIPAA outlines the steps to follow in order to obtain protected health information during a judicial proceeding in 45 C.F.R. § 164.512(e). There are three ways. First, counsel may obtain a court order which allows the health care provider to disclose "only the protected health information expressly authorized by such order."    45 C.F.R. § 164.512(e)(1)(i).    In the absence of a court order, §§ 164.512(e)(1)(ii)(A) and (B) provide two additional methods available when used in conjunction with more traditional means of discovery.

*C. The imposition of sanctions is not appropriate.*

To the extent there was a disclosure of individually identifiable health information, Defendant's pretrial contacts with Dr. Pinckert were in violation of HIPAA. However, the remedy sought by Plaintiff precluding Defendant's counsel from speaking further with Dr. Pinckert about *712 Plaintiff's treatment is not appropriate here.

The civil remedies for failure to comply with the requirements and standards of HIPAA are found under 42 U.S.C. § 1320d-5. The Secretary shall fine any person who violates a provision of HIPAA "not more than $100 for each such violation."    42 U.S.C. § 1320d-5(a)(1). However, this penalty may not be imposed if either (1) "the person liable for the penalty did not know, and by exercising reasonable diligence would not have known, that such person violated the provision;" or (2) "the failure to comply was due to reasonable cause and not willful neglect" and "the failure to comply is corrected during the 30-day period beginning on the first date the person is liable for the penalty knew, or by exercising reasonable care would have known, that the failure to comply occurred."    42 U.S.C. § 1320d-5(b)(2) and (3).    Since HIPAA does not include any reference to how a court should treat such a violation during discovery or at trial, the type of remedy to be applied is within the discretion of the Court under Fed. R. Civ. P. 37.

In this case, this Court's discretion is guided by the fact that the penalty that could be levied by the Secretary as described above is mild and that in all likelihood the defense would be able to afford itself of the aforementioned statutory defenses. All counsel were knowledgeable and extremely skilled in addressing the issues presented in this less than clear area of the law. [FN2]

> FN2. Parenthetically, counsel for both parties repeatedly demonstrated the high ideal of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

civility in their dealings with the Court and each other throughout these proceedings. All counsel aggressively represented their clients, while being courteous litigants. *See* THE CODE OF CIVILITY OF THE BAR ASS'N OF MONTGOMERY COUNTY, MARYLAND (2003); MARYLAND STATE BAR ASS'N CODE OF CIVILITY (1997).

Defendant's counsel believed in good faith that MCMRA fell into the "required by law"    [FN3] exception to HIPAA. Transcript January 7, 2004, 2-3. It does not. The exception is found under 45 C.F.R. § 164.512 and sets forth additional requirements that must be satisfied before the Maryland statute can be accepted under the rubric of "required by law."

> FN3. "*Required by law* means a mandate contained in law that compels an entity to make a use or disclosure of protected health information and that is enforceable in a court of law. *Required by law* includes, but is not limited to, ... statutes or regulations that require such information [.]"  45 C.F.R. § 164.103.

Under 45 C.F.R. § 164.512(a)(1), a doctor or other covered entity "may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law." Defendant reasoned that because MCMRA mandates that patient records are discoverable without authorization or notice to the patient, its *ex parte* communications with Dr. Pinckert fell into this exception. However, a closer reading of the statute reveals that a doctor or other covered entity "must meet the requirements described in paragraph (c)(e), or (f)" of § 164.512 when they are "required by law" to disclose protected health information.  45 C.F.R. § 164.512(a)(2).

Paragraph (e) of § 164.512, "disclosures for judicial and administrative proceedings," applies to medical information disclosed during discovery. This section anticipates that a patient's records can only be disclosed in response to a court order, or, if in the case of a subpoena or discovery request, when accompanied by satisfactory assurance that (1) written notice has been given to the patient allowing an *713 opportunity to object;  or (2) a qualified protective order has been sought by the requesting party. 45 C.F.R. § 164.512(e)

*et seq.* It therefore follows that while a physician may disclose a patient's records in accordance with MCMRA's mandate, he or she must do so using the procedures set forth in HIPAA.

[3] Notwithstanding the Court's disagreement with Defendant's counsel's analysis, it is clear that he exercised more than reasonable diligence when determining that his contacts with Dr. Pinckert did not violate HIPAA. On January 8, 2004, the Court did not find at the time that HIPAA applied in the instant case. Transcript, January 8, 2004 at 5-6. However, in the event that Defendant's contact with Dr. Pinckert triggered a HIPAA violation, the Court ordered that either party could speak with Dr. Pinckert before he testified about the issues set forth in Plaintiff's medical records. The Court also stated that if Dr. Pinckert strayed in his testimony from the medical records and offered any opinions beyond his experience as Plaintiff's treating physician such testimony would be prohibited. While the Court finds upon further review that HIPAA was applicable to any pre-trial disclosure of Plaintiff's medical information, it is also apparent that the Court's Order effectively remedied any potential violation.

### D. Conclusion

Therefore, for the reasons stated above, Plaintiff's Motion to preclude Dr. Pinckert from discussing the Plaintiff's treatment with defense counsel is denied.

307 F.Supp.2d 705

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## STANDING HIPAA ORDER IN CIVIL ACTIONS

Upon compliance with Rule 45 of the Alabama Rules of Civil Procedure, the attorneys for the parties and any pro se parties are permitted to inspect and copy all health information relating to any individual who is a party to this cause, or relating to any decedent or any real party in interest, whose interest is represented by an executor, administrator, guardian, next friend, bailee or trustee; and to inspect and copy all information relative to payment for the provision of medical care to any such individual.

This Order authorizes any third-party who is provided with a subpoena requesting the production of documents or commanding attendance at deposition or trial to disclose Protected Health Information in response to such request or subpoena. The Order is intended to authorize such disclosures under Section 164.512(e)(1) of the privacy regulation issued pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

Nothing in this order shall be deemed to relieve any party or attorney of the requirements of the Alabama Rules of Civil Procedure. Nothing in this order permits disclosure of confidential communications, made for the purpose of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapists, including members of the patient's family, nor does this Order permit disclosure of records or information relating to HIV testing or sexually transmitted disease which are protected from discovery by any statute, court rule or decision.

Nothing in this Order authorizes any party or any attorney for any party to release or disclose any Protected Health Information to any other person or other entity not a party to this cause, other than agents or employees of the attorney or party obtaining the information.

DONE at Mobile this ____ day of _____, 20____.

_____
ROBERT G. KENDALL
Presiding Circuit Judge

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

RONALD G. COLLINS,               *

VS.                              *      CV03-3327

SPRINGHILL HOSPITALS, INC.       *

### ORDER

This matter is before the Court on the motion of Coastal Anesthesia, P.C., Jose Castillo, M.D., and Kathy Richards for the entry of a proposed HIPAA order. To the extent that said motion requests authorization from the Court to conduct ex parte interviews of medical providers, the same is DENIED.

The parameters for discovery of medical information is set forth by way of separate order entered this date.

Done this __11th__ day of February, 2004.

JOHN R. LOCKETT
CIRCUIT JUDGE

cc:    Wesley Pipes, Esq.
       Ginger Davis Johnson, Esq.
       Joseph M. Brown, Jr., Esq.
       William L. Utsey, Esq.
       Philip H. Partridge, Esq.

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

RONALD G. COLLINS,          *

VS.                         *          CV03-3327

SPRINGHILL HOSPITALS, INC.  *

## HIPAA ORDER

Upon compliance with Rule 45 of the Alabama Rules of Civil Procedure, the attorneys for the parties and any pro se parties are permitted to inspect and copy all health information relating to any individual who is a party to this cause, or relating to any decedent or any real party in interest, whose interest is represented by an executor, administrator, guardian, next friend, bailee or trustee; and to inspect and copy all information relative to payment for the provision of medical care to any such individual.

This Order authorizes any third-party who is provided with a subpoena requesting the production of documents or commanding attendance at deposition or trial to disclose Protected Health Information in response to such request or subpoena. The Order is intended to authorize such disclosures under Section 164.512(e)(1) of the privacy regulation issued pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

Nothing in this Order shall be deemed to relieve any party or attorney of the requirements of the Alabama Rules of Civil Procedure. Nothing in

this order permits disclosure of confidential communications, made for the purpose of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapists, including members of the patient's family, nor does this Order permit disclosure of records or information relating to HIV testing or sexually transmitted disease which are protected from discovery by any statute, court rule or decision.

Nothing in this Order authorizes any party or any attorney for any party to release or disclose any Protected Health Information to any other person or other entity not a party to this cause, other than agents or employees of the attorney or party obtaining the information.

Done this _11th_ day of February, 2004.

JOHN R. LOCKETT
CIRCUIT JUDGE

cc:    Wesley Pipes, Esq.
       Ginger Davis Johnson, Esq.
       Joseph M. Brown, Jr., Esq.
       William L. Utsey, Esq.
       Philip H. Partridge, Esq.

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, etc.,

     Plaintiff,

CIVIL ACTION

VS.

NO. CV-06-31

J&J WOOD, INC. et al,

     Defendants.

---

### PLAINTIFF'S RESPONSE TO DEFENDANT QUALITY CASUALTY INSURANCE COMPANY, INC'S MOTION TO DISMISS COUNT FIVE OF PLAINTIFF'S COMPLAINT

---

Comes now the Plaintiff in the above styled cause and offers the following in response to Defendant Quality Casualty Insurance Company, Inc.'s Motion to Dismiss:

     1.    In light of the Alabama Supreme Court's recent holding of *Progressive Specialty Co. v. Green*, _____ So.2d _____, 2006 WL 75243 (Ala. Jan. 13, 2006), Plaintiff is unable to offer or martial any additional evidence which may support her position that James Farrell Howell, deceased, in fact had underinsured/uninsured motorist benefits with the Defendant Quality Casualty Insurance Company, Inc.

          CUNNINGHAM, BOUNDS, CROWDER, BROWN AND BREEDLOVE, LLC, Attorneys for the Plaintiff

     By:_____
        DAVID S. CAIN, JR.
        dsc@cbcbb.com
        Post Office Box 66705
        Mobile, Alabama 36660
        Telephone:    251-471-6191
        Facsimile:     251-479-1031

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the __17th__ day of April, 2006 served a copy of the foregoing on counsel for all parties to this proceeding by mailing the same by United States mail, first-class postage prepaid to:

Paul A. Miller, Esq.
LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.
501 Riverchase Parkway East, Suite 100
Birmingham, Alabama 35244

David L. Faulkner, Jr., Esq.
CHRISTIAN & SMALL, LLP
505 20th Street North, Suite 1800
Birmingham, Alabama 35203-2696

DAVID S. CAIN, JR.

-2-

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | | |
|---|---|---|
| TERESA BROWN a/k/a TERESA WILSON and DONNIE WILSON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. CV-03-0867-FDM |
| RIMANTAS ZALEPUGA, M.D.; REYNALDO RODRIGUEZ, D.O.; UNIVERSITY OF SOUTH ALABAMA HEALTH SERVICES FOUNDATION, et al., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | | |

## ORDER

This matter came on to be heard on May 7, 2004 upon a "Motion for HIPAA Order Pursuant to 45 CFR § 164.512(e)(1)" filed by Defendants, Rimantas Zalepuga, M.D., Reynaldo Rodriguez, D.O., and University of South Alabama Health Services Foundation. Plaintiffs opposed the motion. Upon consideration of the parties' arguments, the Court finds and declares as follows:

1. HIPAA is an acronym for a federal Act titled the "Health Insurance Portability and Accountability Act of 1996." 42 U.S.C. 1320(d), et seq. The legislative purpose of the Act was to provide individuals with protection for the confidentiality of their private health information.

2. HIPAA sets forth "Privacy Standards" promulgated by the United States Department of Health and Human Services that became effective April 14, 2003, 45 C.F.R., Parts 160, 164.

3.     Congress enacted HIPAA, in part, to protect the security and privacy of individually identifiable health information.  45 C.F.R. § 164.501, et seq.; *United States v. Southerland*, 143 F.Supp.2d 609, 612 (W.D. VA 2001).  The rules promulgated by the Secretary of HHS define and restrict the ability of health care providers to divulge patient medical records without express consent of the patient, or pursuant to a qualifying court order.  Id.  "It is clear there is strong federal policy in favor of protecting the privacy of patient medical records."  *Law v. Zuckerman*, ____F. Supp. 2d ___, 2004 WL 438327 (S.D. Md. 2004).

