UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLENE HOWELL, etc., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 06-417 |
| J & J WOOD, INC., et al., | § § § | |
| Defendants. | § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT JIMMY JONES, JR.'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, Charlene Howell, ("Mrs. Howell), and opposes Defendant Jimmy Jones, Jr.'s ("Mr. Jones") Motion for Summary Judgment, saying and showing as follows:

At approximately 9:30 p.m. on October 5, 2005, an overloaded J&J Wood log truck being driven by an unqualified and disqualified truck driver, Timothy Simonds, ("Mr. Simonds") within the line and scope of his employment with Defendant J&J Wood, Inc., with owner Mr. Jones' advice and direction, attempted to turn around in the middle of a major four-lane U.S. Highway, in the dark of night, during a rain storm, blocking all four lanes of travel in an unlit area of the highway while operating that truck in violation of Alabama law and multiple Federal Motor Carrier Safety Regulations, including regulations pertaining to lighting, reflectors, tire inflation pressures, tire tread depths, weight restrictions, and multiple other provisions of the Federal Regulations required for safe operation of a commercial vehicle. Mrs. Howell alleges that as a proximate consequence of this conduct, her husband's vehicle collided with the J&J tractor and trailer, causing Mr. Howell's death.

Mr. Jones has now filed a Motion for Summary Judgment seeking to avoid responsibility for the role he played in Mr. Howell's death.

Mr. Jones' motion has no foundation in Alabama law and should be denied. Mr. Jones is personally liable for the torts he commits, regardless of the capacity in which he acts, so the entire legal premise for his argument is wrong. Moreover, his motion for summary judgment failed to satisfy his threshold burden of demonstrating an absence of issues of material fact, thereby entitling this Court to deny the motion summarily without having to reach its merits.

This case presents numerous genuine issues of material fact requiring resolution by a jury. Thus, summary judgment would not be appropriate, and Defendant's motion should be denied.

## STATEMENT OF FACTS

On the night of October 5, 2005, at approximately 9:30 p.m., a log truck driven by J&J's driver, Mr. Simonds, pulled across all four lanes of travel on Highway 165 south of Phenix City, Alabama. (Freeman depo, pp. 45/23 - 47/13; Phenix City Traffic Homicide Investigation, pp. PD024-026, PD034-35; Burnette depo pp. 14/10-14/20). Soon thereafter, plaintiff's decedent, James Farrell Howell, collided with the back left trailer tire, killing him and injuring his passenger. (Phenix City police photos, PIC57-95; Burnette depo pp. 9/19-12/25; Phenix City Traffic Homicide Investigation, pp. PD024-026, PD034-035).

### *The Driver*

The driver of the log truck, a defendant in this action, Mr. Simonds, was an ex-felon who had spent five years in prison prior to being hired by J&J. (Simonds' depo, pp. 7/1-7/23). He had been convicted of robbery, theft by taking, possession of controlled

substances (cocaine), forgery (multiple counts), and negotiating worthless checks (multiple counts), among others. (Simonds' depo, pp. 50/4-25, p. 69/21- 70/6, 71/17-72/24). He had his license suspended on four occasions, and had an admitted drug problem. (Simonds' driving history; Simonds' depo, pp. 30/20-25, 69/21-23, 50/4-25).

At the time of the collision made the basis of this lawsuit, Simonds was medically disqualified to operate a commercial motor vehicle. (Guntharp Supplemental Rule 26 Report, Opinions 1 and 2, p. 3[1]; Simonds' Medical Card). Mr. Simonds was over the hours-of-service regulations set forth by the federal government, disqualifying him from driving. (Guntharp Rule 26 Expert Disclosures, Opinion #16, p. 3). Mr. Simonds had falsified his driver logs on the day of the accident, and on the previous days prior to the accident. (Simonds depo, pp. 106/18-109/17). Mr. Simonds had falsified his application for employment with J&J Wood, thereby again disqualifying him under the regulations.[2] (Simonds' Federal Application; Simonds depo, pp. 76/15-77/3, pp. 78/18-81/5; Jones, Sr. depo, pp. 71/11-75/7). Mr. Simonds did not have a complete driver qualification file, again thereby serving to disqualify him under the regulations. Still further, Mr. Simonds operated the vehicle in violation of numerous other Federal Regulations. (Jones, Sr. depo, pp. 71/11-75/7; Guntharp Rule 26 Expert Disclosures, pp. 2-4; Guntharp Supplemental Rule

---

[1] Plaintiff's experts Sobek and Guntharp (CVs attached) were deposed on May 24, 2007. The transcripts have not yet been received but both testified consistent with their Rule 26 reports, which were attached as exhibits to their depositions. Plaintiff will supplement their filing in opposition to Mr. Jones' Motion for Summary Judgment to include those transcripts as soon as they are received.

