7

# WOLF TECHNICAL SERVICES, INC.



## SUPPLEMENTAL REPORT

Prepared for:

Mr. David S. Cain Jr.
**Cunningham, Bounds, Crowder, Brown and Breedlove, LLC**
1601 Dauphin Street
Mobile, Alabama 36604

Your Reference: Howell v. J&J Wood, Inc., et al
WOLF Project No.: 06-0032-2904

Wolf Technical Services, Inc. · 6846 Hawthorn Park Drive · Indianapolis, IN 46220-7909
(800) 783-9663 · (317) 842-6075 · FAX (317) 842-6974

May 17, 2007

- Dorchester Corporation Employment File on Timothy Simonds
- West Georgia Technical College File on Timothy Simonds
- Werner Enterprises Employment File on Timothy Simonds
- The Moving Men/Strategic Business Solutions Employment File on Timothy Simonds
- Alabama Department of Public Safety Driver History Abstract for Timothy Simonds
- Colbert County Alabama Circuit Court Criminal Record of Timothy Simonds
- Georgia Uniform Motor Vehicle Accident Report 050800967 dated 8/29/05
- Georgia Department of Corrections Records on Timothy Simonds
- Rutledge State Prison Records for Timothy Simonds
- Calhoun State Prison Records for Timothy Simonds

## CONCLUSIONS

The following opinions are based on the additional materials reviewed and are provided with a reasonable degree of professional certainty.

1. At the time that Timothy Simonds was hired by J&J Wood, Inc. (J&J), he was medically unqualified due to a clinical diagnosis of diabetes that required insulin treatment. CFR 49, Part 391.41(b)(3)

2. At the time that Timothy Simonds applied to J&J, he intentionally withheld a recent physical that was done during his tenure with Werner Enterprises. This physical revealed that Mr. Simonds had high blood pressure and was not qualified under the requirements of CFR 49, 391.41(b)(6)

3. It is my opinion that Timothy Simonds had a lengthy criminal record that he intentionally concealed from J&J.

4. It is my opinion that had J&J initiated a complete background check, they would have discovered Timothy Simonds criminal history.



May 17, 2007

5. It is my opinion that in spite of repeated fines and citations by the Federal DOT, J&J continued to operate with a callous disregard for the federal regulations that were designed to prevent drug abusers from operating commercial motor vehicles.

6. It is my opinion that this lack of concern for complying with the drug testing regulations was exhibited again when J&J failed to drug test Timothy Simonds after the fatal collision with Mr. Howell.

7. It is my opinion that Timothy Simonds admitted that he was using cocaine on a regular basis at the time of the collision with Mr. Howell and that a post-accident drug test would have likely revealed this condition.

8. It is my opinion that J&J failed to maintain their vehicles in an acceptable manner and routinely operated them on the public highways in an unsafe condition.

9. It is my opinion that J&J routinely and consciously ignored the safety regulations as they applied to maintenance, driver hours of service, drug testing, driver qualifications, and vehicle weight limitations. Their disregard for regulations and safety related laws is not consistent with care or concern for the public and does not meet the industry expectations of a safe motor carrier.

## DISCUSSION

According to the prison records that were provided, Mr. Simonds suffered from a diabetic condition that required insulin treatment twice daily. Federal Motor Carrier Safety Regulations (FMCSR) specifically disqualifies any person with a clinical diagnosis of diabetes that requires insulin treatment. As a consequence, Mr. Simonds was not qualified to drive at the time that he was hired.

In addition to the diabetes, Mr. Simonds was given a physical by Werner and was discovered to have mild hypertension. As a consequence, in keeping with federal regulations, he was given a temporary physical clearance of 4 months. According to the regulations, he was obligated to reduce his blood pressure to less than 160/90 within the 4 month period. If he succeeded in doing so, he would have been issued a physical that was good for one year. Mr. Simonds would have been aware of this limitation at the time that he applied to J&J, but chose not to reveal it to them. Instead, he provided them with an older physical that did not indicate the high blood pressure issue. Since providing the most recent physical to J&J would have revealed his brief tenure with Werner, it is likely that Mr. Simonds chose to conceal this physical so that he would not have to explain the cause of his separation from them.