13

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHARLENE HOWELL, as the personal representative of the Estate of JAMES FARRELL HOWELL, deceased,<br><br>    Plaintiff,<br><br>    vs.<br><br>J&J WOOD, INC.; TIMOTHY LEE SIMONDS; QUALITY CASUALTY INSURANCE COMPANY, INC., et.al.,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 3:06CV417 (DRB) |

SUPERIOR COURT OF HARRIS COUNTY

STATE OF GEORGIA

| | |
|---|---|
| KYONG MI KIM,<br><br>    Plaintiff,<br><br>    vs.<br><br>TIMOTHY LEE SIMONDS and J&J WOOD, INC.,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 06-CV-164 |

    Deposition of JIMMY C. JONES, SR., taken by counsel for the Plaintiff, pursuant to notice and agreement, under the Federal Rules of Civil Procedure and the Georgia Civil Practice Act, reported by Grace F. Lengmueller, RPR, held in the offices of Carlock, Copeland, Semler & Stair, 1214 First Avenue, Suite 400, Columbus, Georgia, on January 16, 2007, and commencing at 1:21 p.m.

ACCREDITED COURT REPORTERS
Post Office Box 1701
Columbus, Georgia 31902
(706) 323-3640
(800) 662-2741

COPY

```
 1              THE WITNESS:  Medical card.
 2         MR. CAIN:  I was -- probably a
 3    comment I shouldn't have made.
 4         MS. SELF:  Okay.  I don't know what
 5    you were --
 6              THE WITNESS:  No driver history.
 7    BY MR. CAIN:
 8         Q    Do you recognize that group of documents as
 9    something that came out of your files?
10         A    Yeah.  Yeah.
11         Q    And you see there on his -- his
12    application -- first of all, did he furnish you with
13    the required information related to his employment?  In
14    other words, what -- what's required of him in
15    providing the information there relative to past
16    employment?
17         A    Well, he needs to put down his -- his people,
18    you know, he worked for, you know.
19         Q    Right.
20         A    And he had already told me he worked for
21    McIntyre.
22         Q    Well, he had only worked for McIntyre for --
23         A    Well, he got --
24         Q    -- a very --
25         A    -- down here The Moving Man.  I don't know
```

71

```
 1   who -- Fayetteville, Georgia.  And McIntyre Lumber at
 2   the bottom.  We called McIntyre.  I don't know if --
 3   well, my daughter called.  We called.  That don't mean
 4   you get an answer or a reply.
 5        Q    Is there anything in the file that would
 6   suggest you got an answer or a reply from McIntyre?
 7        A    I looked and see if it was -- we might have
 8   gotten no reply.  Something's supposed to be in there
 9   one way or the other; no reply or some reply.
10        Q    Okay.
11        A    Which I do -- we try to do the right thing.
12   And if you put no reply, you know we didn't get it,
13   so -- you know.
14        Q    And that information would have been in --
15        A    Should have been --
16        Q    -- Mr. Simonds' personnel file?
17        A    Should have been in there unless we got in --
18   or it could have got it in the truck he was driving,
19   the file.  I don't know.  We'll see.
20        Q    The regulations require it be kept where?
21        A    It's supposed to be in his file.
22        Q    And to the best of your recollection,
23   J&J Wood has provided us with a complete copy of what's
24   in his file?
25        A    Well, we thought we did.  But I don't see it
```

```
 1   in there.
 2        Q    Did he provide an adequate history in
 3   compliance with the federal regs?  Did he give y'all
 4   all the information back?
 5        A    The information that we got from him didn't
 6   dispute anything.  In fact, he just didn't tell it all.
 7   See, he talked about his drug problems, and that was
 8   concern to me.  We couldn't get nobody at that address
 9   right there.
10        Q    Nothing at The Moving Man?
11        A    Not at The Moving Man.
12        Q    And he didn't give y'all any indication as to
13   how long he had worked for McIntyre Lumber, right?
14        A    He didn't indicate that at all.
15        Q    And he certainly didn't give you a three-year
16   past employment history?
17        A    No.
18        Q    Nor did he give you a 10-year employment
19   history, right?
20        A    No.  I'm assuming that either one of them
21   wasn't too long.
22        Q    And then up here a little higher up, it says:
23   Have you ever been denied a license, permit, or
24   privilege to operate a motor vehicle?  And he says no.
25        A    He says no. That's right.  You says yes.
```

73

```
 1      Q    The truth of the matter is that he had had
 2  his license suspended some four times, once on points,
 3  once on failing to have insurance, once on failure to
 4  appear, and other indiscretions related to his driving
 5  ability.  That would, in fact, be a --
 6      A    That would --
 7      Q    -- bold-faced lie --
 8      A    Yes, sir, it was.
 9      Q    -- to your face?
10      A    What we --
11           MR. ADAMS:  Object to form.
12           THE WITNESS:  What we'll do is --
13        you know, if you go through the
14        sheriff's department, you'll find that
15        out.  They're not going to tell you, and
16        you can't find it out, really.  You got
17        to get them to do it anyway.
18  BY MR. CAIN:
19      Q    And then if he says has any license, permit,
20  or privilege ever been suspended or revoked --
21      A    And he said no.
22      Q    He said no when, in fact, that had been the
23  case that it had been?
24      A    That's right.
25      Q    And that very easily could have changed your
```

```
 1  decision to hire the guy right --
 2       A    It --
 3       Q    -- then and there?
 4       A    -- could have.  It sure could have.
 5       Q    And if you had found him lying, it definitely
 6  would have?
 7       A    Yeah.  Uh-huh.
 8            MR. CAIN:  I'll mark that as
 9       Plaintiff's Exhibit 7.
10  BY MR. CAIN:
11       Q    Mr. Jones, understanding the responsibility
12  that a carrier has putting vehicles out there in a safe
13  condition that meet the requirements of the
14  regulations, would you have any criticisms of a carrier
15  that would go out and repeatedly subject its drivers to
16  tickets and citations in vehicles that were not kept up
17  to speed insofar as the regulations are concerned?
18       A    I probably --
19            MR. ADAMS:  Object to form.
20            THE WITNESS:  I couldn't comment on
21       some -- what -- something like this.  I
22       got enough to do myself.
23  BY MR. CAIN:
24       Q    Would you be critical of your own operation
25  if you were to learn that on numerous occasions time
```

75