4.     "HIPAA and the related provisions established in the Code of Federal Regulations expressly supersede contrary provisions of state law except as provided in 42 U.S.C. § 1320d-7(a)(2).  Under the relevant exception, HIPAA and its standards do not preempt state law if the state law relates to the privacy of individually identifiable health information and is 'more stringent' than HIPAA's requirements".  *Law v. Zuckerman, supra,* ___ F.Supp.2d at __, citing 42 U.S.C. § 1320d-7(a)(2)(B) (referring back to the historical and statutory notes to 42 U.S.C. § 1320d-2); 45 C.F.R. Section 150.203.

5.     HIPAA clearly regulates the methods by which a physician may release a patient's protected health information, including medical records and oral communications.  *Law*, ____ F.Supp. 2d  at ____.  "A patient's health information may be disclosed pursuant to 45 C.F.R. §164.512(e)(1)(i), which permits disclosure 'in response to an order of a court'… provided that the covered entity discloses only the protected health information expressly authorized by such order.  Health information includes any information, whether oral or recorded in any form or medium, that: (1) is created or received by a health care provider ….; and (2) relates to the past, present or future physical or mental health or

2

condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual." *Law*, ____ F.Supp.2d at ___, citing, 45 C.F.R. §160.103

6.      Under 45 C.F.R. §160.203, a state law that is contrary to "a  standard, requirement, or implementation specifically adopted under the sub-chapter" is preempted unless it meets one of small list of exceptions.  The only exception relevant here is found at 45 C.F.R. §160.203(b), which states that a state law is not preempted if it is "more stringent" than a standard, requirement or implementation specifically adopted under HIPAA.  "More stringent," as defined in 45 C.F.R. §160.202, means that the state law meets any one of six criteria.  The criteria applicable to this case are the fourth and the sixth under the "more stringent" definition.

> (4) With respect to the form, substance, or the need for express legal permission from an individual, who is the subject of the individually identifiable health information, provides requirements that narrow the scope of duration, increase the privacy protections afforded (such as by expanding the criteria for), or reduce the coercive effect of the circumstances surrounding the express legal permission, as applicable. ...

> (6) With respect to any other matter, provides greater privacy protection than the individual who is the subject of the individually identifiable health information.

*Law*, ____ F. Supp. 2d at ___.  The district court in *Law* held that the term "more stringent" had to be defined in way to afford patients more control over their medical records and history, not less.

7.      Historically, Alabama law has given the trial court broad discretion with regard to discovery and the ability of defense counsel to have *ex parte* contacts with plaintiffs' treating physicians.  When the trial court has exercised such broad discretion in regard to

3

*ex parte* contacts, Alabama law has supported such discretion of the trial judge. *Zaden v. Elkus*, 2003 W.L. 22113880 (Ala. 2003); *Romine v. Med Centers of America, Inc.*, 476 So.2d 51 (Ala. 1985).

8.    The key component in analyzing HIPAA's "more stringent" requirement is the ability of the patient to withhold permission and to effectively block disclosure. HIPAA's permissive disclosure requirements give each patient more control over the dissemination of their medical records than historic Alabama law allowing unfettered *ex parte* contacts with plaintiffs' treating physicians. If state law allows such *ex parte* contacts without a court order or without the patient's consent, then it is certainly not "more stringent" than the HIPAA regulations. As such, the new federal privacy rule preempts Alabama's common law decisions permitting past *ex parte* communications.

Indeed, New Jersey, like Alabama, had historically allowed *ex parte* communications, but has recently concluded that its state rule is now preempted by the federal privacy rule. *In Re PPA Litigation*, 2003 W.L. 22203734 (N.J. Super. L. 2003). *See, also, Law*, ____ F.Supp.2d at ____.

9.    "HIPAA outlines three ways to obtain protected health information during a judicial proceeding in 45 C.F.R. §164.512(e). First, counsel may obtain a court order which allows a health care provider to disclose 'only the protected health information expressly authorized by such order', 45 C.F.R. §164.512(e)(1)(i)". *Law*, ____ F. Supp. 2d at ____. Without a court order, §164.512(e)(1)(ii)(A) and (B) provide two additional methods available when used in conjunction with more traditional means of discovery. Sub-section (ii) concerns a health care provider's response to a subpoena, discovery

4

request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal if:   (A) the covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information, that reasonable efforts have been made by such party to insure that the individual who is the subject of that protected health information that has been requested has been given notice of the request; or (B) the covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information, that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.   In the instant case, the Protective Order proposed by the defendant fails to meet the standard imposed by 45 C.F.R. §164.512(e)(1)(i).

10.    Consideration of public policy issues and fundamental fairness also points towards precluding *ex parte* communications with plaintiff's healthcare providers. As the Arizona Court of Appeals recognized in *Duquette v. Superior Court*, 778 P. 2d 634 (Ariz. App. 1989), the fact that a treating physician is insured by the same insurance carrier as the defendant, is highly relevant to the pressure that a physician faces when a defense attorney requests an *ex parte* interview.  The Court opined, "we also note that in Arizona, a substantial number of physicians are insured by 'doctor-owned' insurer. Realistically, this factor could have an impact on the physician's decision [whether or not to reject the request for an *ex parte* interview].  In other words, the physician might feel compelled to participate in the *ex parte* interview because the insurer defending the medical malpractice defendant may also insure the physician witness."  The Supreme Court of West Virginia noted that "the danger of ex parte interviews of a doctor by adverse counsel is that the

5

patient's lawyer is afforded no opportunity to object to the disclosure of medical information that is remote, irrelevant, or compromising in the context other than the lawsuit at hand. *West Virginia ex rel Kitzmiller v. Henning*, 437 S.E. 2d 452 (W. Va. 1993). The Supreme Court of Iowa noted that letting defense counsel decide what information is relevant is risky. *Roosevelt Hotel, Ltd. Partnership v. Sweeney*, 395 N.W. 2d 353 (Iowa 1986).

11.     In this case, the Defendants' attorneys seek the Court's permission to have *ex parte* interviews with Plaintiffs' physician in a malpractice action. The case and its issues are not akin to a simple automobile accident litigation. In the automobile accident cases, where the plaintiff files suit seeking a money award for his alleged injuries, he cannot be heard to say that he can conceal the records made by health care providers under a theory of them being confidential or some invasion of his privacy. If such privacy exists, it is waived by him filing suit. *Ex parte Dumas*, 778 So.2d 798 (Ala. 2000).

Regardless of the requirements or implications of HIPAA or the new federal privacy regulations, this Court must balance the fundamental rights of all parties, and, in doing so, cannot condone *ex parte* communication between the Defendants' attorneys and physicians of the Plaintiff. This Court believes that by simply following the Alabama Rules of Civil Procedure, the Defendants' rights can be protected without such *ex parte* communication. The Court is certainly not aware of any case law which would restrict a Defendant's attorney in his efforts to formally discover facts and opinions from such physician.

### Conclusion

So that there will be absolutely no mistake about this Court's Order, the Defendants shall abide by the requirements of the Alabama Rules of Civil Procedure, and thereby have the absolute right to subpoena (and thereby inspect and copy) any and all records relating to the Plaintiff, Teresa Brown, a/k/a Teresa Wilson, as well as to inspect and copy all information relevant to the payment of such medical treatment. However, the Defendants cannot conduct *ex parte* interviews of Teresa Brown, a/k/a Teresa Wilson's, health care providers. Should they wish to meet or speak with any of those health care providers, the Defendants' attorneys must first notify Plaintiffs' counsel and afford them the opportunity to be present during any such interview or conversation.

DONE and ORDERED this _19th_ day of _May_, 2004.

_____
FERRILL D. McRAE
Circuit Court Judge

Filed May 19, 2004
Susan F. Wilson, Clerk

7

CHARLENE HOWELL,                    )   IN THE CIRCUIT COURT OF

        PLAINTIFF,              )   RUSSELL COUNTY, ALABAMA

VS                                 )

J & J WOOD, INC., et al.,           )   CASE NO. CV 06-031

        DEFENDANTS,            )

## ORDER

Upon defendant, Quality Casualty Insurance Company, Inc.'s "Motion to Dismiss Count Five of the Plaintiff's Complaint and the Defendant, Quality Casualty Insurance Company, Inc." having been filed herein,

It is

ORDERED, ADJUDGED, AND DECREED:

That plaintiff has thirty (30) days to reply to defendant, Quality Casualty Insurance Company, Inc's motion to dismiss.

That notice shall issue to all parties.

DONE this the 10th day of March 2006.

_____
ALBERT L. JOHNSON, CIRCUIT JUDGE



| STATE OF ALABAMA | Revised 2/22/05 | ➤ Case No. |
|---|---|---|
| Unified Judicial System | Check one (Not for Workers' Comp, PFA, or Small Slaims cases): | CV-06-3! |
| Russell County | ☐ District Court   ☒ Circuit Court | |

**Style of case:**
Charlene Howell
v. J&J Wood, Inc., Timothy Lee Simonds, Quality Casualty Insurance
Company, Inc.

# MOTION COVER SHEET

*Name of Filing Party:* Qaulity Casualty Insurance Company, Inc.

| Name, Address, and Telephone No. of Attorney or Party, If Not Represented: | To be filled out by Clerk of Court: |
|---|---|
| David L. Faulkner, Jr. | ☐ Filing Fee Charged and Collected (Amt $ ) |
| Christian & Small, LLP | ☐ Filing Fee Not Required (SM, Work Comp, PFA) |
| 505 North 20ᵗʰ Street, Suite 1800 | ☐ Affidavit of Hardship on File |
| Birmingham, Alabama 35203 | |
| Attorney Bar No.: ASB-3100-r69d | |

## Type of Motion (Check One)

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment($50.00) | ☐ Add Party |
| ☐ Intervene or Appear as Third Party Plaintiff-Only in CV | ☐ Amend |
|   Cases, excluding DR cases filed on the CV docket($297.00) | ☐ Change of Venue/Transfer |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary | ☐ Compel |
|   Judgment, Judgment on the Pleadings, or other Dispositive | ☐ Consolidation |
|   Motion not pursuant to Rule 12(b))($50.00) | ☐ Continue |
| ☐ Judgment on the Pleadings($50.00) | ☐ Deposition |
| ☒ Motion to Dismiss, or in the Alternative Summary | ☐ Designate a Mediator |
|   Judgment($50.00) | ☐ Judgment as a Matter of Law (during trial) |
| ☐ Other Dispositive Motion not pursuant to Rule 12(b)($50.00) | ☐ Disburse Funds |
| ☐ Renewed Dispositive Motion (Summary Judgment, Judgment on | ☐ Discovery |
|   the Pleadings, or other Dispositive Motion | ☐ Ex Parte Restraining |
|   not pursuant to Rule 12(b))($50.00) | ☐ Extension of Time |
| ☐ Summary Judgment or other Dispositive Motion not | ☐ In Limine |
|   pursuant to Rule 12(b)($50.00) | ☐ Joinder |
| ☐ Other _____ . | ☐ More Definite Statement |
|   Pursuant to Rule _____($50.00) | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to | ☐ Objection of Exemptions Claimed |
| Local Act are not included. Please contact the Clerk of the Court | ☐ Plaintiff's Motion to Dismiss or Stipulation of Dismissal |
| regarding applicable local fees. | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| ☐ Local Court Cost $_____ | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Show Cause |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Temporary Restraining Order |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other _____ |
| |   pursuant to Rule _____ (Subject to filing fee) |

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship ☐ | Date: March 8, 2006 | Signature of Attorney or Party: |
|---|---|---|

This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
*Motions titled "Motion to Dismiss" that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

## IN THE CIRCUIT COURT FOR RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as the      *
personal representative of the Estate   *
of JAMES FARRELL HOWELL, deceased,   *
     *
     PLAINTIFF,             *
     *
v.                        *     **CIVIL ACTION NO. CV-06-31**
     *
J & J WOOD, INC., TIMOTHY LEE     *
SIMONDS, QUALITY CASUALTY      *
INSURANCE COMPANY, INC., et al.,    *
     *
     DEFENDANTS.        *

### MOTION TO DISMISS COUNT FIVE OF THE PLAINTIFF'S COMPLAINT AND THE DEFENDANT, QUALITY CASUALTY INSURANCE COMPANY, INC.