[2] Simonds had already been terminated by one motor carrier for application falsification months prior to applying with J&J. (Hollenbeck depo, p.   ). The transcript has not yet been received. Plaintiff will supplement their filing in opposition to Mr. Jones' Motion for Summary Judgment to include this transcript as soon as it is received.

3

26 Disclosures, pp. 3-4).

### *The Log Truck*

J&J's log truck on the evening made the basis of this lawsuit was in gross violation of regulations governing the obstruction of lights and reflective devices and material contained on the truck, lighting device and reflector regulations, retroreflective sheeting regulations, regulations regarding the inflation pressures of tires, the tread depth required of tires, weight restrictions set forth by state and federal law, and weight restrictions set forth by the manufacturer of the vehicle. (Guntharp Rule 26 Report, pp. 2-4; Guntharp Supplemental Rule 26 Report, pp. 3-4; Sobek Rule 26 Report, pp. 3-4; Freeman depo, pp. 37/8-38/2, pp. 42/13-43/7; Phenix City Traffic Homicide Investigation, pp. PD028 and PD033).

### *The Owner*

The co-defendant, Mr. Jones, is vice-president and partial owner of J&J. (Jones' depo, p. 12/11-16). His responsibilities, and those of J&J, include cutting logs, loading trucks and ensuring that the company's drivers are qualified and its trucks are properly maintained and comply with Federal Regulations. (Jones' depo, p. 18/3-18/7, pp. 19/6-20/3, pp. 23/2-24/11, pp. 26/25-27/22). In fact, Mr. Jones was responsible for overloading this particular log truck on the day of the accident. (Jones' depo, p. 18/16-18, pp. 39/14-40/5, pp. 42/25-45/6). Moreover, Mr. Jones was intimately involved in the maintenance and condition of this particular log truck and in numerous decisions made on the night of October 5, 2005 which led to the collision made the basis of this lawsuit. (Jones' depo, p. 18/3-18/7, pp. 19/6-20/3; pp. 23/2-24/11, pp. 26/25-27/22). Further, Mr. Jones was responsible for allowing Mr. Simonds while unqualified to operate this log truck on the night

in question. (Jones' depo, p. 18/3-18/7, pp. 19/6-20/3; pp. 23/2-24/11, pp. 26/25-27/22, pp. 99/11-100/14; Simonds' depo, pp. 131/2-132/20 ).

### *The Collision*

On the night of this collision, Mr. Simonds experienced a flat trailer tire in the area of Phenix City. (Simonds' depo, pp. 126/5-128/2). Despite having a safe place to park his vehicle until the tire could be repaired, he chose to air the tire back up and continue down the roadway. (Simonds' depo, pp. 128/11-129/1). Within six to seven miles of additional travel, the trailer tire had gone flat once again. (Simonds' depo, p. 128/4-129/13). Mr. Simonds pulled over at another place to stop until the tire could be repaired and contacted Mr. Jones for advice and to inform him of the defective tire. (Simonds' depo, pp. 129/7-130/10, pp. 130/14-131/1). Mr. Jones decided to take J&J's service truck to the site of the broken down log truck. (Simonds' depo, pp. 129/25-130/10; Jones' depo, p. 73/18-23). A flat tire, under the Federal Regulations, is an out-of-service violation, and the vehicle is not to be moved on the roadway so long as it is in a safe position until the tire condition is repaired or replaced. (Guntharp Rule 26 Report, Opinion 23, p. 3; Guntharp Rule 26 Supplemental Report, pp. 3-4). Despite this, upon his arrival on the scene, Mr. Jones again aired up the tire (which had already by then twice gone flat) without performing any repairs, and instructed Mr. Simonds (already over his hours-of-service limitation) to continue to his destination in Cottonington, Alabama. (Simonds' depo, pp. 131/2-132/20; Guntharp Rule 26 Report, Opinions 6 and 16, p. 3). Predictably, a few miles down the road on southbound Highway 165, the log truck/trailer again suffered a flat tire. (Simonds' depo, p. 134/6-21). In addition to the flat tire, this truck, at that time, as throughout the day,