Comes now the Defendant, Quality Casualty Insurance Company, Inc. ("Quality Casualty")

and moves this court to dismiss the Plaintiff's claim against Quality Casualty as set forth in Count V

of the Plaintiff's Complaint, and as grounds therefore states as follows:

1.     This action arises out of an automobile accident which occurred on October 5, 2005

between a vehicle being driven by Timothy Lee Simonds and James Farrell Howell, the

Plaintiff's decedent.

2.     Plaintiff's decedent, James Farrell Howell, was listed as a driver on a personal automobile

policy (Policy #01173248) issued to Kyong M. Kim. (See Exhibit A). Kyong M. Kim was the

owner of the vehicle being driven by Howell and was the named insured on the policy

attached hereto as Exhibit A, which was referenced by the Plaintiff in the Complaint.

3.      However, Ms. Kim had specifically rejected uninsured motorist coverage for the policy in

        question, and therefore no coverage could possibly exist for Mr. Howell under said policy.

        (See Exhibit A).

4.      The only count in the Plaintiff's Complaint against Quality Casualty is the Plaintiff's "Fifth

        Cause of Action" for uninsured motorist benefits pursuant to Policy #01173248. (See

        Plaintiff's Complaint, Page 6). The policy referenced in the Plaintiff's Complaint is attached

        hereto as Exhibit A, and clearly shows that there was no uninsured motorist coverage under

        Policy #01173248 due to the rejection of such coverage by Quality Casualty's named

        insured, Kyong M. Kim, at the inception of the policy and throughout its renewal up until the

        policy period in question. (See Exhibit A).

5.      Therefore, even if the Plaintiff could prove that the other Defendants were

        uninsured/underinsured for the injuries and damages of the Plaintiff's decedent, there is still

        no possible way that the Plaintiff could prevail on its claim against Quality Casualty for

        uninsured motorist benefits, because there was no uninsured motorist coverage in the

        policy at issue due to the specific rejection of such coverage by Quality Casualty's named

        insured (See Exhibit A).

        WHEREFORE, PREMISES CONSIDERED, this Defendant respectfully moves this Court for

a dismissal with prejudice of the Plaintiff's Fifth Cause of Action against Defendant, Quality Casualty

Insurance Company, Inc. for the reasons set forth above.


                                                DAVID L. FAULKNER, JR.
                                                Attorney for Defendant


                                        Page 2 of 3

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
Attorneys and Counselors
505 20th Street North, Suite 1800
Birmingham, Alabama 35203-2696

### ORAL ARGUMENT REQUESTED

COUNSEL

### CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing pleading upon all counsel of record in this cause by placing a copy of same in the United States mail, postage prepaid, addressed as follows on this the 8th day of March, 2006:

George W. Finkbohner, III, Esq.
David S. Cain, Jr., Esq.
CUNNINGHAM, BOUNDS, CROWDER,
    BROWN AND BREEDLOVE, LLC
Post Office Box 66705
Mobile, Alabama 36660

J & J Wood, Inc.
c/o Jimmy C. Jones, Registered Agent
1272 Georgia Highway 354
Pine Mountain, Georgia 31823

Timothy Lee Simonds
3333 Georgia Highway 34
Franklin, Georgia 30212

OF COUNSEL



# Quality Casualty

**Quality Casualty Insurance Company, Inc.**
NAIC #: 11178

## PERSONAL AUTOMOBILE POLICY

Agency Name and Address
Alabama - Georgia Insurance, Inc.        Agent #:   0106
705 13th Street
P O Box 429
Phenix City, AL 36868-0429
334-298-6366

| Policy Number |
|---|
| QC01173248 |

Policy Period
From 08/17/05 To 02/17/06
12:01 A.M. Standard Time

Renewal of QC01173248

| Effective Date | Control Number |
|---|---|
| 08/17/05 | 07/28/2005 01:53:46 PM |

**Company Copy**

This Declarations Page, along with form PP 00 01 06 98 and the following policy provisions forms, completes this policy.
This policy provides only those coverages for which a premium is shown below.

**Named Insured and Address**

Kyong M Kim
PO Box 3166
Phenix City AL 36868-3166

**Full Term Premium Charge**

| Total Policy Premium = $430 | Transaction Premium = $430 |
|---|---|

**Coverages and Limits**

| | Limits | 1992 CHEVROLET LUMINA | 1990 FORD LTD | 1985 FORD F-150 | 1993 FORD ECONOLINE VAN |
|---|---|---|---|---|---|
| A. Personal Liability | | | | | |
| Per Person/Per Accident | $20,000/40,000 | $56 | $67 | $46 | $48 |
| Property Damage | $10,000 | $55 | $66 | $45 | $47 |
| B. Medical Payments | Not Applicable | $0 | $0 | $0 | $0 |
| C. Uninsured Motorists | | | | | |
| Per Person/Per Accident | COVERAGE REJECTED BY INSURED | | $0 | $0 | $0 |
| D. Other Than Collision (OTC) | No OTC Coverage | $0 | | | |
| | No OTC Coverage | | $0 | | |
| | No OTC Coverage | | | $0 | |
| | No OTC Coverage | | | | $0 |
| E. Collision | No Collision Coverage | $0 | | | |
| | No Collision Coverage | | $0 | | |
| | No Collision Coverage | | | $0 | |
| | No Collision Coverage | | | | $0 |

**Other Coverage(s)**

| | | | | | |
|---|---|---|---|---|---|
| Rental Reimbursement Coverage | | | | | |
| $18 per day with $450 maximum | | $0 | $0 | $0 | $0 |
| Towing and Labor Costs Coverage | | | | | |
| See attached Endorsement for specific limit | | $0 | $0 | $0 | $0 |
| Custom, Modified or Special Equipment Coverage | | | | | |
| See attached Endorsement for specific coverage | | $0 | $0 | $0 | $0 |
| **TOTAL VEHICLE PREMIUM** | | **$111** | **$133** | **$91** | **$95** |

Coverages only apply where a premium is shown.

QC-AL-07 (06/01)

Exhibit A

| Description of Driver(s) | Driver # | Driver Name | Status | D-O-B | Good Student Discount | Financial Responsibility Filing |
|---|---|---|---|---|---|---|
| | 1 | Kyong M Kim | Active | 12/27/75 | N | N |
| | 2 | James Howell | Active | 06/11/35 | N | N |
| | 3 | Perry Starling | Excluded | | N | N |

**Description of Your Auto(s)**

| Veh # | Year | Make | Model | VIN | Sym | Class | Garaged Territory Code | Passive Restraint Discount | Anti Theft Discount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1992 | CHEVROLET | LUMINA | 2G1WN14T0N9145051 | 7 | 864220 | 14 | N | N |
| 2 | 1990 | FORD | LTD | 2FACP74F2LX102637 | 0 | 831120 | 14 | N | N |
| 3 | 1985 | FORD | F-150 | 1FTCF15N1FPB08312 | 0 | 888820 | 14 | N | N |
| 4 | 1993 | FORD | ECONOLINE VN | 1FDEE14HXPHB73187 | 0 | 888820 | 14 | N | N |

**Forms and Endorsements**

The following endorsement(s) are A PART of your policy:

Form Number and Endorsement Name

PP 00 01 06 98 Personal Auto Policy

Other optional coverages are available; please contact your agent for information.

**Additional Policy Information**

Discounts Applied to Policy

Paid in Full Discount
Multi Car Discount                    Renewal Discount

**Loss Payee/ Additional Insured**

N/A

**Loss Payee Clause**

Loss or damage under this policy shall be paid as interest may appear to you and the loss payee shown in the Declaration. This insurance with respect to the interest of the loss payee shall not become invalid because of fraudulent acts or omissions unless the loss results from conversion, secretion or embezzlement of your covered auto. However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as of the loss payee's interest. We will give the loss payee 10 days notice of cancellation.

When we pay the loss payee for loss which you are not covered we shall, to the extent of our payment, be subrogated to the loss payee's rights of recovery against you.

Countersignature                                           Date

*Christine T. Oromer*                                      08/17/05

## UNINSURED MOTORIST COVERAGE
## MEDICAL PAYMENTS COVERAGE
## COVERAGE ELECTION / REJECTION FORM
## ALABAMA

Please read the following statements carefully, discuss your insurance needs with your agent, and make your choice. Then sign and date it on the lines below.  If the insurance policy is issued to more than one person, everyone named on it should sign this statement.

Check applicable selection below for each coverage.

### UNINSURED MOTORIST COVERAGE

Check one of the following:

( ) I accept Uninsured Motorists Coverage with limits of $20,000 per person/ $40,000 per occurence.

(X) I reject Uninsured Motorists Coverage entirely. I understand that this rejection applies to my present auto insurance policy and to all future renewals or replacements of this policy. If I want to request Uninsured Motorists Coverage at some future time, I must let the Company or my agent know in writing.

### MEDICAL PAYMENTS COVERAGE

Check one of the following:

( ) I accept Medical Payments Coverage with limits shown on the Declarations Page.

(X) I reject Medical Payments Coverage entirely. I understand that this rejection applies to my present auto insurance policy and to all future renewals or replacements of this policy. If I want to request Medical Payments Coverage at some future time, I must let the Company or my agent know in writing.

| 8-17-01 | Kyong Kim |
|---------|-----------|
| Date | Signature of Policyholder |
| 8-17-01 | Kyong Kim |
| Date | Signature of Policyholder |

ACCUAUTO DATE: 08/17/2001        TIME: 14:35:05

AA-09-01 (08/96)                 PAGE 3 OF 3

DM 8/22

## AUTO ALABAMA (Continental National Indemnity)
## ALABAMA PRIVATE PASSENGER AUTOMOBILE APPLICATION

EFFECTIVE DATE: 08/17/2001  TIME: 2:32 PM  EXPIRATION DATE: 2/17/2002 12:01 A.M. STD  BINDER NUMBER: _____

| APPLICANT NAME (REGISTERED OWNER) KYONG KIM M | (Phone No.) (334)480-9667 | Agent Contact Person | (Phone No.) (334) 298-6366 |
|---|---|---|---|
| NAME AS SHOWN ON DRIVER'S LICENSE KYONG M KIM | | PRODUCER'S NAME: ALABAMA-GEORGIA INSURANCE AGENCY NUMBER: 010106 | |
| ADDRESS 1 MOSES PLACE | | ADDRESS PO BOX 429 | |
| CITY PHENIX CITY | COUNTY RUSSELL | STATE AL | ZIP CODE 36869 | CITY PHENIX CITY | STATE AL | ZIP CODE 36868 |

**Billing Options:** (X) 6-Month PIF ( ) 6-Month Direct Bill 20% Down 6 Pay + $5 Installment Fee
**Alternate Garage Location:** (Indicate vehicle number and give complete address.).
Veh #

### VEHICLE DESCRIPTION / USE        TOTAL NUMBER OF VEHICLES IN HOUSEHOLD: 1

| Veh | Year | Make/Model - Give Complete Description | Vehicle Id. Number (VIN) | HP/CC | Purchase Date | New/Used |
|---|---|---|---|---|---|---|
| 1 | 1992 | CHEV/Lumina Euro  /2 / 6 | 2G1WN14TON9145051 | / | | |
| 2 | | / | / | | | |
| 3 | | / | / | | | |
| 4 | | / | / | | | |

| Veh # | Cost New or Cur. Value | Sym. | Terr | Miles 1 Way Work/School | No. Days | Usage | Perform | Car Pool | Odometer Reading | Annual Mileage | 1 | 2 | 3 | 4 | CLASS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0 | 7 | 14 | 05 | | | | | | | | | | | 864110 |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | |

| Veh # | Passive Seat Belt | Air Bag DRV/BOTH | Anti-Lock Brakes | Anti-Theft Device | Multi Car | Credits and Surcharges | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | YES | | | | | BELT | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