had five underinflated tires on its tractor unit.[3]  (Freeman depo, pp. 40/15-42/17; Phenix City Traffic Homicide Investigation, p. PD033; Guntharp Rule 26 Report, Opinions 13 and 15, p. 3). It had five out-of-service, illegal tires with tread depths less than 2/32 of an inch. (Freeman depo, pp. 42/13-43/7; Phenix City Traffic Homicide Investigation, p. PD033; Guntharp Rule 26 Report, Opinion 15, p. 3). It had obscured conspicuity/retroreflective sheeting and dirty obscured side running lamps. (Phenix City Police Photos, PIC057-095; Guntharp's Rule 26 Report, Opinions 7, 8 and 14, pp. 2-3; Guntharp Rule 26 Supplemental Report, Opinions 8 and 9, p. 4; Sobek's Rule 26 Report, pp. 3-4; Burnette depo, pp. 16/25-17/25). It had missing tail lamps on the tractor unit, an inadequate number of lamps on the projecting load, and the wrong colored lamps on its projecting load. (Phenix City Police Photos, PIC057-095; Guntharp's Rule 26 Report, Opinions 7, 8 and 21, pp. 2-3; Sobek's Rule 26 Report, pp. 3-4; Burnette depo, pp. 16/25-17/25). All of these conditions were maintenance issues both Mr. Simonds and Mr. Jones were responsible for. (Jones' depo, p. 18/3-18/7, pp. 19/6-20/3, pp. 23/2-24/11, pp. 26/25-27/22).

Additionally, Mr. Jones had overloaded the truck with logs, and Mr. Simonds had driven it anyway. (Jones' depo, p. 18/16-18/18, pp. 39/14-40/15, pp. 42/15-45/6; Freeman depo, pp. 37/8-38/2; Phenix City Traffic Homicide Investigation, p. PD028).

After the third flat on the same tire, Mr. Jones instructed Simonds to pull his log truck over into the turn lane of Misty Forest Subdivision to again air up the flat trailer tire. (Simonds' depo, pp. 134/6-143/ 6). Unable to repair the tire, and with an appreciation that the tire had already gone flat three times over approximately 8-9 miles and had an audible

---

[3] Investigating officers were unable to provide measurements for the trailer's tires.

leak, Mr. Jones and Mr. Simonds made the decision to drive it anyway, turn around at this intersection, and return to a truck stop where they had previously been. (Simonds' depo, pp. 134/6-143/6; Jones' depo, p. 85/17-19). The intersection of Highway 165 and Misty Forest Subdivision is at the crest of a hill, is in a dark, unlighted area and is a dangerous place for a log truck driver to attempt any type of turnaround maneuver. (Police photos, PIC057-095; Guntharp's Rule 26 Report, Opinions 17, 18, 19, 22, and 23, p. 3; Burnett's depo, p. 12/1-12, pp. 18/1-19/3; Williams' depo, p. 10/1-10/22). On this particular night, it was raining. (Williams' depo, p. 10/1-10/22; Kim's depo, p. 36/18-25). Mr. Simonds was directed by Mr. Jones to attempt the turnaround anyway. He was able to get the log truck positioned across all four lanes of traffic, blocking all avenues of escape for any unsuspecting motorist, at a place it was difficult to see since the truck and the trailer were virtually invisible at that time of night at that location. (Guntharp's Rule 26 Report, Opinions 17, 18, 19, 22, and 23, p. 3; Sobek's Rule 26 Report, p. 3-4; Burnett's depo, pp. 7/8-19/1, pp. 32/8-33/25, pp. 42/15-44/18; Freeman depo, pp. 8/19-9/20, pp. 45/23-47/18; Simonds' depo, p. 198/6-25; Phenix City Traffic Homicide Investigation, pp. PD028, PD033-035; Phenix City police photos, PIC57-95).

Mr. Jones admitted that he helped direct Mr. Simonds and his loaded tractor/trailer rig completely across the highway. (Jones' deposition, p. 99/11-20). He admitted that he had seen Mr. Howell's vehicle traveling south on highway 165, and that he nevertheless directed Simonds out into the highway to make his turn maneuver. (Jones' depo, pp. 99/11-100/14).