RECEIVED AUG 24 2001

## COVERAGES / PREMIUMS Indicate coverages desired by completing Premium Section.

| Coverage | Limit | | | Premiums (Include Discounts) | | | |
|---|---|---|---|---|---|---|---|
| | | | | Car 1 | Car 2 | Car 3 | Car 4 |
| Bodily Injury Liability | $20 ,000 each person | | | 83 | | | |
| | $40 ,000 each occurrence | | | | | | |
| Property Damage Liability | $10 ,000 each occurrence | | | 82 | | | |
| Medical Payments (Specify Limit) | $NONE per person | | | | | | |
| Uninsured Motorist | $NONE ,000 each person | | | | | | |
| | $ ,000 each occurrence | | | | | | |
| Comprehensive (Specify Deductible) | VH1:Liab VH2: VH3: VH4: | | | | | | |
| Collision (Specify Deductible) | VH1:Only VH2: VH3: VH4: | | | | | | |
| ACV Unless Amount Stated | VH1: 0 VH2: 0 VH3: 0 VH4: 0 | | | | | | |
| Towing & Labor (Specify Limit) | VH1: VH2: VH3: VH4: | | | | | | |
| Transportation Expense | VH1: VH2: VH3: VH4: | | | | | | |
| Special Equipment Coverage | VH1: VH2: VH3: VH4: | | | 0 | | | |
| | | Total Per Vehicle | | 165 | | | |

Estimated Total: 180       Deposit: 180       Balance Due: 0

## DRIVER INFORMATION —list all residents and dependents (licensed or not) and regular operators.

| DR | DRIVER NAME (AS SHOWN ON LICENSE) | SEX | MARITAL STATUS | RELATION 2 APPLICANT | DATE OF BIRTH | OCCUPATION | GOOD STD. | DRVR TRNG | DRIVER'S LICENSE NUMBER | 1ST | SSN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | Kyong M Kim | F | S | APPLICANT | 12/27/1975 | | N | N | 6469796 | AL | 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 |
| 2. | James Howell | | | | | | | | | | |
| 3. | Jerry Sterling | | | | | | | | | | |
| 4. | | | | | | | | | | | |

## DRIVER HISTORY —Note: Your driving record is verified with the state motor vehicle department.

| DRIVER NAME | DATE | DESCRIPTION | PLACE | BI OR DEATH | AMOUNT OF PD |
|---|---|---|---|---|---|
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |

## PAGE 1 OF 3

## LOSS PAYEE / ADDITIONAL INTEREST INFORMATION  —Name and Complete Address (If none, so indicate)

| VE | Name | Address | City | State | Zip Code |
|----|------|---------|------|-------|----------|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |

## EMPLOYMENT INFORMATION

| | Employer | Address | Work Phone | Yrs. Employed |
|--------|----------|---------|------------|---------------|
| APPL. | | | ( | |
| CO-AP | | | | |

## PRIOR COVERAGE

| Prior Carrier and Producer | # of Years w/ Comp. | Prior Policy Number / Expiration Date |
|----------------------------|---------------------|----------------------------------------|
| | | / |

## GENERAL INFORMATION

Explain all "Yes" responses in remarks

| | Y/N | | Y/N |
|---|---|---|---|
| 1. With the exception of any encumbrances, are any vehicles not solely owned by and registered ot the applicant? | (N) | 8. Any other insurance with this company? (Policy Number) | (N) |
| 2. Any car modified/special equipment? (Customize P-U/Van) | (N) | 9. Any household member in military service? (Drv #) | (N) |
| 3. Any existing damage to vehicle? (Include damaged glass) | (N) | 10. Any drivers license been suspended/revoked? | (N) |
| 4. Any other losses incurred? (Not shown in Acc/Conv) | (N) | 11. Any driver have physical/mental impairment? | (N) |
| 5. Any car kept at school? | (N) | 12. Any financial responsibility filing? (Drv # and date) | (N) |
| 6. Any car parked on street? | (N) | 13. Has insurance been transferred within agency? | (N) |
| 7. Any other auto insurance in household? (Include employer) | (N) | 14. Any coverage declined, cancelled, or non-renewed during the last 3 years? | (N) |

## REMARKS

HOMEOWNER:  Does insured own their primary residence? (NO  )

## BINDER/SIGNATURE

| EFFECTIVE DATE | EXPIRATION DATE |
|---------------|-----------------|
| 08/17/2001 | 2/17/2002 |
| TIME 2:32 PM | 12:01 AM Noon |

COVERAGE IS NOT BOUND

If the "binder box to the left is completed, the following conditions apply: This company binds the kind(s) of insurance stipulated on this application. This insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the company. This binder may be cancelled by the insured by surrender of this binder or by written notice to the company stating when cancellation will be effective. This binder may be cancelled by the company by notice to the insured in accordance with the policy conditions. This binder is cancelled when replaced by a policy. If this binder is not replaced by a policy, the company is entitled to charge a premium for the binder according to the rules and rates used by the company.

Important notice regarding the fair credit reporting act: In making this application for insurance it is understood that as part of our underwriting procedure, an investigative consumer report may be prepared whereby information is obtained through personal interviews with your neighbors, friends, or others with whom you are acquainted. This inquiry includes information as to your character, general reputation, personal characteristics, and mode of living. If an investigation is made, you can be assured that it will be handled in the strictest confidence. If you wish information on the nature and scope of the customer report which may be requested, ask your agent for the address of the company handling your account.

If the private passenger auto is being used predominantly for business purposes, the following applies: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act which is a crime.

Applicant's Statement: I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. In addition, if the auto plan or company designated in this application is non-standard, I certify that I understand the rates for this coverage are higher than normal, and that they are acceptable to me as I have been unable to obtain coverage desired through the normal insurance market.

Producer's Statement: I certify to the best of my knowledge and belief that the signature of the applicant is the personal signature of the applicant.

| How long have you known the applicant? |

I understand and acknowledge that Uninsured Motorists (UM) and Underinsured Motorists (UIM) Bodily Injury (BI) coverages have been explained to me. I have been offered the options of selecting UM and UIM limits equal to my liability limits, UM and UIM limits lower than my liability limits, or to reject UM BI and/or UIM coverages entirely.

1. I select Uninsured and Underinsured Motorist Bodily Injury limit(s) indicted in this application. _____ (Initials)
2. I reject Uninsured and Underinsured Motorist Bodily Injury coverage in its entirety. x __KK__ (Initials)

I understand that the coverage selection and limit choices indicated here will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing.

| Applicant's Signature  x _Kyong Kim_ | Date (MM/DD/YY)  6-17-01 | Producer's Signature |

### PAGE 2 OF 3

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as personal )
representative of the Estate of
JAMES FARRELL HOWELL, )
deceased,
)
     Plaintiff,
)
v.                     )     Case Number: CV06-31
)
J & J WOOD, INC.; TIMOTHY LEE
SIMONDS; QUALITY CASUALTY )
INSURANCE COMPANY, et al.,
)
     Defendants.
)

## <u>MOTION FOR PROTECTIVE ORDER</u>

Come now defendants, J & J Wood, Inc. and Timothy Lee Simonds, and in compliance with the newly enacted Federal HIPAA laws, request this Court to enter the Protective Order attached hereto as Exhibit "A".

Respectfully submitted,

PAUL A. MILLER (MIL011)
Attorney for the Defendants

**OF COUNSEL:**

**LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.**
501 Riverchase Parkway East
Suite 100
Birmingham, Alabama 35244
(205) 326-0000

## NO ORAL ARGUMENT REQUESTED

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served upon each of the below listed counsel of record by U.S. Mail this the _____ day of March, 2006:

cc:    George W. Finkbohner, III, Esq.
       David S. Cain, Jr., Esq.
       Post Office Box 66705
       Mobile, Alabama    36660

       J. Mason Davis, Esq.
       2311 Highland Avenue South
       Birmingham, Alabama    35203

       _____
                    Of Counsel

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

| | | |
|---|---|---|
| CHARLENE HOWELL, as personal representative of the Estate of JAMES FARRELL HOWELL, deceased, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number: CV06-31 |
| v. | ) | |
| J & J WOOD, INC.; TIMOTHY LEE SIMONDS; QUALITY CASUALTY INSURANCE COMPANY, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

Circuit Court Clerk
Russell County Courthouse
Post Office Box 518
Phenix City, Alabama   36868-0518


    Please take notice that the following discovery documents have been filed on behalf of the Defendants, J&J Wood, Inc. & Timothy Lee Simonds:


      (X)    Interrogatories;
      (X)    Request for Production of Documents;
      (X)    Notices of Intent to Subpoena to Ala. State Troopers office.

                                _____
                                  PAUL A. MILLER (MIL011)
                                  Attorney for the Defendants


**OF COUNSEL:**
LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.
501 Riverchase Parkway East
Suite 100
Birmingham, AL 35244
(205) 326-0000



## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon counsel for the Plaintiffs, by placing same in the United States Mail, properly addressed and first class postage pre-paid on this the 8th day of March, 2006:

cc:     George W. Finkbohner, III, Esq.
        David S. Cain, Jr., Esq.
        Post Office Box 66705
        Mobile, Alabama   36660

        J. Mason Davis, Esq.
        2311 Highland Avenue South
        Birmingham, Alabama   35203

# IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as personal )
representative of the Estate of
JAMES FARRELL HOWELL, )
deceased,

)

    Plaintiff,

)    Case Number: CV06-31

v.

)

J & J WOOD, INC.; TIMOTHY LEE
SIMONDS; QUALITY CASUALTY )
INSURANCE COMPANY, et al.,

)

    Defendants.

)

## REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

Come now the defendants, J & J Wood, Inc. and Timothy Lee Simonds, and propounds the following Request for Production of Documents to the plaintiff as follows:

1.    Please produce legible copies of any and all documents you intend on using at the trial of this cause.

2.    Please produce laser/color copies of any and all photographs taken of any vehicle involved in the accident made the basis of this lawsuit.

3.    Please produce laser/color copies of any and all photographs of the scene of the accident which makes the basis of this lawsuit.

4.    Please produce legible copies of any and all coroner's report and/or autopsy report in regard to James Farrell Howell.

5.    Please produce legible copies of any and all records from Care Ambulance Service regarding their transportation of James Farrell Howell to Columbus Medical Center on the date of the accident which makes the basis of this lawsuit.

6.    Please produce legible copies of all records from Columbus Medical Center where James Farrell Howell was taken after the accident which makes the basis of this lawsuit.


PAUL A. MILLER    (MIL011)
Attorney for Defendants


Of Counsel:

LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.
501 Riverchase Parkway East
Suite 100
Birmingham, AL  35244
Telephone: (205) 326-0000


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served upon each of the below listed counsel of record by U.S. Mail this the _____ day of March,  2006:

cc:    George W. Finkbohner, III, Esq.
David S. Cain, Jr., Esq.
Post Office Box 66705
Mobile, Alabama   36660

J. Mason Davis, Esq.
2311 Highland Avenue South
Birmingham, Alabama   35203


Of Counsel

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

| | | |
|---|---|---|
| CHARLENE HOWELL, as personal representative of the Estate of JAMES FARRELL HOWELL, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number: CV06-31 |
| v. | ) | |
| | ) | |
| J & J WOOD, INC.; TIMOTHY LEE SIMONDS; QUALITY CASUALTY INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>INTERROGATORIES TO PLAINTIFF</u>

Come now the defendants, J & J Wood, Inc. and Timothy Lee Simonds, and propounds the following Interrogatories to the plaintiff as follows:

1.      Please list the name, address and telephone number of any and all witnesses who you intend on calling at the trial of this cause.

2.      Please list the name, address and telephone number of any and all expert witnesses who you intend on calling at the trial of this cause.   In regard to same, please state the following:

(A)     State the subject matter on which the expert is expected to testify;

(B)     State the substance of the facts and opinions to which the expert is expected to testify;

(C)     A summary of the grounds of each opinion and attach hereto a legible copy of any report prepared by said expert reflecting his investigation/opinions.

3.    Please list the name and address of any medical doctors from who James Farrell Howell sought medical treatment for the 10 years proceeding October 5, 2005.

4.    Please list the name and address of any hospitals or medical entities with whom James Farrell Howell sought medical treatment and/or was admitted for the 10 years proceeding October 5, 2005.