Mr. Howell was at that time lawfully driving southbound in his Chevy Lumina. (Kim depo pp. 41-45). Unbeknownst to him or to his passenger or the other motorists on the

7

roadway, J&J's trailer loomed ahead across all four lanes of U.S. Highway 165, virtually invisible to any reasonable motorist, as it was dirty and without adequate reflective material. (Burnette depo, pp. 7/8-19/1, pp. 32/8-33/25, pp. 42/15-44/18; Sobek Rule 26 Report, pp. 3-4; Guntharp's Rule 26 Report, pp. 2-4). By the time Mr. Howell, (who immediately prior to impact was lawfully traveling the speed limit of 50-55 MPH), realized a log truck was in front of him, blocking all lanes of travel, it was too late. (Burnette depo, pp. 7/22-8/25, pp. 10/10-11/2, p. 16/3-25, pp. 32/13-33/2; Kim depo, p. 44/5-19, pp. 46/10-47/11; Sobek Rule 26 Report, pp. 3-4). He applied his brakes and attempted to stop his Lumina prior to impact but crashed into the dirty, inadequately marked trailer at the rear-most driver's side trailer tire. (Simonds' depo, pp. 165/18-166/12; Burnette depo, pp. 7/8-19/1, pp. 32/8-33/25, pp. 42/15-44/13; Sobek's Rule 26 Report, pp. 2-4; Guntharp's Rule 26 Report, pp. 3-4). The impact killed Mr. Howell. His passenger, Kyong Mi Kim, was severely injured and in a coma for ten days. (Kim depo, p. 52/7-8).

Plaintiff alleges in this case that the defendants negligently and wantonly operated and maintained the tractor/trailer, and that they improperly employed Mr. Simonds as a truck driver and failed to provide him with the appropriate education, training and experience to make competent decisions on the night in question. (Plaintiff's Complaint)

Plaintiffs' expert witness, James Sobek, a visibility and accident reconstructionist, investigated the accident and offered, amongst others, the following opinions:

> 4.     "Because the J&J Wood trailer was so dirty and poorly lighted, and because the tractor was much more noticeable, neither Mr. Howell nor Ms. Kim would have been able to notice the trailer across the road in front of them until the car had closed to within about 85 feet of the point of impact."
> . . .
> 6.     "When the situation finally became clear to Mr. Howell, there was no way he could have avoided colliding with the log trailer."

8

Case 3:06-cv-00417-WHA-TFM     Document 56     Filed 06/05/2007     Page 9 of 16

> . . .
> 7. "The condition of the conspicuity sheeting was so dirty that the trailer did not meet the requirements set forth in Federal Motor Carrier Safety Regulations (FMCRS) 393.9, Subpart B (b), and in no way provided to the car's occupants any visual information of the trailer's presence on the highway."
> . . .
> 8. "The location and grimy condition of the side marker lights on the trailer provided extremely limited information about the trailer's presence to Mr. Howell and Ms. Kim."
> . . .
> 10. "The site geometry that Mr. Simonds and Mr. Jones selected to make this maneuver, combined with the extremely dirty conditions of the lights and conspicuity tape, prevented Mr. Howell from seeing the trailer across the road until a collision was inevitable."
> . . .
> 12. "J&J Wood's inattention to the condition of the trailer's lighting and reflector systems, both prior to this collision and during our inspection of the subject truck and trailer, indicates a gross lack of concern for the safety of the motoring public."

(Sobek Rule 26 Report, pp. 3-4).

Another of plaintiffs' expert witnesses, Walt Guntharp, a trucking safety and regulations compliance expert, investigated the accident and offered, amongst others, the following opinions:

> "1. Timothy Simonds did not have adequate experience to safely operate a commercial motor vehicle.
>
> 2. Timothy Simonds' prior drug history should have prevented J&J Wood, Inc. from employing him as a commercial driver.
>
> 4. J&J Wood's driver qualification file for Timothy Simonds was incomplete and failed to meet the requirements set forth in the Federal Motor Carrier Safety Regulations (FMCSR) CFR 49, section 391."
> . . .
> "8. J&J Wood, Inc. failed to properly maintain the truck and trailer that Timothy Simonds was operating at the time of the collision."
> . . .
> "11. On the date of this collision, the tractor-trailer that Timothy Simonds was driving was overweight and that he had been operating it illegally in the states of Georgia and Alabama."
>
> 12. J&J Wood, Inc. had the experience and training to know that the truck that Timothy Simonds was driving on the date of the collision was overweight and

9

      that they knowingly allowed it to operate illegally.

13.     At the time of the collision, at least 6 of the tires on the tractor-trailer that Mr. Simonds was driving were under-inflated.

14.     The trailer that Timothy Simonds was operating was excessively dirty and that dirt and grime obscured the retro-reflective taping on the side."

. . .

"24.     This collision is the result of improper hiring, improper supervision and improper driving practices. It was completely foreseeable that Mr. Simonds was an unqualified driver and that there was a high potential for harm to be involved in a serious collision.