5.    If an autopsy was performed on James Farrell Howell, please state the name and address of the coroner or medical doctor who performed the autopsy and the entity where the autopsy was performed.

PAUL A. MILLER    (MIL011)
Attorney for Defendants

Of Counsel:

LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.
501 Riverchase Parkway East
Suite 100
Birmingham, AL 35244
Telephone: (205) 326-0000

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served upon each of the below listed counsel of record by U.S. Mail this the _____ day of March, 2006:

cc:    George W. Finkbohner, III, Esq.
David S. Cain, Jr., Esq.
Post Office Box 66705
Mobile, Alabama  36660

J. Mason Davis, Esq.
2311 Highland Avenue South
Birmingham, Alabama  35203

Of Counsel

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as personal          )
representative of the Estate of
JAMES FARRELL HOWELL,                 )
deceased,
                                      )

     Plaintiff,                        )

v.                                    )          Case Number: CV06-31

                                      )

J & J WOOD, INC.; TIMOTHY LEE         )
SIMONDS; QUALITY CASUALTY
INSURANCE COMPANY, et al.,            )

     Defendants.                       )

                                      )

## NOTICE OF INTENT TO SERVE SUBPOENA ON NON-PARTY

    Take notice that upon the expiration of fifteen (15) days from the date of service of the notice, Defendant will apply to the Clerk of this Court for issuance of the attached subpoena directed to:

Alabama State Trooper's Office
Attn: Records Dept.

1220 Fox Run Avenue Suite A3

Opelika, AL 36801

to produce documents and/or things at the time and place specified in the subpoena.

Respectfully submitted,

_____
PAUL A. MILLER (MIL011)
Attorney for Defendants

OF COUNSEL:
LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.
501 Riverchase Parkway
Suite 100
Birmingham, AL 35244
Telephone: (205) 326-0000

## CERTIFICATE OF SERVICE

I hereby certify a copy of the above and foregoing has been served on the following counsel of record via U. S. Mail this the ___ day of March, 2006:

cc:    George W. Finkbohner, III, Esq.
       David S. Cain, Jr., Esq.
       Post Office Box 66705
       Mobile, Alabama   36660

       J. Mason Davis, Esq.
       2311 Highland Avenue South
       Birmingham, Alabama   35203

_____
OF COUNSEL

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as personal         )
representative of the Estate of
JAMES FARRELL HOWELL,                )
deceased,
                                     )
     Plaintiff,
                                     )       Case Number: CV06-31
v.
                                     )
J & J WOOD, INC.; TIMOTHY LEE        )
SIMONDS; QUALITY CASUALTY
INSURANCE COMPANY, et al.,           )

     Defendants.                     )

                                     )

### ANSWER TO COMPLAINT

Come now the defendants, J & J Wood, Inc. and Timothy Lee Simonds, and in

Answer to the Complaint filed by the plaintiff states as follows:

1.    The defendants admit that an automobile accident occurred on October 5,

2005 on Alabama Highway 165 at or near the intersection of Misty Forrest Drive in

Russell County, Alabama, but denies the remaining allegations of paragraph 1 of the

first cause of action and demand strict proof of same.

2.    The defendants admit paragraph 2 of first cause of action the Complaint.

3.    The defendants deny paragraph 3 of the first cause of action of the

Complaint and demand strict proof of same.

4.    The defendants admit that an automobile accident occurred on October 5,

2005 on Alabama Highway 165 at or near the intersection of Misty Forrest Drive in

Russell County, Alabama, but denies the remaining allegations of paragraph 1 of the

second cause of action of the Complaint and demand strict proof of same

5.     The defendants admit paragraph 2 of the second cause of action of the Complaint.

6.     The defendants deny paragraph 3 of the second cause of action of the Complaint and demand strict proof of same.

7.     The defendants re-assert and re-aver their responses to the first and second causes of action in response to paragraph 1 of the third cause of action of the Complaint as if specifically set out herein.

8.     The defendants deny paragraphs 2 and 3 of the third cause of action of the Complaint and demand strict proof of same.

9.     The defendants re-assert and re-aver their responses to the first, second and third causes of action in response to paragraph 1 of the fourth cause of action of the Complaint as if specifically set out herein.

10.    The defendants deny paragraph 2 of the fourth cause of action of the Complaint and demand strict proof of same.

11.    The defendants re-assert and re-aver their responses to the first through fourth causes of action in response to paragraph 1 of the fifth cause of action of the Complaint as if specifically set out herein.

12.    The defendants aver that paragraphs 2 through 5 of the fifth cause of action of the Complaint do not allege a cause of action against them and therefore requires no response from them, however, to the extent that these paragraphs are deemed to allege a cause of action against these defendants, same is denied and strict proof demanded.

13.    The defendants plead not guilty.

14.    The defendants aver that the plaintiff decedent was guilty of negligent conduct which caused or contributed to cause the accident which makes the basis of this lawsuit.

15.    The defendants reserve their right to assert additional defenses, including affirmative defenses, at a later date.

_____
PAUL A. MILLER    (MIL011)
Attorney for Defendants

Of Counsel:

LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.
501 Riverchase Parkway East
Suite 100
Birmingham, AL  35244
Telephone: (205) 326-0000


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served upon each of the below listed counsel of record by U.S. Mail this the _____ day of March, 2006:

cc:    George W. Finkbohner, III, Esq.
David S. Cain, Jr., Esq.
Post Office Box 66705
Mobile, Alabama  36660

J. Mason Davis, Esq.
2311 Highland Avenue South
Birmingham, Alabama  35203

_____
Of Counsel

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as the Personal
Representative of the Estate of JAMES
FARRELL HOWELL, deceased,

       Plaintiff,

v.

J & J WOOD, INC.; TIMOTHY LEE
SIMONDS; QUALITY CASUALTY
INSURANCE COMPANY, INC.; 1 through
10, whether singular or plural, the person
who at the time and place of the accident
made the basis of this lawsuit, was the
operator of the motor vehicle which came
into contact with the motor vehicle being
operated by James Farrell Howell; 11
through 20, whether singular or plural, the
person, firm, corporation or other entity
who at the time of the accident made the
basis of this lawsuit, was the principal,
master or employer of the Defendant,
Timothy Lee Simonds; 21 through 30
whether singular or plural, the person, firm,
corporation or other entity who, at the
time of the accident made the basis of
this lawsuit, was the owner of the motor
vehicle being operated by the Defendant,
Timothy Lee Simonds; 31 through 40,
whether singular or plural, the person, firm,
corporation or other entity who negligently
entrusted the motor vehicle being operated
by the Defendant, Timothy Lee Simonds
and/or the fictitious parties 1 through 10, at
the time of the accident made the basis of
this lawsuit to the said Defendants; 41
through 50, whether singular or plural, the
person, firm, corporation or other entity
who was responsible for the maintenance
of the motor vehicle being operated by the
Defendant, Timothy Lee Simonds, and/or
the fictitious parties 1 through 10 at the time
of the accident made the basis of this

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION

NO. CV-06-_____

**PLAINTIFF'S FIRST INTERROGATORIES
TO THE DEFENDANT, J & J WOOD,
INC.**

lawsuit; 51 through 60, whether singular  §
or plural, the person, firm, corporation or  §
other entity who issued and/or underwrote  §
the policy of insurance hereinafter described  §
in the complaint; whose names and true  §
legal identities are otherwise unknown at  §
this time, but who will be substituted by  §
amendment when ascertained; individually  §
and jointly,  §
§
   Defendants.  §
§

  COMES NOW THE PLAINTIFF in the above styled case and, pursuant to Rule 33 of the Alabama Rules of Civil Procedure, propounds the following interrogatories to the Defendant, J & J Wood, Inc.

  You are reminded that under the provisions of Rule 26 of the Alabama Rules of Civil Procedure you are under a duty to seasonably supplement your response to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity and location of each person expected to be called as an expert witness at trial, the subject matter on which the expert witness is expected to testify, and the substance of the witness' testimony.

  You are further reminded that you are under a duty to seasonably amend a prior response if you obtain information upon the basis of which (a) you know that the response was incorrect when made, or (b) you know that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

## DEFINITIONS

Unless otherwise indicated the following definitions shall be applicable to these discovery requests:

"You" and "your" shall mean the defendant and each of its employees, agents or representatives, and all other persons acting on its behalf.

"Person" shall mean any individual, partnership, firm, association, corporation or other business, government or legal entity.

"Document" shall mean any written, recorded, transcribed, punched, taped, filmed, computerized or graphic matter of any kind or description, however produced or reproduced.

"Identify" and "identification" when used with reference to a document shall mean to state its date, author or signor, addressee, type of document and all other means of identifying it, and its present or last known location or custodian. If any document was but is no longer in your possession, custody or control, state what disposition was made of it and the reason for its disposition.

## INTERROGATORIES

1.    Is your name correctly stated in the complaint filed in this action? If not, state the correct name by which you may sue or be sued in a court of law.

2.    State whether or not J & J Wood, Inc. is a subsidiary or affiliate of any other firm, corporation, company or other entity, and, if so, state the full legal name and complete address of each such firm, corporation, company or other entity, and describe in detail the

-3-

business relationship between J & J Wood, Inc. and each such firm, corporation, company or other entity.

3.       State whether or not J & J Wood, Inc. is owned by any parent company or corporation, and, if so, state the full legal name and complete address of such parent company or corporation, and describe in detail the business relationship between J & J Wood, Inc. and its parent company or corporation.

4.       State whether, at the time of the accident made the basis of this lawsuit, the Defendant, Timothy Lee Simonds, was working within the line and scope of his employment as an  agent, servant or employee of J & J Wood, Inc.  If not, describe in detail the business or other relationship, if any, between the Defendant, Timothy Lee Simonds, and J & J Wood, Inc.

5.       State whether or not, at the time of the subject accident, the vehicle being operated by the Defendant, Timothy Lee Simonds, was owned by J & J Wood, Inc.  If not, state the full name, complete address, and telephone number of the person, firm, corporation or other entity who owned the subject vehicle.

6.       Describe in complete detail your understanding of how the accident made the basis of this lawsuit occurred, including, chronologically, the events leading up to the accident.

7.       If it is your contention that the act or acts of any party other than the named Defendants in any way caused and/or contributed to the accident made the basis of this lawsuit, state the full name, complete address, telephone number and employer of each such

-4-

party, and describe in complete detail the act or acts of each such party which you contend caused and/or contributed to the subject accident.

8.    Please state whether you or any of your agents, servants, employees, or attorneys took any photographs, films, or videotapes of the accident scene or the vehicles involved in the accident, either at the time of the subject accident or at any time following the accident, and, if so, state the full name and complete address of the photographer or videographer, and the full name and complete address of the custodian of any such photographs, films or videotapes.

9.    State the full name, complete address, telephone number, and employer of each individual who was a witness to the accident made the basis of this lawsuit or who has any knowledge of the facts and circumstances surrounding the subject accident.

10.    If you or anyone acting for you or on your behalf have taken statements from any individual who witnessed the accident made the basis of this lawsuit and/or who has any knowledge of any of the facts and circumstances surrounding the subject accident, please state:

    a.    the full name, complete address, telephone number, and employer of each individual from whom a statement has been taken;

    b.    the date the statement was taken;

    c.    the full name, complete address, telephone number, and employer of each individual who took any such statement; and

    d.    the full name, complete address, telephone number, and employer of the person or other

-5-

entity who currently has possession of each such statement.

**PLEASE NOTE: THIS IS NOT A REQUEST FOR COPIES OF ANY SUCH STATEMENTS.**

11. Please state whether or not any investigation conducted by any of your agents, servants, employees, or any other individual(s) acting for you or on your behalf relating to the incident made the basis of this lawsuit? If so:

  a. state the full name(s), complete address(es), and job titles of any and all individuals who participated in the investigation;

  b. state the date or dates on which the investigation was conducted;

  c. state whether any report or other documentation was created as a result of the investigation and state the name(s), address(es) and job titles of the individual(s) who prepared the report or other written documentation.

12. Please state the full name and complete address of your liability insurance carrier, both primary and excess, which would provide liability insurance coverage for the accident made the basis of this lawsuit. Please include in your answer the policy number for each such liability insurance policy.