25.     The decision by J&J Wood, Inc. to hire and use Timothy Simonds as a professional truck driver was inconsistent with industry standards and expectations, and represented a willful disregard for the safety of the motoring public."

(Guntharp Rule 26 Report, pp. 2-4).

### **Argument**

<u>I. Mr. Jones is Liable for the Torts Which He Commits, Regardless of the Capacity in Which He Acts. Thus, He Cannot Escape Individual Liability on the Ground that he was Acting in His Capacity as an Agent and Owner of J&J Wood, Inc.</u>

"It is a well settled rule in this state that a person is liable for the torts which he or she commits, regardless of the capacity in which that person acts." *Inter-Connect, Inc. v. Gross*, 644 So. 2d 867, 869 (Ala. 1994) (citing *Finnell v. Pitts*, 132 So. 2, 4 (Ala. 1930). In *Gross*, on appeal from a grant of summary judgment, the Alabama Supreme Court addressed the same issue before the Court in this case: whether a corporate officer's "allegedly tortious actions may subject him to personal liability, notwithstanding his allegations that he was acting only on behalf of the corporation." *Gross*, 644 So. 2d at 868. The Alabama Supreme Court reversed the grant of summary judgment by the trial court and held that regardless of whether the defendant acted in an official corporate capacity he was nevertheless individually liable for the torts he commits. *Id.* at 869.

This rule is entrenched in Alabama case law. *See Consol. Const. Co. of Ala. v. Metal Bldg. Components, L.P.*, 2007 WL 80799, *3-4 (Ala. Jan 12, 2007) (Harwood and Bolin, JJ. Concurring specially), *quoting Crigler v. Salac*, 438 So. 2d 1375 (Ala. 1983) ("It is well settled that a man in personally liable for all torts committed by him…."); *Ex parte McInnis*, 820 So. 2d 795, 798-99 (Ala. 2001), *quoting Sieber v. Campbell*, 810 So. 2d 641, 645 (Ala. 2001) ("A corporate agent who personally participates, albeit in his or her capacity as such agent, in tort is personally liable for the tort."); *Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999) (holding that a president of a corporation can be held liable for the fraudulent acts or omissions he personally committed in his corporate capacity); *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986)("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity.").

In *Crigler*, 438 So. 2d at 1379, the Alabama Supreme Court explained this rule at length:

> It is thoroughly well settled that a man is personally liable for all torts committed by him, consisting in misfeasance-as fraud, conversion, acts done negligently, etc.-notwithstanding he may have acted as the agent or under directions of another. And this is true to the full extent as to torts committed by the officers or agents of a corporation in the management of its affairs. The fact that the circumstances are such as to render the corporation liable is altogether immaterial.... Corporate officers are liable for their torts, although committed when acting officially. In other words, corporate officers, charged in law with affirmative official responsibility in the management and control of corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or

>approval, or such acquiescence on their part as warrants inferring such consent or approval.

(quoting Fletcher's Cyclopedia of Corporations, § 1135, 202-03 (1975)). Thus, Defendant's argument—that the individual tort claims against him should be dismissed due to his capacity as an agent and owner of the company—is in direct contradiction to Alabama law.

Jones attempts to draw an analogy between this case and the Alabama Supreme Court's holding in *Ex parte Jamar*, 703 So. 2d 879 (Ala. 1997). However, the Defendant's analogy is misplaced and not entirely accurate. Defendant correctly argues that the Court in *Jamar* affirmed a grant of summary judgment for the defendants. *Id.* at 881. Yet, the Defendant wrongly construes the Court's rationale for its holding. The Court in *Jamar* based its decision on a release signed by the plaintiff. *Jamar*, 703 So. 2d at 880. The plaintiff in *Jamar* was attempting to circumvent the liability release agreement (which released all employees and agents of the primary defendant from all claims) by arguing that the defendants in question were not employees and agents of the primary defendant; thus, they were not subject to the release since they acted in their individual capacities. *Id.* at 881. The Court did not accept the plaintiff's argument and affirmed the trial court's grant of summary judgment for the defendants. *Id.* In *Jamar*, the Court did not address: (1) the rule holding a person liable for the torts which he or she commits; (2) the tort liability of corporate officers; or (3) the tort liability of employees or agents. Moreover, in this case, Plaintiff has not signed any releases. Therefore, Jones' reliance on *Ex parte Jamar* is misplaced.