13. If the Defendant, Timothy Lee Simonds, was administered a blood alcohol or drug screening test at any time during the 24 hours immediately preceding the accident made the basis of this lawsuit and/or during the 48 hours immediately after the subject accident, please state:

-6-

a.  the full name and complete address of the person or persons who administered each such test;

b.  the date and time each such test was administered;

c.  the name and physical address of the place where each such test was administered;

d.  the full name, complete address, telephone number, employer, and job title of the person or persons who requested each such test;

e.  the reason or reasons each such test was requested and/or administered;

f.  the results of each such test; and

g.  the full name and complete address of the person, firm, corporation or other entity who currently has possession of any records relating to any such test.

14.    Identify by giving the full name, complete address, and telephone number the person, firm, corporation or other entity responsible for maintenance on the vehicle which was being operated by the Defendant, Timothy Lee Simonds, at the time of the accident made the basis of this lawsuit.

15.    Describe in complete detail any damage the vehicle being operated by the Defendant, Timothy Lee Simonds, at the time of the accident made the basis of this lawsuit sustained as a result of the subject accident, and state the full name, complete address, telephone number and employer of the person or persons who repaired any of the damage to the vehicle caused by the accident.

16.    If any parts on the vehicle being operated by the Defendant, Timothy Lee Simonds, at the time of the accident made the basis of this lawsuit were removed and/or

-7-

replaced following the accident made the basis of this lawsuit, please describe in complete detail all such parts which were removed and/or replaced, the reason they were removed or replaced, and the full name, complete address, telephone number and employer of the person or persons who removed and/or replaced each such part.

17.     State the make, model, year, height, length, width, and gross weight of the vehicle being operated by the Defendant, Timothy Lee Simonds, at the time of the subject accident.

18.     Name and identify each person whom you expect to call as an expert witness at the trial of this cause and, for each such expert:

    a.     state the subject matter on which each expert is expected to testify;

    b.     state the substance of the facts and opinions to which the expert is expected to testify; and

    c.     give a summary of the grounds for each opinion held by each expert.

CUNNINGHAM, BOUNDS, CROWDER, BROWN AND BREEDLOVE, L.L.C. ATTORNEYS FOR PLAINTIFF

BY: _____
GEORGE W. FINKBOHNER, III (FIN011)
DAVID S. CAIN, JR. (CAI012)
Post Office Box 66705
Mobile, Alabama  36660
Telephone:     251-471-6191
Fax:              251-479-1031

**TO BE SERVED WITH THE COMPLAINT**

-8-

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as the Personal
Representative of the Estate of JAMES
FARRELL HOWELL, deceased,

  Plaintiff,

v.

J & J WOOD, INC.; TIMOTHY LEE
SIMONDS; QUALITY CASUALTY
INSURANCE COMPANY, INC.; 1 through
10, whether singular or plural, the person
who at the time and place of the accident
made the basis of this lawsuit, was the
operator of the motor vehicle which came
into contact with the motor vehicle being
operated by James Farrell Howell; 11
through 20, whether singular or plural, the
person, firm, corporation or other entity
who at the time of the accident made the
basis of this lawsuit, was the principal,
master or employer of the Defendant,
Timothy Lee Simonds; 21 through 30
whether singular or plural, the person, firm,
corporation or other entity who, at the
time of the accident made the basis of
this lawsuit, was the owner of the motor
vehicle being operated by the Defendant,
Timothy Lee Simonds; 31 through 40,
whether singular or plural, the person, firm,
corporation or other entity who negligently
entrusted the motor vehicle being operated
by the Defendant, Timothy Lee Simonds
and/or the fictitious parties 1 through 10, at
the time of the accident made the basis of
this lawsuit to the said Defendants; 41
through 50, whether singular or plural, the
person, firm, corporation or other entity
who was responsible for the maintenance
of the motor vehicle being operated by the
Defendant, Timothy Lee Simonds, and/or
the fictitious parties 1 through 10 at the time
of the accident made the basis of this

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION

NO. CV-06- 31

**COMPLAINT**



lawsuit; 51 through 60, whether singular                    §
or plural, the person, firm, corporation or                §
other entity who issued and/or underwrote                  §
the policy of insurance hereinafter described              §
in the complaint; whose names and true                     §
legal identities are otherwise unknown at                  §
this time, but who will be substituted by                  §
amendment when ascertained; individually                   §
and jointly,                                               §
                                                           §
     Defendants.                  §
                                                           §

## FIRST CAUSE OF ACTION

The Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, alleges against the Defendants, J & J Wood, Inc., Timothy Lee Simonds, and the fictitious parties 1 through 30, as follows:

1. On or about October 5, 2005, the Defendant, Timothy Lee Simonds and/or the fictitious parties 1 through 10, so negligently operated a motor vehicle along Alabama Highway 165 at or near the intersection of Misty Forest Drive, both of said roads being public roads in Russell County, Alabama, as to cause or allow the same to come into contact with a motor vehicle being operated then and there by the Plaintiff's decedent, James Farrell Howell.

2. At the time and place set forth hereinabove the Defendant, Timothy Lee Simonds and/or the fictitious parties 1 through 10, were operating within the line and scope of their employment as the agents, servants or employees of the Defendant, J & J Wood, Inc. and/or the fictitious parties 11 through 30.

-2-

3.    As a proximate consequence of the above described negligence of the Defendants, James Farrell Howell was caused to suffer injuries and damages which proximately resulted in his death.

WHEREFORE, the Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, demands punitive damages, plus interest and costs, in excess of the jurisdictional limits of this Court, against the Defendants, J & J Wood, Inc., Timothy Lee Simonds, and the fictitious parties 1 through 30, individually and jointly.

## SECOND CAUSE OF ACTION

The Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, alleges against the Defendants, J & J Wood, Inc., Timothy Lee Simonds, and the fictitious parties 1 through 30, as follows:

1.    On or about October 5, 2005, the Defendant, Timothy Lee Simonds and/or the fictitious parties 1 through 10, so wantonly operated a motor vehicle along Alabama Highway 165 at or near the intersection of Misty Forest Drive, both of said roads being public roads in Russell County, Alabama, as to cause or allow the same to come into contact with a motor vehicle being operated then and there by the Plaintiff's decedent, James Farrell Howell.

2.    At the time and place set forth hereinabove the Defendant, Timothy Lee Simonds and/or the fictitious parties 1 through 10, were operating within the line and scope

-3-

of their employment as the agents, servants or employees of the Defendant, J & J Wood, Inc. and/or the fictitious parties 11 through 30.

3.    As a proximate consequence of the above described wantonness of the Defendants, James Farrell Howell was caused to suffer injuries and damages which proximately resulted in his death.

WHEREFORE, the Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, demands punitive damages, plus interest and costs, in excess of the jurisdictional limits of this Court, against the Defendants, J & J Wood, Inc., Timothy Lee Simonds, and the fictitious parties 1 through 30, individually and jointly.

### THIRD CAUSE OF ACTION

The Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, alleges against the Defendants, J & J Wood, Inc., Timothy Lee Simonds, and the fictitious parties 1 through 40, as follows:

1.    The Plaintiff realleges all of the allegations contained in the First and Second Causes of Action, and incorporates the same by reference herein.

2.    The Plaintiff further alleges that at the times and places set forth hereinabove, the Defendant, J & J Wood, Inc., and/or the fictitious parties 31 through 40, negligently entrusted the motor vehicle being operated by the Defendant, Timothy Lee Simonds, and/or

-4-

the fictitious parties 1 through 10, at the time of the accident made the basis of this lawsuit to the said Defendants.

3.      As a proximate consequence of the above described negligent entrustment by the Defendants, the Plaintiff's decedent, James Farrell Howell, was caused to suffer injuries and damages which proximately resulted in his death.

WHEREFORE, the Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, demands punitive damages, plus interest and costs, in excess of the jurisdictional limits of this Court against the Defendants, J & J Wood, Inc., Timothy Lee Simonds, and the fictitious parties 1 through 40, individually and jointly.

<u>FOURTH CAUSE OF ACTION</u>

The Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, alleges against the Defendants, J & J Wood, Inc., Timothy Lee Simonds, and the fictitious parties 1 through 50 as follows:

1.      The Plaintiff realleges all of the allegations contained in the First, Second and Third Causes of Action and incorporates the same by reference herein.

2.      The Plaintiff further alleges that the Defendant, J & J Wood, Inc., and/or the fictitious parties 41 through 50, were responsible for the maintenance of the motor vehicle being operated by the Defendant, James Farrell Howell, and/or the fictitious parties 1 through 10, at the time of the accident made the basis of this lawsuit, and that the injuries and

-5-

damages which resulted in the death of the Plaintiff's decedent, James Farrell Howell, were the proximate result of the said Defendants' failure to properly maintain the subject vehicle.

WHEREFORE, the Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, demands punitive damages, plus interest and costs, in excess of the jurisdictional limits of this Court, against the Defendants, J & J Wood, Inc., Timothy Lee Simonds, and the fictitious parties 1 through 50, individually and jointly.

<u>FIFTH CAUSE OF ACTION</u>

The Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, alleges against the Defendant, Quality Casualty Insurance Company, Inc., and the fictitious parties 51 through 60, as follows:

1.    The Plaintiff realleges all of the allegations contained in the First through Fourth Causes of Action and incorporates the same by reference herein.

2.    At the time and place set forth above, the Plaintiff's decedent, James Farrell Howell, was an insured under the terms and provisions of a policy of insurance issued by the Defendant, Quality Casualty Insurance Company, Inc., policy number QC01173248.

3.    Quality Casualty Insurance Company is an Alabama corporation, incorporated in Jefferson County, and has a registered agent in Birmingham, Alabama.

-6-

4.    At the time of the accident made the basis of this lawsuit, Defendants were underinsured motorists within the terms and provisions of the above referenced policy of insurance issued by the Defendant, Quality Casualty Insurance Company, Inc.

5.    The Plaintiff further alleges that at the time of the accident made the basis of this lawsuit the said policy of insurance was in full force and effect and, under the terms and provisions of the subject policy of insurance, the Defendant, Quality Casualty Insurance Company, Inc., agreed to pay all sums which the Plaintiff's decdent would be legally entitled to recover as damages from the owner or operator of any underinsured motor vehicle because of bodily injuries.

WHEREFORE, the Plaintiff, Charlene Howell, as the Personal Representative of the Estate of James Farrell Howell, deceased, demands compensatory damages, plus interest and costs, in excess of the jurisdictional limits of this Court against the Defendant, Quality Casualty Insurance Company, Inc., and the fictitious parties 51 through 60.