<u>II. The Rule Holding Corporate Agents Liable For Personal Torts Does Not Depend On The Same Grounds A Piercing The Corporate Veil.</u>

Jones cites nine cases supporting his argument that he is not personally liable for the corporate acts of J&J Wood, Inc. (D. SJM at 3-5).[4] A careful reading of these cases reveal that each is inapt as they all relate to the issue of whether the corporation in question was the "alter ego" of the defendant and whether the "corporate veil" should have been pierced.

As regards to Plaintiff's allegations in this case, the Alabama Supreme Court has held that the rule holding a corporate agent liable for personal torts, "does not depend on the same grounds as "piercing the corporate veil," that is, inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate organization." *Crigler*, 438 So. 2d at 1379. Thus, none of the cases cited by Jones have any relevance to the matters before this Court.

III. The Motion For Summary Judgment Fails In Its Threshold Burden Of Demonstrating An Absence Of Issues Of Material Fact.

Summary judgment is appropriate when "there is no genuine issue as to any material fact…and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[4] *See* Defendant's Motion for Summary Judgment citing *Wright v. Alan Mills, Inc.*, 567 So. 2d 1318, 1318-19 (Ala. 1990); *Tallant v. Grain Mart, Inc.*, 432 So. 2d 1251, 1254 (Ala. 1983); *Fossum v. Poston*, 464 So. 2d 116, 116 (Ala. 1988); *Co-Ex Plastics, Inc. v. AlaPak, Inc.*, 536 So. 2d 37, 38-39 (Ala. 1988); *Alorna Coat Corp. v. Behar*, 408 So. 2d 496, 498 (Ala. 1981); *Loper v. Gill*, 213 So. 2d 674, 675 (Ala. 1968); *Messick v. Moring*, 514 So. 2d 892, 894 (Ala. 1987); *M & M Wholesale Florist, Inc. v. Emmons*, 600 So. 2d 998, 999 (Ala.1992); *Washburn v. Rabun*, 487 So. 2d 1361, 1366 (Ala. 1986).

>together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Crawford –EL v. Britton,* 523 U.S. 574, 600 n.22 (1999) *(quoting Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986))*. "[T]he burden on the moving party may be discharged by "showing"-that is, pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Jones has failed to make the threshold "showing". The issue in this case is whether Jones committed any torts at all—regardless of whether these torts occurred while he was acting in his individual capacity or his corporate capacity.  Since, he is liable under either scenario, *Gross, supra*, 644 So. 2d at 869, the underlying basis for the motion is shown to be without any foundation in Alabama law.

<u>IV.  Genuine Issues Of Material Fact Exist With Regard to Jimmy Jones, Jr.'s Tortious Actions That Could Lead a Reasonable Jury To Return a Verdict for Plaintiff.  Thus, Summary Judgment Is Not Proper.</u>

"Courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As demonstrated by the above citations to the evidence, (pp. 2-10 supra), there are obvious conflicts in the evidence requiring resolution by a jury.  Among the disputed issues of fact are: Defendants' substandard maintenance of the truck; Defendants' negligent entrustment of the truck to Mr. Simonds; Defendants' reckless and wanton disregard for

Federal and State law; Defendants' acquiescence in the ongoing violations of Federal and State trucking guidelines; Defendants' negligence and/or wantonness on the night of the accident; Defendants' negligent, reckless and wanton conduct in directing Mr. Simonds to make a U-turn at night across a U.S. Highway; and Defendants' negligent, reckless and wanton disregard for the safety of the motoring pubic.

### Conclusion

Mr. Jones, Jr.'s Motion for Summary Judgment should be denied.

**/s/David S. Cain, Jr. (CAIND4894)**
/s/George W. Finkbohner (FINKG0362)
/s/David G. Wirtes, Jr. (WIRTD6693)
Attorneys for Plaintiff
Cunningham, Bounds, Crowder, Brown & Breedlove
P.O. Box 66705
Mobile, AL 36660
PH: 251-471-6191
FX: 251-479-1031
E-mail: DSC@cbcbb.com

CERTIFICATE OF SERVICE

    I hereby certify that on the 5th day of June, 2007, I electronically filed the foregoing with the Clerk of Court using CM/EC. which will send notification of such filing to the following:

PAUL A. MILLER, ESQUIRE
CINDY L. SELF, ESQUIRE
Lamar, Miller, Norris, Haggard & Christie, P.C.
501 Riverchase Parkway East, Suite 100
Birmingham, Alabama  35244

                                           **/s/David S.  Cain, Jr., Esq.**