CUNNINGHAM, BOUNDS, CROWDER,
BROWN AND BREEDLOVE, L.L.C.
ATTORNEYS FOR PLAINTIFF

BY: _____
GEORGE W. FINKBOHNER, III (FIN011)

BY: _____
DAVID S. CAIN, JR. (CAI012)
Post Office Box 66705
Mobile, Alabama 36660
Telephone:    251-471-6191
Fax:          251-479-1031

-7-

*THE PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.*

BY: _____
GEORGE W. FINKBOHNER, III

The Defendants may be served by *CERTIFIED MAIL* as follows:

J & J WOOD, INC.
c/o Jimmy C. Jones, Registered Agent
1272 Georgia Highway 354
Pine Mountain, Georgia  31823

TIMOTHY LEE SIMONDS
3333 Georgia Highway 34
Franklin, Georgia  30212

QUALITY CASUALTY INSURANCE COMPANY, INC.
c/o J. Mason Davis, Registered Agent
2311 Highland Avenue South
Birmingham, Alabama  35203-2972

-8-

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as the Personal §
Representative of the Estate of JAMES §
FARRELL HOWELL, deceased, §
§          CIVIL ACTION
Plaintiff, §
§          NO. CV-06-_____
§
v. §
§          **NOTICE OF THE VIDEOTAPED**
J & J WOOD, INC.; TIMOTHY LEE §          **DEPOSITION OF THE DEFENDANT,**
SIMONDS; QUALITY CASUALTY §          **J & J WOOD, INC., PURSUANT TO**
INSURANCE COMPANY, INC.; 1 through §          **RULE 30(b)(5)(6) OF THE ALABAMA**
10, whether singular or plural, the person §          **RULES OF CIVIL PROCEDURE**
who at the time and place of the accident §
made the basis of this lawsuit, was the §
operator of the motor vehicle which came §
into contact with the motor vehicle being §
operated by James Farrell Howell; 11 §
through 20, whether singular or plural, the §
person, firm, corporation or other entity §
who at the time of the accident made the §
basis of this lawsuit, was the principal, §
master or employer of the Defendant, §
Timothy Lee Simonds; 21 through 30 §
whether singular or plural, the person, firm, §
corporation or other entity who, at the §
time of the accident made the basis of §
this lawsuit, was the owner of the motor §
vehicle being operated by the Defendant, §
Timothy Lee Simonds; 31 through 40, §
whether singular or plural, the person, firm, §
corporation or other entity who negligently §
entrusted the motor vehicle being operated §
by the Defendant, Timothy Lee Simonds §
and/or the fictitious parties 1 through 10, at §
the time of the accident made the basis of §
this lawsuit to the said Defendants; 41 §
through 50, whether singular or plural, the §
person, firm, corporation or other entity §
who was responsible for the maintenance §
of the motor vehicle being operated by the §
Defendant, Timothy Lee Simonds, and/or §
the fictitious parties 1 through 10 at the time §
of the accident made the basis of this §



lawsuit; 51 through 60, whether singular          §
or plural, the person, firm, corporation or       §
other entity who issued and/or underwrote         §
the policy of insurance hereinafter described     §
in the complaint; whose names and true            §
legal identities are otherwise unknown at         §
this time, but who will be substituted by         §
amendment when ascertained; individually          §
and jointly,                                      §
                                                  §
          Defendants.                             §

Please take notice that, pursuant to Alabama Rule of Civil Procedure No. 30(b)(5) and

(6), the Plaintiff will take the pre-trial discovery deposition of the Defendant, J & J Wood, Inc.,

upon oral and videotaped examination before an officer authorized to administer oaths. The

deponent(s) will be videotaped for the purpose of preserving the evidence to present to a jury

in the event the witness is unavailable for trial.   The deponent(s) will be treated fairly.   The

video record will be trustworthy and accurate. Furthermore, the written transcript by the court

reporter shall constitute the official record of the deposition. The matters on which

examination is requested are:

(1)    testimony and documents evidencing or relating to any response
       to the scene of the accident made the basis of this lawsuit by any
       agent, servant, employer insurance adjuster, or other individuals
       acting for or on behalf of J & J Wood, Inc. (other than the
       Defendant's attorneys) on the date of the subject accident;

(2)    testimony and documents evidencing or relating to any
       investigation   conducted by any agent, servant, employee,
       insurance adjuster or any other individual(s), other than the
       Defendant's attorneys, relating to the accident made the basis of
       this lawsuit.

-2-

Further, note that pursuant to Rule 30(b)6), J & J Wood, Inc. "shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf" and that the "persons so designated shall testify as to matters known or reasonably available to the organization."

Pursuant to Rule 30(b)5), Plaintiff requests that, at the time and place of the taking of said deposition, J & J Wood, Inc. produce for inspection and copying:

(1)    any and all documents or materials of any type, kind or description which reference or in any way relate to any response to the scene of the accident made the basis of this lawsuit by any agent, servant, employer insurance adjuster, or other individuals acting for or on behalf of J & J Wood, Inc. (other than the Defendant's attorneys) on the date of the subject accident;

(2)    any and all documents or materials of any type, kind or description which reference or in any way relate to any investigation  conducted by any agent, servant, employee, insurance adjuster or any other individual(s), other than the Defendant's attorneys, relating to the accident made the basis of this lawsuit.

Said deposition shall be taken at a time, date and location to be determined.

The undersigned, by affixing his signature hereto, certifies that he has served a copy of this pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first class postage prepaid.

CUNNINGHAM, BOUNDS, CROWDER,
BROWN AND BREEDLOVE, L.L.C.
ATTORNEYS FOR PLAINTIFF

BY: _____
GEORGE W. FINKBOHNER, III (FIN011)
DAVID S. CAIN, JR. (CAI012)
Post Office Box 66705
Mobile, Alabama  36660
Telephone:        251-471-6191
Fax:              251-479-1031

**_TO BE SERVED WITH THE COMPLAINT_**

-4-

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as the Personal  §
Representative of the Estate of JAMES  §
FARRELL HOWELL, deceased,  §
 §    CIVIL ACTION
    Plaintiff,  §
 §    NO. CV-06-_____
v.  §
 §    **NOTICE OF THE VIDEOTAPED**
J & J WOOD, INC.; TIMOTHY LEE  §    **DEPOSITION OF THE DEFENDANT,**
SIMONDS; QUALITY CASUALTY  §    **J & J WOOD, INC.**
INSURANCE COMPANY, INC.; 1 through  §
10, whether singular or plural, the person  §
who at the time and place of the accident  §
made the basis of this lawsuit, was the  §
operator of the motor vehicle which came  §
into contact with the motor vehicle being  §
operated by James Farrell Howell; 11  §
through 20, whether singular or plural, the  §
person, firm, corporation or other entity  §
who at the time of the accident made the  §
basis of this lawsuit, was the principal,  §
master or employer of the Defendant,  §
Timothy Lee Simonds; 21 through 30  §
whether singular or plural, the person, firm,  §
corporation or other entity who, at the  §
time of the accident made the basis of  §
this lawsuit, was the owner of the motor  §
vehicle being operated by the Defendant,  §
Timothy Lee Simonds; 31 through 40,  §
whether singular or plural, the person, firm,  §
corporation or other entity who negligently  §
entrusted the motor vehicle being operated  §
by the Defendant, Timothy Lee Simonds  §
and/or the fictitious parties 1 through 10, at  §
the time of the accident made the basis of  §
this lawsuit to the said Defendants; 41  §
through 50, whether singular or plural, the  §
person, firm, corporation or other entity  §
who was responsible for the maintenance  §
of the motor vehicle being operated by the  §
Defendant, Timothy Lee Simonds, and/or  §
the fictitious parties 1 through 10 at the time  §
of the accident made the basis of this  §



lawsuit; 51 through 60, whether singular    §
or plural, the person, firm, corporation or   §
other entity who issued and/or underwrote  §
the policy of insurance hereinafter described §
in the complaint; whose names and true   §
legal identities are otherwise unknown at   §
this time, but who will be substituted by    §
amendment when ascertained; individually  §
and jointly,                                    §
                                            §
      Defendants.                      §

DEPONENT:     The agent, servant or employee of the Defendant, J & J Wood, Inc., who is in charge of or otherwise responsible for the maintenance and/or servicing of vehicles owned and/or operated by J & J Wood, Inc., and, in particular, the vehicle involved in the accident made the basis of this lawsuit.

DATE:           TO BE DETERMINED

TIME:            TO BE DETERMINED

LOCATION:     Cunningham, Bounds, Crowder, Brown & Breedlove, L.L.C.
                  1601 Dauphin Street
                  Mobile, Alabama 36604

      PLEASE TAKE NOTICE that CUNNINGHAM, BOUNDS, CROWDER, BROWN and

BREEDLOVE, Attorneys for the Plaintiff, will take the videotaped and stenographic deposition

of the deponent named above, at the time, date and location indicated above, upon oral

examination pursuant to the Alabama Rules of Civil Procedure, before an officer duly

authorized to administer oaths and swear witnesses. The deponent will be videotaped for the

purpose of preserving the evidence to present to a jury in the event the witness is unavailable

for trial. The deponent will be treated fairly. The video record will be trustworthy and

accurate. Furthermore, the written transcript by the court reporter shall constitute the official

record of the deposition.  The oral examinations will continue from day to day until completed, and you are invited to attend and examine the deponent.

## DUCES TECUM

(1)    any and all bills, invoices, work orders, maintenance records, service records and/or other documents or materials of any type, kind or description which reference or in any way relate to any maintenance on, servicing of and/or repairs to the vehicle being operated by the Defendant, Timothy Lee Simonds, at the time of the subject accident which were done at any time during the one year prior to and including the date of the subject accident;

(2)    any and all bills, invoices, work orders, maintenance records, service records and/or other documents or materials of any type, kind or description which reference or in any way relate to the repairs of any damage the vehicle being operated by the Defendant, Timothy Lee Simonds, at the time of the accident made the basis of this lawsuit sustained in the subject accident and/or which reference or in any way relate to the replacement of any items on the vehicle after the subject accident.

(3)    all company policies, procedures, guidelines, instructions, rules and/or regulations of any type, kind or description and procedures which reference or in any way relate to the maintenance and/or servicing of vehicles owned and/or operated by J & J Wood, Inc. which were in existence at any time up to and including the date of the accident made the basis of this lawsuit;

(4)    all photographs of the vehicle involved in the accident made the basis of this lawsuit which were taken subsequent to the accident made the basis of this lawsuit, specifically including, but not limited to, all photographs which depict any damage to the subject vehicle caused by the subject accident; and

(5)    all maintenance, service, repair and/or other documents or materials of any type, kind or description which identify, reference or in any relate to any damaged parts and/or equipment on the vehicle involved in the accident made the basis of this lawsuit and/or which reference or in any way relate to any

investigation or examination of the subject vehicle subsequent to the accident made the basis of this lawsuit.

*IT IS REQUESTED THAT ALL DOCUMENTS PRODUCED IN RESPONSE TO THE ABOVE REQUESTS BE BATES STAMPED AND THAT, FOR EACH REQUEST, THE RESPONSIVE DOCUMENTS BE IDENTIFIED BY THE INCLUSIVE BATES NUMBERS.*

The undersigned, by affixing his signature hereto, certifies that he has served a copy of this pleading on counsel for all parties to this proceeding by fax and by mailing the same by United States mail, properly addressed, and first class postage prepaid.

CUNNINGHAM, BOUNDS, CROWDER, BROWN AND BREEDLOVE, L.L.C.
ATTORNEYS FOR PLAINTIFF

BY: _____

GEORGE W. FINKBOHNER, III (FIN001)
DAVID S. CAIN, JR.  (CAI012)
Post Office Box 66705
Mobile, Alabama 36660
Telephone:      251-471-6191
Fax:      251-479-1031

**<u>TO BE SERVED WITH THE COMPLAINT</u>**

-4-

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

| | |
|---|---|
| CHARLENE HOWELL, as the Personal Representative of the Estate of JAMES FARRELL HOWELL, deceased, §§§§ | |
| Plaintiff, §§ | CIVIL ACTION |
| §§ | NO. CV-06-_____ |
| v. §§ | |
| §§ | **NOTICE OF THE VIDEOTAPED** |
| J & J WOOD, INC.; TIMOTHY LEE SIMONDS; QUALITY CASUALTY INSURANCE COMPANY, INC.; 1 through 10, whether singular or plural, the person who at the time and place of the accident made the basis of this lawsuit, was the operator of the motor vehicle which came into contact with the motor vehicle being operated by James Farrell Howell; 11 through 20, whether singular or plural, the person, firm, corporation or other entity who at the time of the accident made the basis of this lawsuit, was the principal, master or employer of the Defendant, Timothy Lee Simonds; 21 through 30 whether singular or plural, the person, firm, corporation or other entity who, at the time of the accident made the basis of this lawsuit, was the owner of the motor vehicle being operated by the Defendant, Timothy Lee Simonds; 31 through 40, whether singular or plural, the person, firm, corporation or other entity who negligently entrusted the motor vehicle being operated by the Defendant, Timothy Lee Simonds and/or the fictitious parties 1 through 10, at the time of the accident made the basis of this lawsuit to the said Defendants; 41 through 50, whether singular or plural, the person, firm, corporation or other entity who was responsible for the maintenance of the motor vehicle being operated by the Defendant, Timothy Lee Simonds, and/or the fictitious parties 1 through 10 at the time of the accident made the basis of this §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ | **DEPOSITION OF THE DEFENDANT, J & J WOOD, INC.** |

lawsuit; 51 through 60, whether singular   §
or plural, the person, firm, corporation or   §
other entity who issued and/or underwrote   §
the policy of insurance hereinafter described   §
in the complaint; whose names and true   §
legal identities are otherwise unknown at   §
this time, but who will be substituted by   §
amendment when ascertained; individually   §
and jointly,   §
  §
      Defendants.   §

DEPONENT:    The agent, servant or employee of the Defendant, J & J Wood, Inc., who is in charge of or otherwise responsible for safety.

DATE:    TO BE DETERMINED

TIME:    TO BE DETERMINED

LOCATION:    Cunningham, Bounds, Crowder, Brown & Breedlove, L.L.C.
1601 Dauphin Street
Mobile, Alabama 36604

PLEASE TAKE NOTICE that CUNNINGHAM, BOUNDS, CROWDER , BROWN and BREEDLOVE, Attorneys for the Plaintiff, will take the videotaped and stenographic deposition of the deponent named above, at the time, date and location indicated above, upon oral examination pursuant to the Alabama Rules of Civil Procedure, before an officer duly authorized to administer oaths and swear witnesses. The deponent will be videotaped for the purpose of preserving the evidence to present to a jury in the event the witness is unavailable for trial. The deponent will be treated fairly. The video record will be trustworthy and accurate. Furthermore, the written transcript by the court reporter shall constitute the official

record of the deposition. The oral examinations will continue from day to day until com-

pleted, and you are invited to attend and examine the deponent.

## DUCES TECUM

(1)      any and all company safety policies, procedures, rules, regulations and/or guidelines which were in existence at the time of the accident made the basis of this lawsuit;

(1)      any and all safety manuals, books and/or other documents or materials of any type, kind or description which were provided to the Defendant, Timothy Lee Simonds, at the time he was first hired as a driver for J & J Wood, Inc. and/or at any time subsequent to the date he was first hired as a driver for J & J Wood, Inc.;

(2)      any and all photographs taken by any agent, servant or employee of J & J Wood, Inc. and/or any other person, firm, corporation or other entity acting for or on behalf of J & J Wood, Inc. which depict the scene of the accident made the basis of this lawsuit, the vehicles involved in the subject accident, the injuries sustained by any individual involved in the subject accident and/or which relate in any manner to the accident made the basis of this lawsuit;

(3)      any and all videotapes taken by any agent, servant or employee of J & J Wood, Inc. and/or any other person, firm, corporation or other entity acting for or on behalf of J & J Wood, Inc. which depict the scene of the accident made the basis of this lawsuit, the vehicles involved in the subject accident, the injuries any individual involved in the subject accident and/or which relate in any manner to the accident made the basis of this lawsuit;

(4)      any and all notes, memoranda, reports, statements, tape recordings, drawings and/or other documents or materials of any type, kind or description which reference or in any way relate to any investigation conducted by any insurance adjuster, agent, servant and/or employee of J & J Wood, Inc. (other than its attorneys) relating to the accident made the basis of this lawsuit, including, but not limited to, any and all documents or materials which reference or in any way relate to any inspection and/or

-3-

examination of the vehicle the Defendant, Timothy Lee Simonds, was driving at the time of the subject accident;

(5)     any and all State and/or Federal Department of Transportation audits of J & J Wood, Inc. during the five years prior to and including the date of the subject accident and/or at any time subsequent to the subject accident.

(6)     any and all reports and/or other documents of any type, kind or description filed by J & J Wood, Inc. with any local, state or federal agency which reference or any way relate to the operation of J & J Wood, Inc.;

(7)     any and all reports and/or other documents or materials of any type, kind or description filed by J & J Wood, Inc. with any local, state or federal agency which reference or in any way relate to the accident made the basis of this lawsuit;

(8)     any and all correspondence, memos, reports and/or other documents or materials of any type, kind or description received by J & J Wood, Inc. from any local, state or federal agency which reference or in any way relate to the accident made the basis of this lawsuit;

(9)     any and all State and/or Federal Department of Transportation citations issued to J & J Wood, Inc. at any time during the 5 years prior to and including the date of the accident made the basis of this lawsuit and/or at any time subsequent to the subject accident.

***IT IS REQUESTED THAT ALL DOCUMENTS PRODUCED IN RESPONSE TO THE ABOVE REQUESTS BE BATES STAMPED AND THAT, FOR EACH REQUEST, THE RESPONSIVE DOCUMENTS BE IDENTIFIED BY THE INCLUSIVE BATES NUMBERS.***

The undersigned, by affixing his signature hereto, certifies that he has served a copy of this pleading on counsel for all parties to this proceeding by fax and by mailing the same by United States mail, properly addressed, and first class postage prepaid.

-4-

CUNNINGHAM, BOUNDS, CROWDER,
BROWN AND BREEDLOVE, L.L.C.
ATTORNEYS FOR PLAINTIFF

BY: _____

GEORGE W. FINKBOHNER, III (FIN011)
DAVID S. CAIN, JR.  (CAI012)
Post Office Box 66705
Mobile, Alabama 36660
Telephone:        251-471-6191
Fax:              251-479-1031

**_TO BE SERVED WITH THE COMPLAINT_**

-5-

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as the Personal                §
Representative of the Estate of JAMES           §
FARRELL HOWELL, deceased,                        §
                                                 §        CIVIL ACTION
          Plaintiff,                             §
                                                 §        NO. CV-06-_____
v.                                               §
                                                 §
J & J WOOD, INC.; TIMOTHY LEE                    §        **NOTICE OF THE VIDEOTAPED**
SIMONDS; QUALITY CASUALTY                        §        **DEPOSITION OF THE DEFENDANT,**
INSURANCE COMPANY, INC.; 1 through               §        **TIMOTHY LEE SIMONDS**
10, whether singular or plural, the person       §
who at the time and place of the accident        §
made the basis of this lawsuit, was the          §
operator of the motor vehicle which came         §
into contact with the motor vehicle being        §
operated by James Farrell Howell; 11             §
through 20, whether singular or plural, the      §
person, firm, corporation or other entity        §
who at the time of the accident made the         §
basis of this lawsuit, was the principal,        §
master or employer of the Defendant,             §
Timothy Lee Simonds; 21 through 30               §
whether singular or plural, the person, firm,    §
corporation or other entity who, at the          §
time of the accident made the basis of           §
this lawsuit, was the owner of the motor         §
vehicle being operated by the Defendant,         §
Timothy Lee Simonds; 31 through 40,              §
whether singular or plural, the person, firm,    §
corporation or other entity who negligently      §
entrusted the motor vehicle being operated       §
by the Defendant, Timothy Lee Simonds            §
and/or the fictitious parties 1 through 10, at   §
the time of the accident made the basis of       §
this lawsuit to the said Defendants; 41          §
through 50, whether singular or plural, the      §
person, firm, corporation or other entity        §
who was responsible for the maintenance          §
of the motor vehicle being operated by the       §
Defendant, Timothy Lee Simonds, and/or           §
the fictitious parties 1 through 10 at the time  §
of the accident made the basis of this           §



lawsuit; 51 through 60, whether singular          §
or plural, the person, firm, corporation or       §
other entity who issued and/or underwrote         §
the policy of insurance hereinafter described     §
in the complaint; whose names and true            §
legal identities are otherwise unknown at         §
this time, but who will be substituted by         §
amendment when ascertained; individually          §
and jointly,                                      §
                                                  §
    Defendants.                §

DEPONENT:        TIMOTHY LEE SIMONDS

DATE:            TO BE DETERMINED

TIME:            TO BE DETERMINED

LOCATION:        Cunningham, Bounds, Crowder, Brown and Breedlove
                 1601 Dauphin Street
                 Mobile, Alabama 36604

    PLEASE TAKE NOTICE that CUNNINGHAM, BOUNDS, CROWDER , BROWN and

BREEDLOVE, Attorneys for the Plaintiff, will take the videotaped and stenographic deposition

of the deponent named above, at the time, date and location indicated above, upon oral

examination pursuant to the Alabama Rules of Civil Procedure, before an officer duly

authorized to administer oaths and swear witnesses.  The deponent will be videotaped for the

purpose of preserving the evidence to present to a jury in the event the witness is unavailable

for trial.   The deponent will be treated fairly.  The video record will be trustworthy and

accurate.  Furthermore, the written transcript by the court reporter shall constitute the official

record of the deposition.   The oral examinations will continue from day to day until

completed, and you are invited to attend and examine the deponent.

CUNNINGHAM, BOUNDS, CROWDER,
BROWN AND BREEDLOVE, L.L.C.
ATTORNEYS FOR PLAINTIFF

BY: _____
GEORGE W. FINKBOHNER, III (FIN011)
DAVID S. CAIN, JR. (CAI012)
Post Office Box 66705
Mobile, Alabama  36660
Telephone:        251-471-6191
Fax:              251-479-1031

**_TO BE SERVED WITH THE COMPLAINT_**

-3-

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

CHARLENE HOWELL, as the Personal §
Representative of the Estate of JAMES §
FARRELL HOWELL, deceased, §
§
      Plaintiff, §
§
v. §
§
J & J WOOD, INC.; TIMOTHY LEE §
SIMONDS; QUALITY CASUALTY §
INSURANCE COMPANY, INC.; 1 through §
10, whether singular or plural, the person §
who at the time and place of the accident §
made the basis of this lawsuit, was the §
operator of the motor vehicle which came §
into contact with the motor vehicle being §
operated by James Farrell Howell; 11 §
through 20, whether singular or plural, the §
person, firm, corporation or other entity §
who at the time of the accident made the §
basis of this lawsuit, was the principal, §
master or employer of the Defendant, §
Timothy Lee Simonds; 21 through 30 §
whether singular or plural, the person, firm, §
corporation or other entity who, at the §
time of the accident made the basis of §
this lawsuit, was the owner of the motor §
vehicle being operated by the Defendant, §
Timothy Lee Simonds; 31 through 40, §
whether singular or plural, the person, firm, §
corporation or other entity who negligently §
entrusted the motor vehicle being operated §
by the Defendant, Timothy Lee Simonds §
and/or the fictitious parties 1 through 10, at §
the time of the accident made the basis of §
this lawsuit to the said Defendants; 41 §
through 50, whether singular or plural, the §
person, firm, corporation or other entity §
who was responsible for the maintenance §
of the motor vehicle being operated by the §
Defendant, Timothy Lee Simonds, and/or §
the fictitious parties 1 through 10 at the time §
of the accident made the basis of this §

CIVIL ACTION

NO. CV-06-_____

**NOTICE OF THE VIDEOTAPED**
**DEPOSITION OF JIMMY JONES**



lawsuit; 51 through 60, whether singular   §
or plural, the person, firm, corporation or   §
other entity who issued and/or underwrote   §
the policy of insurance hereinafter described §
in the complaint; whose names and true   §
legal identities are otherwise unknown at   §
this time, but who will be substituted by   §
amendment when ascertained; individually   §
and jointly,   §
  §
  §
     Defendants.   §

| | |
|---|---|
| DEPONENT: | JIMMY JONES |
| DATE: | TO BE DETERMINED |
| TIME: | TO BE DETERMINED |
| LOCATION: | Cunningham, Bounds, Crowder, Brown and Breedlove<br>1601 Dauphin Street<br>Mobile, Alabama 36604 |

     PLEASE TAKE NOTICE that CUNNINGHAM, BOUNDS, CROWDER, BROWN and BREEDLOVE, Attorneys for the Plaintiff, will take the videotaped and stenographic deposition of the deponent named above, at the time, date and location indicated above, upon oral examination pursuant to the Alabama Rules of Civil Procedure, before an officer duly authorized to administer oaths and swear witnesses. The deponent will be videotaped for the purpose of preserving the evidence to present to a jury in the event the witness is unavailable for trial. The deponent will be treated fairly. The video record will be trustworthy and accurate. Furthermore, the written transcript by the court reporter shall constitute the official record of the deposition. The oral examinations will continue from day to day until completed, and you are invited to attend and examine the deponent.

CUNNINGHAM, BOUNDS, CROWDER,
BROWN AND BREEDLOVE, L.L.C.
ATTORNEYS FOR PLAINTIFF

BY

GEORGE W. FINKBOHNER, III (FIN011)
DAVID S. CAIN, JR. (CAI012)
Post Office Box 66705
Mobile, Alabama 36660
Telephone:        251-471-6191
Fax:              251-479-1031

***TO BE SERVED WITH THE COMPLAINT***

-3-